FILED
2010 May-24  PM 03:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| SUSIE KNOTT, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 7:06-CV-1553-LSC |
| | ) | |
| DOLLAR TREE STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| CHELSIE RICHARDSON, | ) | |
| CYNTHIA ANN COLLINS, | ) | |
| BERYL DAUZAT, on behalf of | ) | |
| themselves and others similarly | ) | |
| situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 7:08-CV-0693-LSC |
| | ) | |
| DOLLAR TREE STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

I.    Introduction.

The matter before this Court is Defendant Dollar Tree Stores, Inc.'s

1

("Dollar Tree") Motion for Summary Judgment as to Victor Williams. (Doc. 303.) This matter, having been fully briefed, is now ripe for consideration. For the reasons stated below, Defendant's motion is due to be denied.

II.     Background.

Plaintiff Victor Williams worked at three different Dollar Tree stores beginning in July 2001, in Canton, Georgia,  Marietta, Georgia, and Ackworth, Georgia.  At all three stores he held the position of Store Manager. On August 8, 2006, the complaint in this matter was filed as a collective action pursuant to 29 U.S.C. § 216(b), alleging that Dollar Tree violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by failing to pay overtime compensation to Store Managers who worked more than forty hours per week.  (Doc. 1.)  On January 30, 2007, Plaintiff Williams filed a consent to become a party plaintiff.  (Doc. 29.)  On October 9, 2009, with discovery completed, Dollar Tree filed the present motion for summary judgment as to Williams' individual FLSA claims.  (Doc. 303.)

III.    Summary Judgment Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

2

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).  Once the moving party has met this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute

is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

"[A]t the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986).  However, judges are not "required to submit a question to a jury merely because some evidence has been introduced by a party having the burden of proof, unless the evidence be of such character that it would warrant the jury finding a verdict in favor of that party.  *Id*. at 251 (*quoting Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1872)).  "This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict." *Id*. at 250.

IV.   Discussion.

Williams claims that Dollar Tree is liable to him for failing to pay him

4

overtime compensation as required by the FLSA.  In its motion for summary judgment, Dollar Tree asserts the FLSA's executive exemption affirmative defense, contending that because Williams was an "exempt" employee, as defined in the statute, Dollar Tree was not required to pay him overtime. The FLSA requires generally that employees be paid at least time-and-a-half for all hours over 40 worked in a week.  *See* 29 U.S.C. § 207(a)(1).  However, the FLSA exempts from the overtime requirement certain categories of employees, including "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).  Dollar Tree contends that Williams is employed in an "executive" capacity and is thus subject to exemption from the FLSA's overtime requirements.  The so-called "executive exemption" applies to employees (1) who are "[c]ompensated on a salary basis at a rate of not less than $455 per week"; (2) whose "primary duty" consists of managing "the enterprise in which the employee is employed" or a "customarily recognized department or subdivision" of such enterprise; (3) who "customarily and regularly direct[] the work of two or more other employees"; AND (4) who are authorized to hire or fire other employees or whose "suggestions and recommendations as to the hiring,

5

firing, advancement, promotion or any other change of status of other employees are given particular weight."   29 C.F.R. § 541.100(a); *see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1266 (11th Cir. 2008).[1]

The Eleventh Circuit has recognized the Supreme Court's "admonition that courts closely circumscribe the FLSA's exemptions." *Nicholson v. World Bus. Network*, 105 F.3d 1361, 1364 (11th Cir. 1997) (referencing *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).   In determining whether an employee fits within an exemption, the exemption is to be construed "narrowly, against the employer." *Avery v. City of Talladega*, 24 F.3d 1337, 1340 (11th Cir. 1994); *see also Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1156 (11th Cir. 2008).   The employer bears the

---

[1] Prior to August 23, 2004, when the Department of Labor's new FLSA regulations went into effect, the "short test" defining an "employee employed in a bona fide executive capacity" required that the employee make at least $250 per week, as opposed to the $455 weekly salary required by the current regulations.   In addition, the old regulations did not require that an exempt employee be authorized to hire or fire other employees or that the exempt employee's recommendations as to the status of other employees be given particular weight.   *See* 29 C.F.R. § 541.1 (2003).   Because Williams' claims span the period of his employment at Dollar Tree - beginning in 2001 - both the old and new regulations apply.   It is undisputed that Williams made more than $455 per week on a salary basis throughout his employment. Whether he had management as his "primary duty"- a factor common to both the old and new regulations - is disputed.   Whether his recommendations regarding the status of other employees were given "particular weight" - a factor present only in the new regulations - is also disputed.

burden of establishing that an exemption applies.  *See Alvarez Perez*, 515 F.3d at 1156.

In considering Dollar Tree's motion for summary judgment, this Court is mindful that the Eleventh Circuit has rejected a "categorical approach" to determining whether an employee falls within the FLSA's executive exemption.  *See Morgan*, 551 F.3d at 1269; *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1264 (11th Cir. 2008) ("When it comes to deciding whether an employee is an executive within the meaning of the FLSA, the answer is in the details.") Whether an employee qualifies as an exempt executive is necessarily a fact-intensive inquiry. *Rodriguez*, 518 F.3d at 1264.

Of the four requirements to finding that an employee is an exempt executive, two are in dispute as related to Williams.  Williams and Dollar Tree agree that Williams was paid on a salary basis of more than $455 per week, 29 C.F.R. § 541.100(a)(1), and that he "customarily and regularly direct[ed] the work of two or more other employees,"  29 C.F.R. § 541.100(a)(3). Dollar Tree maintains that Williams meets all four parts of the regulation; however, Williams contends that his recommendations as to the

7

hiring, firing, promotion, or advancement of other employees were not given "particular weight," and that he did not have management as his "primary duty."

A.    Particular Weight.

Under the new (2004) regulations, an employee is not an exempt executive unless he has the "authority to hire or fire other employees" *or* his "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4).  Because Williams' claims span a period covered by both the old and new regulations, for at least a portion of his claims the "particular weight" factor must be satisfied if he is to qualify as an exempt executive.

Williams' position is that he does not meet the "particular weight" requirement because Dollar Tree had no policy giving store managers' opinions or recommendations regarding the hiring, firing, or status of other employees any "particular weight."  However, in his deposition Williams testified that he could hire cashiers within a certain pay range without the approval of his supervising District Manager ("DM"): "[I]f I knew I was

bringing a cashier in at let's say minimum wage...She had no experience, first time job, you know, the minimum wage was 6.75, then I would bring her in at 6.75.  In those cases, I really didn't need approval."  (Williams Dep. at 134.)  Neither did Williams need approval to fire cashiers within a 30-day probationary period.   In his deposition he clearly stated that as a store manager he did in fact terminate employees, at his own discretion, within a 30-day period.  (*Id.* at 158-59.)

Williams was also responsible for interviewing Assistant Store Manager ("ASM") candidates and making recommendations to the DM, who was responsible for final decisions regarding ASM hiring.  (*Id.* at 147.)  The parties dispute whether Williams' recommendations to his DMs were given "particular weight" within the meaning of the regulation.  It is not necessary to decide that dispute here, because there is clear and uncontested evidence that Williams had authority to hire cashiers at a certain hourly wage and to fire cashiers within a 30-day probationary period.  The "particular weight" portion of 29 C.F.R. § 541.100(a)(4) is *less* demanding than the "authority to hire or fire" portion, and the two parts are disjunctive rather than conjunctive.  Because Williams had authority to hire and fire, Dollar Tree

9

need not prove that his recommendations to the DMs were given particular weight.  Williams meets this factor of the test for executive exemption.

B.    Primary Duty.

In order to qualify as an exempt executive, an employee must have as his "primary duty" the "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof." 29 C.F.R. § 541.100(a)(2).  An employee's primary duty is the "principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700(a).  The determination of an employee's primary duty "must be based on all the facts in a particular case," with principal emphasis on "the character of the employee's job as a whole."  *Id.* The relative importance of the employee's exempt work, the amount of time spent performing that exempt work, the employee's relative freedom from direct supervision, and the employee's salary compared to the wages paid to his non-exempt co-workers are all factors to be considered in determining the employee's primary duty.  *Id.*  In addition, the old regulations include a fifth factor: "the frequency with which the employee exercises discretionary powers."  29 C.F.R. § 541.103 (2003).

10

In order to be an exempt executive, the employee in question must have management as his primary duty.   The regulations define "management" as including such tasks as:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.[2]  How an employee spends his time at work is a question of fact for the jury.  Whether his work activities make him an exempt executive under the FLSA is a question of law that the Court may decide.  *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986).

---

[2] The old regulations contain the same examples of management activity, less the final two — planning and controlling the budget and monitoring or implementing legal compliance measures.  29 C.F.R. § 541.102(b) (2003).

In this case, the Parties dispute whether the questions of fact (i.e. how Williams spent his time as a Dollar Tree Store Manager) have been settled.  Dollar Tree contends that its argument that Williams met the test for an exemption is based entirely on Williams' own deposition testimony, and therefore that the facts are undisputed.  Williams, on the other hand, argues that Dollar Tree has failed to establish facts sufficient to carry its burden of proof on the question of executive exemption.   On the question of when an employee is an exempt executive under the FLSA, the law of the Eleventh Circuit is set out in *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259 (11th Cir. 2008), and *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233 (11th Cir. 2008).   In both cases, the Court of Appeals upheld jury findings that the plaintiff store managers' primary duty was not management.  *Morgan* is particularly relevant because, like the present case, it involved store managers who worked for a "dollar store" chain.

Both *Morgan* and *Rodriguez* are clear that the primary duty inquiry is necessarily "fact-intensive." *Rodriguez*, 518 F.3d at 1264. *See also Morgan*, 551 F.3d at 1267.  In *Rodriguez*, the court bluntly rejected the defendant's argument that "any employee who has...responsibility over a free-standing

business location…must come within the executive exemption" as a matter of law. *Rodriguez*, 518 F.3d at 1264.  Where the facts regarding how an employee spent his or her working time are contested, summary judgment is inappropriate.

Dollar Tree's argument that Williams' primary duty was management relies on two principal contentions: (1) Even if Williams spent the vast majority of his time at work performing non-exempt (i.e. non-managerial) work, because he worked in a retail establishment the Department of Labor's interpretation of its own regulations makes this division of his time substantially irrelevant to the summary judgment decision; and (2) because Williams' deposition testimony contains statements supporting Dollar Tree's argument that he was an exempt executive, there is no dispute of material fact precluding summary judgment for Dollar Tree.

In support of the first argument, Dollar Tree relies on the Department of Labor's interpretation of its regulations.  The regulation defining and explaining "primary duty" states that "employees who spend more than 50 percent of the their time performing exempt work will generally satisfy the primary duty requirement.  Time alone, however, is not the sole test, and

nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work."  29 C.F.R. § 541.700(b). The Department of Labor's binding interpretation of its own regulation clarifies that in restaurant and retail settings, an employee who spends as much as 65 to 90 percent of his time performing non-management tasks may still have management as his primary duty.  *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees,* 65 Fed. Reg. 22,122, 22,136-37 (Apr. 23, 2004); *see also Moore v. Tractor Supply Co.,* 352 F. Supp. 2d 1268, 1273-75 (S.D. Fla. 2004) (granting summary judgment for employer where it was undisputed that plaintiff spent 95 percent of his time performing non-exempt tasks).

The interpretation of the regulation only repeats what the regulation itself makes fairly clear: that while the proportion of time spent on managerial tasks is one factor to consider in the primary duty inquiry, it is in no case a dispositive factor.  There is nothing magical about retail and restaurant settings; these are simply examples of common jobs where a bona fide manager may nevertheless spend a significant portion of his working day performing tasks identical or similar to those of the non-exempt

14

employees he manages.  In *Morgan*, the Court of Appeals considered the fact that the plaintiff store managers spent 80 to 90 percent of their time performing non-exempt, manual labor, but the court also recognized that "the amount of time spent performing exempt tasks is not dispositive of the primary duty issue."  *Morgan*, 551 F.3d at 1269-70.  It then went on to consider whether there was evidence supporting the four other factors relevant to the primary duty inquiry.  In short, the percentage of time spent on non-exempt work is not irrelevant to the primary duty inquiry, even in the retail setting, but neither may it alone dictate whether or not an employee has management as his primary duty.

Next, Dollar Tree argues that there is no material factual dispute precluding summary judgment, because Dollar Tree's evidence supporting its summary judgment argument is wholly based on Williams' own deposition testimony.  For instance, Williams stated that he conducted interviews to fill vacant cashier and stocker positions (Williams Dep. at 130); had some discretion to give more hours to a current employee rather than hiring a new employee to staff the store during the holiday rush season (*Id*. at 139-40); interviewed candidates for vacant ASM positions and made recommendations

15

based on those interviews to the DM (*Id*. at 147); trained ASMs (*Id*. at 256); scheduled employees' work hours (*Id*. at 231-32); prepared a daily planner every morning that he opened the store, assigning tasks needing to be done that day to specific employees (*Id*. at 260-61); disciplined employees and prepared performance evaluations (*Id*. at 241-43); compiled and reviewed orders for merchandise that was not automatically allocated to the store by Dollar Tree (*Id*. at 267-69); decided where to place merchandise that did not have a designated place in the store planner (*Id*. at 53-55); and multi-tasked while stocking by thinking about other projects that needed to be completed and by remaining responsible for the other employees on duty (*Id*. at 226-27). Dollar Tree's argument is that because Williams' deposition evidences that he performed these and other managerial tasks, there is no material factual dispute that Williams' primary duty was management. This Court disagrees.

In fact, Williams' deposition is full of evidence supporting his argument that management was not his primary duty.[3]  He stated that he spent the

_____

[3] In his Response Brief (Doc. 332), Williams cites to a declaration filed with that brief ("Williams Declaration"). Dollar Tree protests in its Reply Brief (Doc. 357) that the Williams Declaration is a "sham declaration" consisting of boilerplate assertions

vast majority of his time performing manual labor such as stocking shelves (Williams Dep. at 304); the organization of merchandise in the store was almost entirely set by detailed planning guides sent to the store every month by Dollar Tree (*Id.* at 49-53); his requests for permission to order new products he thought would sell well in a particular store were generally rejected (*Id.* at 70-72, 74, 108); even for the merchandise that was not automatically allocated to the store by Dollar Tree, what Williams could order was circumscribed by the "order book" governing that store (*Id.* at 108); his DMs supervised him via telephone calls, e-mails, and weekly or biweekly visits (*Id.* at 176-91); Dollar Tree set targets for the number of people Williams was to hire to staff the store at different times of the year (*Id.* at 138-40); the ASMs in charge of certain store activities were responsible for training new employees assigned to those activities (e.g.

---

that directly contradict statements made earlier by Williams in his deposition. "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).  However, this Court has found ample evidence in Williams' deposition itself that creates a question of fact as to whether Williams' primary duty was management.  Therefore, the Court need not rely on the Williams Declaration in its present decision, nor decide whether the Williams Declaration constitutes "sham" evidence.

freight flow) (*Id*. at 254); on days that an ASM opened the store, that ASM would fill out the daily planner (*Id*. at 260-61); a computer program called Compass automatically generated the cashiers' schedules (*Id*. at 231-32); and while Williams could schedule himself, the ASMs, and the stockers, his flexibility in doing so was strictly limited by the number of hours budgeted by Dollar Tree for that store (*Id*. at 232-33).   These and many other statements by Williams in his deposition create a material issue of fact on at least four of the five primary duty factors in the old regulations: the relative importance of the employee's exempt work, the amount of time spent performing that exempt work, the employee's relative freedom from direct supervision, and the frequency with which the employee exercised discretionary powers.

There is also a factual dispute as to the final factor, the employee's salary as compared to the wages paid to his non-exempt co-workers.  Dollar Tree contends that Williams' salary and bonuses totaled approximately 134% of the total compensation received by the next-highest paid employee. Williams answers that Dollar Tree's calculations are based on Williams working a 40-hour week, although the evidence shows that Williams actually

worked 50 to 60 hours per week.  In *Morgan*, the plaintiff store managers earned about the same amount as hourly assistant managers when the figures were calculated using a 70-hour work week.  When the calculations were based on a 60-hour work week, the store managers earned two to three dollars more per hour than the assistants.  The court held that the jury was entitled to consider these figures.  *Morgan*, 551 F.3d at 1271. Whether a 40-hour, 50-hour, or 60-hour work week is used to calculate the difference between Williams' salary and the wages of the next-highest paid employee is a relevant fact.

Because material facts relevant to the primary duty inquiry are in dispute, summary judgment is inappropriate on the question of whether Williams had management as his primary duty while working as a Dollar Tree store manager.

V.     Conclusion.

Having considered Plaintiff's allegations, it is apparent to this Court that the evidence is sufficient to create a jury question as to whether Plaintiff's primary duty is management.  Therefore, Dollar Tree's motion for summary judgment is due to be denied.  A separate order will be entered.

Done this <u>24th</u> day of <u>May 2010</u>.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE