FILED
2010 Nov-18  PM 03:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

1

```
                  UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ALABAMA
                      WESTERN DIVISION

SUSIE KNOTT,                      7:06-CV-1553-LSC

      PLAINTIFF,                  SEPTEMBER 24, 2010

      V.                          TUSCALOOSA, AL

DOLLAR TREE STORES, INC.,

      DEFENDANT.

* * * * * * * * * * * *

              TRANSCRIPT OF MOTION HEARING
        BEFORE THE HONORABLE L. SCOTT COOGLER,
              UNITED STATES DISTRICT JUDGE
APPEARANCES:

FOR THE PLAINTIFF:

GREGORY O. WIGGINS, ESQ.

WIGGINS, CHILDS, QUINN & PANTAZIS

BIRMINGHAM, ALABAMA


ROBERT L. WIGGINS, JR., ESQ.

WIGGINS, CHILDS, QUINN & PANTAZIS

BIRMINGHAM, ALABAMA


JOSH WILSON, ESQ.

WIGGINS, CHILDS, QUINN & PANTAZIS

BIRMINGHAM, ALABAMA
```

```
1   APPEARANCES (CONTINUED)

2

3   FOR THE DEFENDANT:

4

5   BARBARA B. BROWN, ESQ.

6   PAUL HASTINGS, JANOFSKY & WALKER

7   WASHINGTON, D.C.

8

9   TERRY PRICE, ESQ.

10  FORD & HARRISON

11  BIRMINGHAM, ALABAMA

12

13  KENNETH M. WILLNER

14  PAUL HASTINGS, JANOFSKY & WALKER

15  WASHINGTON, D.C.

16

17  ALSO PRESENT:

18  AMY TURK, ESQ.

19  CORPORATE COUNSEL FOR DOLLAR TREE STORES

20  CHESAPEAKE, VIRGINIA

21

22  COURT REPORTER:

23

24  LINDY M. FULLER, RMR, CRR

25  BIRMINGHAM, ALABAMA  35203
```

```
 1              P R O C E E D I N G S
 2            (9:00 A.M., IN OPEN COURT)
 3           THE COURT:  THIS IS KNOTT V. DOLLAR
 4   TREE STORES INCORPORATED, CASE NUMBER 06, 1553.  I
 5   SET THIS AS A HEARING ON THE ISSUE OF DECERTIFYING
 6   THE CLASS AND APPARENTLY WE HAVE OTHER ISSUES AS
 7   WELL.  AND I WILL ALLOW HAD THE PARTIES TO FILE
 8   DOCUMENTS IN EVIDENCE, IF THEY WISH TO DO SO, AND
 9   SET THIS AS AN OPPORTUNITY TO ARGUE THAT MOTION.
10   AND I AM GOING TO HAVE A FEW QUESTIONS TO MAKE
11   SURE WE ARE ALL ON THE SAME PAGE.
12           I HAD, BASICALLY, I THINK TWO OR THREE
13   TELEPHONE CONFERENCES WITH THE PARTIES TO SET UP A
14   MECHANISM BY WHICH CERTAIN EVIDENCE THAT NEEDED TO
15   BE BEFORE THE COURT COULD BE PRESENTED TO THE
16   COURT.  AND RATHER THAN PERMITTING THE DEFENDANT
17   TO GO OUT AND TAKE THE DEPOSITIONS OF ALL THE
18   CLASS MEMBERS, WHICH IS WHAT THEY HAD ASKED FOR AT
19   SOME TIME, AND GETTING THE QUESTION OF THE ACTUAL
20   AMOUNT OF TIME SPENT BY THE CLASS MEMBERS IN DOING
21   THE VARIOUS TASKS, I INDICATED THAT
22   INTERROGATORIES COULD BE SENT OUT AND HAD THE
23   PARTIES TOGETHER ON THE TELEPHONE CALLS AT LEAST
24   TWICE, MAYBE THREE TIMES, WHERE INTERROGATORIES
25   WERE DRAFTED, WE DISCUSSED THEM, AND ULTIMATELY,
```

1    INTERROGATORIES WENT OUT TO ALL THE CLASS MEMBERS

2    WHO HAD NOT HAD THEIR DEPOSITIONS TAKEN IS WHAT I

3    THINK WAS THE GIST OF IT.  AND I DIRECTED THAT

4    THEY BE ANSWERED, ORDERED IT.  IN FACT, I ORDERED

5    IT A CERTAIN DATE FOR THEM TO BE ANSWERED.

6         AND THE DATE CAME AND WENT, SEEMS LIKE

7    I RECALL, AND THE PLAINTIFF INDICATED THAT THEY

8    NEEDED A FEW MORE DAYS TO ANSWER.  WE HAD ANOTHER

9    TELEPHONE CALL, I THINK IT WAS AUGUST -- WHAT DATE

10   WAS THAT TELEPHONE CALL WHERE WE TALKED, GREG,

11   WHERE I WRITE TOLD YOU TO SEND IN BY -- I DON'T

12   REMEMBER WHETHER I SAID MONDAY OR FRIDAY, BUT I

13   GAVE YOU A PARTICULAR DAY AND I SAID I WANT YOU TO

14   FILE ALL THE ONES YOU HAVE.  AND THEN BY THE

15   SECOND DATE THAT I GAVE YOU, I SAID I WANT YOU TO

16   HAVE THE REST OF THEM.

17        MR. GREG WIGGINS:  CONFERENCE CALL,

18   YOUR HONOR, WAS ON SEPTEMBER EIGHT.  YOU DIRECTED

19   US TO FILE AS MANY AS WE COULD BY SEPTEMBER 10TH

20   BY NOON, AND THE REMAINDER OF THE ONES WE HAD BY

21   SEPTEMBER 13TH.

22        THE COURT:  IS EVERYBODY IN AGREEMENT

23   WITH WHAT I HAVE SAID SO FAR?

24        MS. BROWN:  YES, YOUR HONOR.

25        THE COURT:  PLAINTIFF?

1         MR. GREG WIGGINS:  YES.

2         THE COURT:  THE PROBLEM IS A COUPLE OF

3    THINGS.  ONE, PLAINTIFFS GOT ROUGHLY 200 SOME-ODD

4    CLASS MEMBERS THAT HAVE FAILED TO FILE ANYTHING AS

5    FAR AS INTERROGATORIES GO, THE RESPONSES, 200, HOW

6    MANY --

7         MR. GREG WIGGINS:  I DON'T THINK THAT'S

8    CORRECT YOUR HONOR, BUT --

9         THE COURT:  HOW MANY HAVE NOT FILED AN

10   ANSWER TO THESE INTERROGATORY QUESTIONS?

11        MR. GREG WIGGINS:  THERE HAVE BEEN 238

12   THAT HAVE FILED ANSWERS TO THE INTERROGATORIES.

13   HOW MANY HAVE NOT FILED.

14        MR. GREG WIGGINS:  TAKE AWAY THE 70 WE

15   DEPOSED, THAT LEAVES ABOUT 200.  AND WE HAD ABOUT

16   75 RETURNED THAT NEVER GOT THE INTERROGATORIES, SO

17   ABOUT 125 THAT WERE ACTUALLY SERVED.

18        THE COURT:  OKAY. 125, WHAT YOU ARE

19   SAYING?  AND I DON'T WANT TO MIX APPLES WITH

20   ORANGES, BUT THERE IS 200 AND HOW MANY THAT YOU

21   SENT OUT THAT YOU ORIGINALLY MAILED OUT DID NOT,

22   YOU DON'T HAVE ANSWERS FILED?

23        MR. GREG WIGGINS:  APPROXIMATELY 125,

24   YOUR HONOR.

25        THE COURT:  NO, YOU HAVE 125 -- I

1   UNDERSTAND WHAT YOU ARE SAYING.  I AM TRYING TO

2   GET THERE. HOW MANY INTERROGATORIES DID YOU SEND

3   OUT, HOW MANY SETS?

4            MR. GREG WIGGINS:  APPROXIMATELY 520.

5            THE COURT:  OF THE 520 YOU SENT OUT,

6   YOU HAD 70 THAT HAD ANSWERED DEPOSITIONS BEFORE?

7            MR. GREG WIGGINS:  RIGHT; YES, SIR.

8            THE COURT:  THAT TAKES US TO 410, NO,

9   400 AND --

10            MR. GREG WIGGINS:  50.

11            MS. BROWN:  IF I MAY, YOUR HONOR, THE

12   215 WERE SERVED AND NEVER RESPONDED AT ALL.  THE

13   NUMBER --

14            THE COURT:  I DON'T WANT TO MIX APPLES

15   AND ORANGES.  WHEN YOU SAY SERVED, 215, IS THAT

16   WHAT YOU SAID?

17            MS. BROWN:  YES, YOUR HONOR.

18            THE COURT:  WHEN YOU SAY SERVED, YOU

19   MEAN YOU SERVED THEM ON PLAINTIFF'S COUNSEL?

20            MS. BROWN:  THAT'S CORRECT.

21            THE COURT:  SO 215 WERE SERVED ON

22   PLAINTIFF'S COUNSEL THAT YOU, THE DEFENDANT NEVER

23   GOT AN ANSWER TO?

24            MS. BROWN:  THAT'S CORRECT.

25            THE COURT:  I KNOW OF THE 215, YOU ARE

1    NOT COUNTING THE ONES THAT, THE DEFENDANT IS NOT

2    COUNTING THE 70 OR SO THAT DEPOSITIONS HAVE BEEN

3    TAKEN?

4              MS. BROWN:  THAT'S CORRECT, YOUR

5    HONOR.  IT'S ACTUALLY ABOUT 55, BECAUSE A NUMBER

6    HAVE BEEN DISMISSED FOR OTHER REASONS.

7              THE COURT:  AND THEN YOU ARE ALSO, THE

8    PLAINTIFF, I UNDERSTAND, SAYS OF THE 215, 75 YOU

9    GOT BACK INSUFFICIENT ADDRESS OR ADDRESSEE MOVED

10   OR SOMETHING?

11             MR. GREG WIGGINS:  THAT'S CORRECT, YOUR

12   HONOR.

13             THE COURT:  SO WE HAVE HOW MANY THAT

14   YOU ACTUALLY ANSWERED?

15             MR. GREG WIGGINS:  ACTUAL SERVED

16   ANSWERED, YOUR HONOR, WAS 238.

17             THE COURT:  YOU AGREE WITH THAT?

18             MS. BROWN:  NO, YOUR HONOR I DON'T.  IF

19   I MAY --

20             THE COURT:  BECAUSE 20 WERE DEPOSITION

21   RESPONSES.

22             MS. BROWN:  BECAUSE THEY ACTUALLY SENT

23   OUT SOMETHING, I DON'T KNOW WHETHER IT WAS OUR

24   INTERROGATORIES OR SOMETHING, TO APPROXIMATELY 30

25   PEOPLE WHO WERE NO LONGER IN THE CASE.  HE THINKS

```
1   THERE ARE 525 PLAINTIFFS IN THIS CASE.  THERE ARE
2   475 RIGHT NOW.
3             THE COURT:  THAT'S WHAT OUR NUMBERS
4   SHOW AS WELL, BY THE WAY.
5             MS. BROWN:  SO OF THE 475, WE GOT BACK
6   ONLY 200 AND SEVEN ANSWERS FROM ACTUAL PARTIES IN
7   THIS CASE RIGHT NOW. AND SOME OF THOSE WERE
8   UNTIMELY, BUT 207 TOTAL.
9             THE COURT:  I KNOW SOME OF THEM WERE A
10  DAY LATE OR A FEW HOURS LATE, WHATEVER.  I AM NOT
11  GOING THERE RIGHT NOW.  THAT'S THE LEAST OF THE
12  ISSUES THAT I AM REALLY HERE TO ADDRESS.  SO WE
13  HAVE 207 --
14            MS. BROWN:  YES, YOUR HONOR.
15            THE COURT:  -- THAT THE DEFENDANT
16  CONTENDS THEY ACTUALLY GOT ANSWERS TO.  215 --
17            MS. BROWN:  THAT'S CORRECT, YOUR HONOR.
18            THE COURT:  THAT DID NOT ANSWER.  OF
19  THOSE 215, 75 PLAINTIFF SAYS BAD ADDRESS OR
20  WHATEVER, AND THERE WERE 55 THAT HAD BEEN DEPOSED
21  THAT WE ARE NOT COUNTING IN THIS BECAUSE THEY
22  WEREN'T SUBJECT TO INTERROGATORIES ANYWAY.
23            MS. BROWN:  THAT'S RIGHT, YOUR HONOR.
24  AND SOME OF THE 75 HE IS TALKING ABOUT POSSIBLY
25  MAY NOT HAVE BEEN ONES THAT WE ACTUALLY SERVED.
```

1          THE COURT:  WELL, HE ACTUALLY SAID MORE

2     THAN 55.  YOU ARE SAYING 55.

3          MS. BROWN:  OH, 55, YES.  THE

4     DIFFERENCE BETWEEN THESE TWO NUMBERS WE HAVE HERE,

5     WHICH IS 432 AND 475 IS 53.  I WILL TELL YOUR

6     HONOR, WE HAVE TRIED TO COME UP FOR LISTS FOR YOU

7     TODAY, NAMES OF EACH OF THOSE CATEGORIES.  IT'S

8     DIFFICULT, WE MAY BE OFF ONE OR TWO, AND WE WANT

9     TO CONFIRM THEM.  BUT APPROXIMATELY 53 OR 55 WHO

10    WERE NOT EXPECTED TO FILE ANSWERS, TO SERVE

11    ANSWERS TO THE INTERROGATORIES.

12         THE COURT:  DEFENDANT HAS MOVED, IN

13    ADDITION TO THE MOTION TO DECERTIFY THE CLASS, THE

14    DEFENDANT HAS MOVED FOR SANCTIONS TO DISMISS THE

15    215 THAT DID NOT ANSWER, TO DISMISS THE 207 THAT

16    DID ANSWER, RIGHT?

17         MS. BROWN:  THAT'S CORRECT, YOUR HONOR.

18         THE COURT:  AND THE BASIS FOR THE

19    DISMISSAL OF 215 IS APPARENTLY EASY TO

20    UNDERSTAND -- THEY DIDN'T ANSWER.  THE BASIS OF

21    DISMISSING THE 207 IS THAT THEY DID NOT ANSWER AS

22    WELL, THAT THEIR ANSWERS, INSTEAD OF FILLING OUT

23    THE HOURLY BLANKS THAT WERE THERE AND THAT WE HAD

24    TALKED ABOUT, THE PLAINTIFFS BASICALLY DID A

25    CANNED RESPONSE TO INTERROGATORIES WHERE THEY DID

```
 1    ONE, PERCENTAGE 85 TO 90 PERCENT OF THE TIME SPENT

 2    INSTEAD OF LISTING THE HOURS IN THE FIRST HOWEVER-

 3    MANY INTERROGATORIES.  THE ONLY DIFFERENCE IN THE

 4    FIRST ONE IS BEING THE STORE NUMBERS THAT THEY

 5    MIGHT HAVE WORKED AT.

 6              AND THEN THE LAST INTERROGATORY WHERE

 7    IT SAYS THE NUMBER OF HOURS WORKED IN THE HOLIDAY

 8    SEASON VERSUS THE NON-HOLIDAY SEASON, AS TO EACH

 9    OF THOSE 207, IT WAS BROKEN DOWN AS TO HOURS ON

10    AVERAGE WORKED.  HAVE I MISSED ANYTHING ON THAT?

11              MS. BROWN:  NO, YOUR HONOR.  EXCUSE

12    ME.  I HAVE A VARIETY OF OTHER REASONS THOSE ARE

13    NOT RELIABLE BUT I DON'T NEED TO ADDRESS THEM IF

14    YOUR HONOR IS NOT CONCERNED ABOUT THEM OTHER THAN

15    THAT.

16              THE COURT:  I AM GOING TO ALLOW YOU TO

17    ARGUE IT, I AM JUST TRYING TO MAKE SURE EVERYBODY

18    IS ON THE SAME PAGE.

19              MS. BROWN:  YES.

20              THE COURT:  YOU KNOW, I MUST SAY, I AM

21    GREATLY, GREATLY TROUBLED.  THIS IS A 2006 CASE.

22    I AM TROUBLED WITH THE FACT THAT THE HOURS WEREN'T

23    FILLED IN THE BLANKS, THAT THE PLAINTIFFS WEREN'T

24    JUST GIVEN THE OPPORTUNITY TO PUT IN THE HOURS

25    THAT WERE THERE.  I TRIED, MY EFFORT WAS TO TRY TO
```

1    KEEP THE PLAINTIFF FROM HAVING TO RUN ALL OVER THE

2    COUNTRY AND TAKE DEPOSITIONS AND SET THEM UP, TO

3    GET THE INFORMATION THAT I NEEDED AND TO BE FAIR

4    TO BOTH SIDES, INCLUDING THE PLAINTIFF, AND TRY TO

5    KEEP THAT KIND OF WORK FROM OCCURRING.  AND IT

6    LOOKS LIKE I AM NOT GOING TO BE SUCCESSFUL AT THAT

7    AND IT TROUBLED ME GREATLY.

8         I THINK THAT RIGHT NOW, I HAVE THE

9    INCLINATION TO DISMISS 215 BECAUSE IT'S THEIR

10   OBLIGATION TO KEEP UP WITH THEIR LAWYERS AND THEIR

11   LAWYERS' OBLIGATION TO KEEP UP WITH THEM.  I HAVE

12   ORDERED THE ANSWERS TO BE DONE, I HAVE ORDERED THE

13   WHOLE THINGS THAT I COULD HAVE THIS HEARING TODAY,

14   AND IT WASN'T DONE.  I AM NOT SAYING IT'S Y'ALL'S

15   FAULT, GREG, BECAUSE YOU CAN'T, YOU CAN'T REACH

16   OUT THERE AND FORCE SOMEBODY TO ANSWER

17   INTERROGATORIES; I UNDERSTAND THAT.  YOU ALSO

18   CAN'T FORCE SOMEBODY TO KEEP THEIR ADDRESS UP WITH

19   YOU.  BUT WHEN WE HANDLE THESE MASS CASES LIKE

20   THIS, I MEAN, THERE IS A CERTAIN AMOUNT OF

21   OBLIGATION THAT'S UPON THE CLASS MEMBERS TO KEEP

22   UP WITH WHAT'S GOING ON SO THAT THEY CAN PROVIDE

23   INFORMATION; OTHERWISE, THERE IS NO WAY THAT THE

24   THING CAN BE MANAGEABLE AT ALL.  THERE IS NO WAY

25   THE DEFENDANTS CAN GET DISCOVERY AND THERE IS NO

```
1    WAY THAT I CAN MAKE A DECISION.

2              THE REASON WHY I WANTED THE HOURS PUT

3    ON THE THINGS AND THE REASONS WHY I WANTED THE

4    INTERROGATORIES ANSWERED IS SO THAT I COULD MAKE A

5    DECISION THE PLAINTIFFS -- THE DEFENDANTS ARE

6    ARGUING THAT THE CLASS SHOULD BE DECERTIFIED

7    BECAUSE THE PLAINTIFFS AND THE REPRESENTATIVES AND

8    THE CLASS MEMBERS, THERE IS TOO MANY

9    INCONSISTENCIES AND DIFFERENCES BETWEEN THEM TO

10   PROCEED AS ONE.  AND THE 215 HAVE PROVEN THAT,

11   PROBABLY, BY NOT RESPONDING.  SO WHEN THEY REFUSE

12   TO RESPOND, REFUSE TO -- WHICH IS, AT LEAST, ALL

13   BUT 75 OF THEM REFUSED TO RESPOND.  THE 75 THAT

14   HAD MOVED OR WHATEVER, YOU KNOW, THEY -- IT LOOKS

15   LIKE TO ME THEY HAVE GIVEN UP THEIR RIGHT TO

16   PROCEED.

17             I AM INTERESTED IN HEARING THE

18   ARGUMENTS FROM THE DEFENDANT AND THE PLAINTIFF

19   WITH REGARD TO THE MOTION FOR SANCTIONS ON THESE

20   INTERROGATORIES, AND I AM ALSO -- THEN WHEN I GET

21   THROUGH WITH THAT POINT, I AM GOING TO WANT TO

22   HEAR AND YOU CAN MAKE THE ARGUMENT AT THE SAME

23   TIME IF YOU WOULD LIKE ON THE DECERTIFICATION.

24   BECAUSE IF I DECERTIFY THIS CLASS, THEN THE NEXT

25   STEP WILL BE WE WILL BUST IT UP, WE WILL HAVE
```

```
 1   HOWEVER MANY PLAINTIFFS ARE STILL LEFT STANDING IN
 2   THE CASE, WILL HAVE THEIR OWN CASES, WE WILL SEVER
 3   THEM ALL, AND THERE WILL BE A FILING FEE PAID FOR
 4   400 OR HOW MANY PEOPLE ARE LEFT, 300, AND PROCEED.
 5           THE REASON WHY I AM REAL HESITANT ABOUT
 6   THAT IS BECAUSE IT MIGHT SOUND LIKE A DANDY THING
 7   TO DO AT THIS POINT, BUT, FRANKLY, IF I DO THAT, I
 8   DON'T WANT ANYBODY TO BE LIKE THE DOG THAT CHASES
 9   THE CAR AND CATCHES IT AND GOES, NOW, WHAT DO I DO
10   WITH IT?
11           LET'S SAY, FOR INSTANCE, I MAKE THE
12   PLAINTIFF'S COUNSEL PAY A FILING FEE.  HOW MUCH IS
13   THE FILING FEE NOW, 400-SOMETHING DOLLARS?
14           MR. GREG WIGGINS:  ABOUT FOUR HUNDRED,
15   SOMETHING LIKE THAT.
16           THE COURT:  IF I MAKE THE PLAINTIFFS
17   PAY THAT AND THEN WE PROCEED WITH 300 PLAINTIFFS,
18   THEN YOU SETTLE WITH THE PLAINTIFFS, OR THEY WIN,
19   THEN GUESS WHO IS GOING TO PAY THAT TO THE COURT?
20   IT'S NOT GOING TO BE THE PLAINTIFFS, IT'S GOING TO
21   BE THE DEFENDANT THAT'S GOING TO END UP PAYING
22   THAT MONEY.
23           SO, I MEAN, I DON'T WANT TO JUST RUSH
24   OUT THERE AND DO THIS KIND OF THING BUT I WANT TO
25   BE FAIR.  AND I AM REALLY STRUGGLING AT THIS
```

```
1    POINT.

2              SO, WHO WANTS TO GO FIRST?  PLAINTIFF

3    HAS THE BURDEN AT THIS POINT, I WOULD SUPPOSE, ON

4    THE DECERTIFICATION TO KEEP IT TOGETHER, WOULDN'T

5    IT?

6              MR. GREG WIGGINS:  I BELIEVE SO, YOUR

7    HONOR.

8              MS. BROWN:  YOUR HONOR, IF I MAY, I

9    WOULD LIKE TO ARGUE THE MOTION FOR SANCTIONS

10   SEPARATELY.  AND ON THE DECERTIFICATION QUESTION,

11   WE HAD SOME EVIDENCE IN TERMS OF, TO PUT INTO THE

12   RECORD TO SUPPLEMENT THE RECORD WE HAD ALREADY.

13             THE COURT:  LET'S START WITH THE

14   SANCTIONS.  LET'S LET YOU ARGUE IT AND THEN I WILL

15   COME TO YOU, GREG.

16             MR. GREG WIGGINS:  ALL RIGHT.

17             MS. BROWN:  SHALL I USE THE PODIUM,

18   YOUR HONOR, OR DO YOU PREFER I STAY HERE?

19             THE COURT:  MAKES NO DIFFERENCE TO ME

20   AS LONG AS MY COURT REPORTER CAN HEAR YOU.

21   WHICHEVER ONE YOU ARE MORE COMFORTABLE WITH.

22             MS. BROWN:  THIS IS FINE THEN SINCE I

23   HAVE A VARIETY OF PAPERS.

24             WELL, I DON'T WANT TO REPEAT WHAT YOUR

25   HONOR HAS SAID IN THE PREFACE HERE, BUT CLEARLY,
```

```
1   THE PURPOSE OF THESE INTERROGATORIES WAS TO SEE

2   WHETHER THE RECORD THAT YOUR HONOR FELT AT THAT

3   TIME DID NOT JUSTIFY TRYING THIS CASE AS A

4   COLLECTIVE ACTION COULD BE SUPPLEMENTED OR WOULD

5   BE SUPPLEMENTED BY INTERROGATORY ANSWERS THAT

6   WOULD SHOW EITHER SIMILARITIES OR CONFIRM

7   DISSIMILARITIES AS WE BELIEVE BETWEEN THE

8   PLAINTIFFS IN TERMS OF THE MIX OF JOB DUTIES AND

9   THE DIFFERENT TYPES OF JOB DUTIES THAT THEY

10  PERFORM IN THEIR JOB, SUCH THAT A REPRESENTATIVE

11  TRIAL WOULD NOT BE FAIR, WOULD DENY THE COMPANY

12  DUE PROCESS BECAUSE THOSE WHO TESTIFIED WOULD NOT

13  BE SIMPLY SITUATED TO THOSE WHO DID NOT.  THAT WAS

14  THE FRAMEWORK WITHIN WHICH THESE INTERROGATORIES

15  WERE SENT.

16            AND YOUR HONOR DID MAKE IT CLEAR AS YOU

17  SAT HERE TODAY THAT YOU SAW DIFFERENCES AND

18  INCONSISTENCIES IN THE RECORD, AND YOU SAW NO

19  EVIDENCE OF A CONSISTENT PERCENTAGE OR NUMBER OF

20  HOURS SPENT ON NON-EXEMPT DUTIES, AND THAT WAS

21  YOUR QUESTION THAT THE INTERROGATORIES WERE MEANT

22  TO GET TO.

23            THE COURT:  YEAH, LET ME JUST, BECAUSE

24  I WANT TO MAKE THIS POINT CLEAR.  MY TROUBLE IS

25  NOT THAT THERE WAS NO EVIDENCE, BECAUSE BOTH OF
```

```
1    YOU REFER TO LIKE A COUPLE OF PEOPLE.  MY PROBLEM

2    WAS THAT NOBODY SEEMED TO FEEL IT NECESSARY TO

3    REACH OUT THERE AND GET EITHER AN EXPERT THAT

4    LOOKED AT ALL OF THEM AND GIVING SOME SUMMARY, OR

5    FILE A BUNCH OF INTERROGATORIES SAYING THIS IS

6    WHAT THEY ALL SAY, OR SOME STATISTICAL SAMPLING.

7    THERE WAS JUST -- AND SO I WOULD GET THESE

8    ARGUMENTS, THE PLAINTIFFS WERE, AVERAGED 80

9    PERCENT OR 85 OR WHATEVER, AND THEN IT WOULD BE

10   CITED BACK TO ONE INDIVIDUAL'S ANSWERS.  AND I

11   SAID THAT I WAS GOING TO OPEN THE HEARING UP TO

12   GIVE EVERYBODY AN OPPORTUNITY TO PRESENT WHAT

13   REALLY WAS THE CASE SO THAT I COULD MAKE, IT

14   WASN'T REALLY THAT I -- AND THE REASON WHY I BRING

15   THAT UP IS BECAUSE I DON'T WANT THE RECORD TO

16   REFLECT THAT THERE WAS EVIDENCE TO THE CONTRARY.

17   THERE JUST WASN'T ANY EVIDENCE OTHER THAN ONE

18   PERSON OR TWO PEOPLE.

19          AND THE INTERROGATORIES WERE ALLOW THE

20   DEFENDANT AN OPPORTUNITY TO TEST WHAT THE

21   PLAINTIFF HAD SAID GENERALLY IN ARGUMENT AND TO

22   ALLOW THE PLAINTIFF AN OPPORTUNITY TO SUBMIT,

23   EITHER BY AFFIDAVIT OR IN THE HEARING, BY

24   AFFIDAVIT OR SINCE YOU DECIDED TO DO

25   INTERROGATORIES, BY YOUR OWN INTERROGATORIES,
```

1    DEFENSE INTERROGATORIES, WHAT ALL THE CLASS SAID.

2         GO AHEAD.

3         MS. BROWN:  EXACTLY.  NOW, AS YOUR

4    HONOR HAS NOTED, 200 AND SOME PEOPLE DIDN'T

5    RESPOND AT ALL.  THE PLAINTIFFS ARGUED IN THEIR

6    BRIEF, WELL, THEY SHOULDN'T BE DISMISSED BECAUSE

7    THERE WAS NO COURT ORDER THAT PRECEDED THEIR

8    FAILURE TO RESPOND.  THAT IS JUST NOT TRUE.  AS

9    YOUR HONOR HAS NOTED, THERE WERE ACTUALLY TWO

10   ORDERS THAT THEY VIOLATED.  THE FIRST, THESE WERE

11   NOT TYPICAL INTERROGATORIES JUST SENT OUT BY A

12   PARTY WITHOUT THE COURT'S, IN PREMATURE AND ORDER,

13   THAT THEY RESPOND BY A PARTICULAR DATE AND THAT

14   YOUR HONOR ISSUED WHEN WE FIRST DISCUSSED THIS ON

15   AUGUST THE THIRD -- WELL, WE SECOND DISCUSSED IT

16   ON AUGUST THE THIRD.

17        AND THEN THE TIME FOR THEIR RESPONSE

18   CAME AND WENT.  THERE WERE NO ANSWERS, NOTHING

19   SERVED ON THE 7TH OF SEPTEMBER WHEN THEY WERE DUE.

20   WHEN WE GOT ON THE PHONE ON THE 8TH, THEY STILL

21   HAD SERVED NOTHING.  YOUR HONOR THEN GAVE THEM AN

22   EXPLICIT ORDER THAT THEY HAD TO GIVE US WHATEVER

23   THEY HAD BY THE 10TH AND THE REMAINDER BY THE 13TH

24   AT NOON.  SO UNDER RULE 37 (A), THERE IS ABSOLUTE

25   JUSTIFICATION HERE TO DISMISS ALL THE PEOPLE WHO

1   DID NOT RESPOND.

2          AND EVEN IF YOUR HONOR DIDN'T WANT TO

3   PROCEED UNDER 37 (A), 37 (D) GIVES YOU THE

4   AUTHORITY TO DISMISS A PARTY THAT DOESN'T

5   COOPERATE IN DISCOVERY, AND THAT IS EXACTLY WHAT

6   WE HAVE HERE, WHICH IS AN ABSOLUTE REFUSAL OR

7   FAILURE TO PROVIDE COURT-ORDERED, TO RESPOND TO

8   COURT-ORDERED INTERROGATORIES.

9          SO, THOSE 215 SHOULD PROPERLY BE

10  DISMISSED FROM THE CASE.  AND, INDEED, YOUR HONOR,

11  AND MANY OTHER COURTS HAVE DISMISSED PLAINTIFFS IN

12  CIRCUMSTANCES SIMILAR TO THIS WHERE THEY FAIL TO

13  RESPOND TO DISCOVERY.

14         NOW, OF THOSE THAT DID RESPOND, MAY IT

15  PLEASE THE COURT, THEY ARE NOT RELIABLE.  THEY, IN

16  ADDITION TO THE REASON YOUR HONOR HAS RECITED WITH

17  RESPECT TO THE BOILERPLATE, AND I WILL GET TO

18  THAT, THERE ARE EIGHT OR NINE OTHER REASONS WHY IT

19  IS EVIDENT FROM THE FACE OF THESE INTERROGATORIES

20  THAT THEY CAN'T BE RELIED ON.  AND NOT ONLY SHOULD

21  THEY BE STRICKEN, BUT THESE INDIVIDUALS SHOULD BE

22  DISMISSED FOR HAVING FILED THEM.

23         FIRST OF ALL, IF YOU LOOK AT THE DATE

24  ON THE SIGNATURE PAGES, AND WE FILED ALL THE

25  RESPONSES WITH YOUR HONOR BUT I HAVE SOME SAMPLES

```
1   IF YOU DON'T HAVE ANY IN FRONT OF YOU, THEY SIGNED

2   THESE IN THE MIDDLE OF AUGUST.  THE SIGNATURE,

3   THIS IS PAULA BRACKETT'S ANSWERS TO THE SPECIAL

4   SET OF INTERROGATORIES WAS SIGNED ON THE 18TH OF

5   AUGUST.  HERE'S LINDA BOONJANINI (PHONETIC), HERS

6   WERE SIGNED ON THE 13TH OF AUGUST.

7              WHEN WE WERE ON THE PHONE WITH MR.

8   WIGGINS ON THE 8TH OF SEPTEMBER, HE SAID HE HAD

9   400 OR SO ANSWERS, AT LEAST THAT'S WHAT EVERYONE

10  WHO WAS ON THE TELEPHONE WITH ME HEARD HIM SAY.

11  HE SAID HE NEEDED ANOTHER HUNDRED OR 125.  AND

12  SINCE HE NOW CLAIMS THERE WERE 525 TOTAL, THE

13  IMPLICATION WAS WE HAD THE 400, AND THE EXPLICIT

14  STATEMENT.  WE HAVE NO IDEA WHAT WENT ON HERE.  WE

15  HAVE SOME FAX PAGES THAT CAME WITH SOME OF THESE

16  ANSWERS THAT INDICATE THEY WERE ONLY FAXING BACK

17  TWO OR THREE PAGES.  AND, AGAIN, WE CAN PUT ALL

18  THIS IN THE RECORD IF NEED BE.

19              BUT IF ALL OF THESE WERE SIGNED IN THE

20  MIDDLE OF AUGUST AND THEY WEREN'T SERVED ON TIME,

21  AND THEY WERE APPARENTLY IN PLAINTIFF'S COUNSEL'S

22  POSSESSION, THAT MAKES THEM EXTREMELY UNRELIABLE

23  AND INEXPLICABLE.

24              THE COURT:  WHAT WAS THE DATE YOU

25  SERVED THE INTERROGATORIES ON PLAINTIFF'S COUNSEL?
```

1            MS. BROWN:  THE FIFTH OF AUGUST, YOUR

2     HONOR -- THE FOURTH, FOURTH OF AUGUST.  SO OUT OF

3     ALL THESE PEOPLE, THE ONES THAT WE FILED THE

4     EXHIBITS OR THE SANCTION MOTIONS ARE EXAMINED, YOU

5     WILL SEE MANY OF THESE PLAINTIFFS RETURNED THEM.

6     THE BULK RETURNED THEM BETWEEN THE 10TH AND 20TH

7     OF AUGUST.  AT LEAST I DON'T KNOW WHETHER THEY

8     SIGNED THEM, THEY SIGNED THE VERIFICATION.

9            NOW, THE VERIFICATION ITSELF IS VERY

10    PECULIAR.  IN THE STANDARD RESPONSES TO

11    INTERROGATORIES, WHAT PEOPLE SAY IS THAT THE

12    FOREGOING RESPONSES ARE TRUE AND ACCURATE.  THESE

13    DON'T SAY THAT.  WHAT THEY SAY IS THAT THE

14    INTERROGATORY RESPONSES I HAVE PROVIDED IN

15    RESPONSE TO DEFENDANT'S INTERROGATORIES ARE

16    TRUTHFUL AND ACCURATE.  I DON'T KNOW WHETHER

17    THAT'S COINCIDENTAL OR NOT, BUT IT RAISES A VERY

18    SERIOUS QUESTION ABOUT WHAT THEY ACTUALLY HAD IN

19    FRONT OF THEM WHEN THEY SIGNED IT.

20            THIRD OF ALL, AS YOUR HONOR NOTED, THEY

21    DID NOT SERVE OR SEND TO THEIR CLIENTS THE

22    INTERROGATORIES THAT WE SERVED ON THEM.  WE KNOW

23    THAT THAT'S THE CASE BECAUSE THE BLANKS FOR THE

24    NUMBERS ARE NOT IN WHAT WE GOT BACK.  WE KNOW

25    THERE IS A TYPOGRAPHICAL ERROR IN THE FIRST WORD

1   OF INTERROGATORY NUMBER FIVE.  IN THE RESPONSES

2   THAT WE GOT, THAT WAS NOT IN THE INTERROGATORIES

3   THAT WE SENT.  AND WE KNOW THAT THEY SENT THEM TO

4   APPROXIMATELY 50 PEOPLE THAT WE NEVER SERVED WITH

5   INTERROGATORIES.  THERE WERE OBVIOUSLY WORKING OFF

6   AN OLD LIST OF THEIR OWN OF THE PLAINTIFFS, AND

7   THEY SEND OUT SOME DOCUMENT OF THEIR OWN BUT NOT

8   THE INTERROGATORIES WITH WHICH THEY WERE SERVED.

9   AND THEY PROVIDED, OF COURSE, A NARRATIVE SET OF

10  RESPONSES WHICH YOUR HONOR EXPLICITLY SAID IN THE

11  TELEPHONE CONFERENCE ON AUGUST THE THIRD YOU DID

12  NOT WANT.

13          NOW, THE OTHER, ONE OTHER THING IS, IF

14  YOU LOOK AT INTERROGATORY NUMBER, THE RESPONSES TO

15  INTERROGATORY NUMBER ONE, SOMETIMES YOU WILL HAVE

16  A PLAINTIFF WHO SAYS I CAN'T RECALL THE STORE

17  NUMBER WHERE I WORKED.  BUT IF YOU LOOK AT THE

18  OTHER INTERROGATORY RESPONSES WHERE THEY COMPLIED

19  ESSENTIALLY NO INFORMATION, THEY DON'T SAY THEY

20  CAN'T RECALL.  THEY SAY, QUOTE, I CAN'T STATE, END

21  QUOTE.  AND YOUR HONOR, THIS IS AN EVASIVE AND

22  INCOMPLETE AND DECEPTIVE SET OF RESPONSES.  THEY

23  CAN'T STATE IT BUT THEY DON'T SAY THEY HAVE

24  SEARCHED THEIR MEMORY AND THEY CAN'T RECALL IT,

25  AND THAT MAKES THEM UNRELIABLE AS WELL.

1          WE HAVE INTERROGATORY, SET OF

2   INTERROGATORY RESPONSES FROM WENDY BOOKER.  SHE

3   ANSWERED THESE ON BEHALF OF HER DECEASED HUSBAND,

4   WHO WAS A PLAINTIFF.  IT IS NOT CREDIBLE THAT SHE

5   KNEW THE PERCENTAGE OF TIME THAT HE SPENT ON

6   NON-EXEMPT DUTIES OF HER PERSONAL KNOWLEDGE, AND,

7   OBVIOUSLY, UNDER RULE 602, THE FEDERAL RULES OF

8   EVIDENCE, THERE IS NOTHING HERE THAT WOULD SHOW

9   THE WITNESS HAD PERSONAL KNOWLEDGE.  IT'S NOT

10  CREDIBLE.

11          MANY OF THESE PLAINTIFFS STILL WORK FOR

12  DOLLAR TREE.  IT IS NOT CREDIBLE THAT THEY COULD

13  NOT REMEMBER THE NUMBER OF HOURS THAT THEY SPENT

14  ON ANY OF THE TASKS THAT WERE LISTED IN THE NINE

15  INTERROGATORIES YESTERDAY OR LAST WEEK OR LAST

16  MONTH, AND YET THEY FILED IDENTICAL, BOILERPLATE

17  RESPONSES TO ALL OF THE OTHER PLAINTIFFS WHO

18  PROVIDED THEM.

19          NOW, OF MOST CONCERN HERE, OBVIOUSLY,

20  IS THE FACT THESE WERE BOILERPLATE, CANNED

21  RESPONSES.  AND EXCEPT FOR THE TOTAL NUMBER OF

22  HOURS, WHICH WAS THE ONE QUESTION THAT PLAINTIFF'S

23  COUNSEL WANTED TO ASK AND THE STORE NUMBERS, YOUR

24  HONOR HAD ALREADY WARNED PLAINTIFF'S COUNSEL IN

25  THIS CASE THAT BOILERPLATE WOULD NOT BE TOLERATED

```
 1    WHEN WE GOT TO THAT STAGE, AND I AM QUOTING FROM

 2    YOUR ORDER OF APRIL 12, 2007, DOCKET NUMBER 262 AT

 3    SIX, NOTE FIVE.  THE COURT NOTES THESE

 4    DECLARATIONS ARE OBVIOUSLY FORMED DECLARATIONS.

 5    THE DECLARATIONS SHOW MINIMAL, IF ANY, DIVERGENCE

 6    FROM ONE ANOTHER.  ALTHOUGH NOT FATAL TO

 7    PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION

 8    AND NOTICE, PLAINTIFF WILL HEAVILY ENGAGE IN

 9    HIDING EVIDENTIARY AND FACTUAL DEVELOPMENT TO

10    SURVIVE THE INEVITABLE, TWO-TIERED DECERTIFICATION

11    ANALYSIS, END QUOTE.

12          AND YET WHAT DID THEY DO AT THIS

13    STAGE?  EXACTLY THE SAME THING, IF NOT MORE

14    EGREGIOUS, BECAUSE THIS WAS IN RESPONSE TO YOUR

15    HONOR'S ORDER.

16          NOW, YOUR HONOR SPECIFICALLY ADDRESSED

17    THE VERY, THE FACT THAT THEY ARE ALL BOILERPLATE

18    IS ONE THING.  BUT THE FACT THEY DON'T PROVIDE THE

19    INFORMATION YOU EXPLICITLY TOLD THEM TO IS

20    ANOTHER.  AND I AM QUOTING NOW FROM THE TRANSCRIPT

21    OF THE AUGUST 3RD CONFERENCE, AND I HAVE COPIES --

22    WOULD YOUR HONOR LIKE TO SEE HAVE A COPY.

23          THE COURT:  IS THIS THE ONE YOU FILED?

24          MS. BROWN:  YES.

25          THE COURT:  I HAVE IT RIGHT HERE.
```

```
 1              MS. BROWN:  AT PAGE FIVE, WHERE YOUR

 2   HONOR SAYS WE ARE TALKING ABOUT HOW MANY HOURS A

 3   WEEK PEOPLE PERFORM CERTAIN TASKS, AND WHO SAY I

 4   FIRMLY BELIEVE THE DEFENDANT HAS A RIGHT TO OBTAIN

 5   THE INFORMATION OR THE EVIDENCE TO QUESTION.  IT'S

 6   VERY EASY FOR THE PLAINTIFF TO SAY OR OPT-IN

 7   PLAINTIFF TO SAY I SPENT 80 PERCENT OF MY TIME,

 8   BUT I THINK THE DEFENDANT HAS A RIGHT LIKE THEY

 9   WOULD IF THEY DEPOSED THIS PERSON TO SAY, WELL,

10   HOW MANY HOURS IS THAT TO TEST THAT, SO I AM GOING

11   TO ALLOW THEM TO DO THAT.

12              AND ON THE NEXT PAGE, ON PAGE SIX, YOUR

13   HONOR SAYS, I THINK IT'S IMPORTANT THAT THE

14   DEFENDANT BE ENTITLED TO NOT JUST ASK WHAT

15   PERCENTAGE BUT TO GET AT THE PERCENTAGE BY HOW

16   MUCH TIME DO YOU SPEND DOING THIS, SO I AM GOING

17   TO ALLOW THEM TO ASK THE QUESTION "HOW MANY HOURS

18   DO YOU SPEND DOING THIS" OR "HOW MANY HOURS YOU

19   SPENT DOING THAT" LIKE THEY HAVE.

20              AND THEN IN THEIR RESPONSE FILED

21   YESTERDAY, PLAINTIFF'S COUNSEL SAID THEY

22   MISUNDERSTOOD AND THOUGHT BECAUSE YOU REFERENCED

23   FIVE PERCENT IN DISCUSSING CONCURRENT DUTIES THAT

24   THEY THOUGHT SOMEHOW A PERCENTAGE WAS ALL RIGHT.

25   BUT YOUR HONOR, THEY ARE VERY MISLEADINGLY CITING
```

1   THE TRANSCRIPT AT THAT.

2            AT PAGE TEN, WE ARE TALKING ABOUT THE

3   CONCURRENT QUESTION, AND ACTUALLY STARTS AT THE

4   BOTTOM OF PAGE NINE.  AND YOU SAY YOU ALL HAVE

5   ARGUED THAT THEY SPENT 85, 90 PERCENT.

6            THE COURT:  HANG ON A SECOND.  I AM ON

7   PAGE NINE OF THE FREEDOM COURT REPORTING --

8            MS. BROWN:  YES, YOUR HONOR, AT LINE

9   21.

10           THE COURT:  THAT'S NOT WHAT -- ALL

11  RIGHT.  MY PAGE NUMBERING MIGHT BE OFF OR

12  SOMETHING.

13           MS. BROWN:  IS THIS THE AUGUST 3RD,

14  2010, TELEPHONE CONFERENCE?

15           THE COURT:  YES.  CAN YOU BRING ME YOUR

16  TRANSCRIPT AND LET ME SEE WHERE IT'S OFF?  ALL

17  RIGHT.  NOW, WHAT PAGE ARE YOU DIRECTING ME TO?

18           MS. BROWN:  AT THE BOTTOM OF PAGE

19  NINE -- OH, PAGE SEVEN.  WELL, THAT'S A GOOD

20  REASON WHY YOU DON'T HAVE IT.  SO, BUT I AM

21  ACTUALLY --

22           THE COURT:  ALL RIGHT.  SEE IN THE SIDE

23  BLOCK IT SAYS "PAGE."

24           MS. BROWN:  YES.

25           THE COURT:  THEN IT'S GOT A NUMBER.

1          MS. BROWN:  YES.

2          THE COURT:  I THINK YOU ARE PROBABLY

3     GOING WITH THE FAX AT THE TOP OR SOMETHING.  I

4     DON'T KNOW.

5          MS. BROWN:  ANYWAY, PAGE TEN IS WHERE

6     WE ARE DISCUSSING THE CONCURRENT DUTIES.

7          THE COURT:  PAGE TEN INSIDE THE BLOCK?

8          MS. BROWN:  PAGE TEN INSIDE THE BLOCK.

9          THE COURT:  WHAT LINE NUMBER YOU WANT

10    ME TO START AT?

11         MS. BROWN:  I AM STARTING RIGHT AT THE

12    TOP.

13         THE COURT:  WHERE IT SAYS INFORMATION,

14    BUT I HAVE NO PROBLEM WITH --

15         MS. BROWN:  YES; YES.  AND WE ARE

16    TALKING ABOUT ASKING THE QUESTION ABOUT CONCURRENT

17    DUTIES AND WHETHER THEY CAN PERFORM EXEMPT AND

18    NON-EXEMPT DUTIES AT THE SAME TIME.  AND YOU SAY I

19    HAVE NO PROBLEM WITH ASKING THE QUESTION AND THE

20    PLAINTIFF CAN SAY NO, OR THE PLAINTIFF CAN SAY I

21    ONLY SPENT FIVE PERCENT OF MY TIME ABOVE DOING

22    BOTH THINGS.  I MEAN, I HAVE NO IDEA WHAT THE

23    PLAINTIFFS ARE GOING TO SAY, BUT NOT PERCENT.

24    THEY CAN SAY THE AMOUNT OF TIME I SPENT DOING CASH

25    REGISTER, CHECKOUT PEOPLE, I WOULD ESTIMATE I

1    SPENT X-NUMBER OF HOURS SIMULTANEOUSLY SUPERVISING

2    OTHER EMPLOYEES.

3          SO THE QUOTE THAT THE PLAINTIFFS

4    COUNSEL PUT IN THEIR BRIEF ABOUT HOW YOU SAID A

5    PERCENT RESPONSE WAS ACCURATE, IT'S JUST

6    ABSOLUTELY NOT TRUE BECAUSE IN THE VERY NEXT LINE

7    YOU CORRECTED YOURSELF AND SAID, NO, IT'S THE

8    NUMBER OF HOURS THAT I WANT.  I WON'T SAY

9    CORRECTED YOURSELF, YOU MADE IT CLEAR TO THE

10   PARTIES THAT WHAT YOU WANTED WAS NUMBER OF HOURS,

11   NOT THE PERCENTAGE.  SO, THEIR COULDN'T HAVE BEEN

12   ANY LACK OF CLARITY WHATSOEVER ABOUT WHAT YOUR

13   HONOR WAS SEEKING HERE.

14          THE COURT:  OKAY.

15          MS. BROWN:  NOW, IF THIS WERE THE FIRST

16   TIME THAT THESE COUNSEL HAD DONE THIS VERY SAME

17   THING, THAT WOULD BE ONE THING.  BUT WE SUBMITTED

18   TO YOUR HONOR THE OPINION THAT WE CITED IN THE

19   SANCTIONS BRIEF THE OPINION IN RAY V. FAMILY

20   DOLLAR, FLSA LITIGATION WHERE THE VERY SAME THING

21   HAPPENED. PLAINTIFF'S COUNSEL SUBMITTED CANNED

22   INTERROGATORY RESPONSES WHICH THE COURT FOUND TO

23   BE INHERENTLY INCREDIBLE, AND THE COURT DISMISSED

24   THE PLAINTIFFS FROM THAT CASE WHO HAD FILED THOSE

25   AND SERVED THOSE ANSWERS AND SAID THIS IS INTENDED

1    TO DETER THIS TYPE CONDUCT.  THIS VERY SAME

2    PLAINTIFF'S COUNSEL WERE THE COUNSEL IN THAT CASE.

3           APPARENTLY, IT DID NOT SUFFICE TO DETER

4    THAT CONDUCT BECAUSE WHAT WE HAVE HERE IS FRANKLY

5    EVEN MORE EGREGIOUS BECAUSE IT'S NARRATIVE

6    ANSWERS, DOESN'T BREAK IT DOWN BY THE TASKS THAT

7    YOUR HONOR WANTED ADDRESSED.  IT ONLY TALKS ABOUT

8    A TOTAL PERCENTAGE AND IT DOESN'T GIVE ANY

9    INDIVIDUALIZED INFORMATION.  IT IS NOT CREDIBLE

10   THE INCUMBENT STORE MANAGERS, THE WIDOW AND ALL

11   THE OTHER NAMED PLAINTIFFS HAVE EXACTLY THE SAME

12   ANSWER TO ALL OF THESE QUESTIONS.

13          SO, SIMILAR TO WHAT THE COURT IN THE

14   FAMILY DOLLAR LITIGATION DID, WE ARE REQUESTING

15   THAT, AS A SANCTION, YOUR HONOR DISMISS THESE

16   INDIVIDUALS FROM THE CASE.  IT'S NOT ENOUGH JUST

17   TO STRIKE THE INTERROGATORIES, WHICH WE BELIEVE

18   CERTAINLY SHOULD BE DONE.  THEY ARE TANTAMOUNT TO

19   AN INVASIVE OR INCOMPLETE ANSWERS, WHICH UNDER

20   RULE 37 IS SANCTIONABLE WITH A RANGE OF SANCTIONS

21   UP TO AND INCLUDING DISMISSAL.

22          AND PLAINTIFF'S COUNSEL SAY, WELL, HOW

23   IS ANYONE PREJUDICED BY THIS?  YOUR HONOR

24   SPECIFICALLY RAISED A QUESTION ABOUT AVOIDING THE

25   EVIDENCE.  WE WERE DEPRIVED OF THE OPPORTUNITY TO

```
1     SHOW THE DISSIMILARITIES THAT HONEST ANSWERS WOULD

2     HAVE YIELDED.  AND YOUR HONOR IS THWARTED IN YOUR

3     EFFORT TO GET A FULL RECORD AND TO GIVE THEM AN

4     OPPORTUNITY TO SUPPLEMENT WHATEVER HAD BEEN

5     PROVIDED SO THEY COULD CARRY THEIR BURDEN TO SHOW

6     THESE PLAINTIFFS ARE SUFFICIENTLY, SIMILARLY

7     SITUATED THAT A COLLECTIVE ACTION IN WHICH ONLY

8     REPRESENTATIVES TESTIFY SUFFICES FOR AN UP OR DOWN

9     JUDGMENT ON ALL.

10              AND I WILL TELL YOUR HONOR, IN RESPONSE

11    TO ONE OF THE QUESTIONS YOU HAVE RAISED, DOLLAR

12    TREE JUST TRIED A STORE MANAGER EXEMPTION CASE AND

13    WON.  AND WHEN WE, IF WE GET TO THE PORTION OF

14    THIS HEARING, OR WHEN WE GET TO THE PORTION ON

15    DECERTIFICATION, I AM GOING TO ASK YOU TO LOOK AT

16    THAT OPINION BECAUSE IT'S PROOF POSITIVE THAT

17    THERE ARE EXEMPT INDIVIDUALS HERE AND THAT --

18              THE COURT:  TRIED IT IN SOUTH

19    CAROLINA?

20              MS. BROWN:  NO, IN CALIFORNIA, YOUR

21    HONOR.  MORE RIGOROUS STANDARD EVEN THAN HERE, AND

22    CERTAINLY RELEVANT BECAUSE --

23              THE COURT:  TRIED IT TO A JURY?

24              MS. BROWN:  NO, TO A JUDGE.  BUT IT IS

25    AN EXHAUSTIVE SET OF FINDINGS, WHICH I WILL
```

1  PROFFER TO THE COURT.

2  I DON'T WANT TO GET TO THE

3  DECERTIFICATION RIGHT THIS MOMENT, YOUR HONOR,

4  BECAUSE WE DO HAVE EVIDENCE TO GIVE YOU TO

5  CONSIDER ON THAT.  BUT MY POINT ON THE SANCTIONS

6  MOTION IS THESE ANSWERS HAVE NO INTEGRITY.  THERE

7  WAS NO SET, THERE WAS NO SIGNATURE BY PLAINTIFF'S

8  COUNSEL ON THESE ANSWERS.  THEIR OBJECTIONS ARE

9  WAIVED.  THERE ARE NO -- THERE SHOULD BE NO VALID

10  OBJECTIONS TO THESE QUESTIONS BECAUSE THERE WAS NO

11  SIGNED RESPONSE PROVIDED.

12  AND WE WOULD ASK YOUR HONOR TO DISMISS

13  THE PLAINTIFFS' ANSWERS, TO DISMISS THE PLAINTIFFS

14  WHO FILED THE SHAM ANSWERS, AND TO REFUSE TO

15  PERMIT THE PLAINTIFFS TO SUPPLEMENT THE RECORD IN

16  ANY OTHER WAY ON THIS DECERTIFICATION MOTION AS A

17  SANCTION FOR THIS FRAUDULENT BEHAVIOR.

18  THE COURT:  OKAY.  GREG.

19  MR. GREG WIGGINS:  YOUR HONOR, I WILL

20  TRY TO ADDRESS ALL OF HER POINTS.  I MAY MISS ONE

21  OR TWO.

22  BUT ADDRESSING SOME OF THE COURT'S

23  INITIAL CONCERNS, THE REASON, ONE OF THE REASONS,

24  AT LEAST, THAT THE ISSUE OF PERCENTAGE OF TIME WAS

25  NOT ADDRESSED MORE THOROUGHLY IN OUR RESPONSE TO

1    THE DECERT BRIEF WAS BECAUSE THE PERCENTAGE OF

2    TIME THAT WAS OUT THERE.  86 PERCENT WAS NEVER

3    CHALLENGED BY THE DEFENDANT.  THE DEFENDANT

4    ITSELF, THROUGH ITS OWN WITNESSES, ADMITTED THEY

5    HAD NO EVIDENCE TO EXCUSE THE PLAINTIFFS'

6    TESTIMONY.

7            THE COURT:  LET'S DON'T GO TO THE

8    CERTIFICATION ISSUE.  LET'S GO TO THE SANCTIONS

9    FIRST, OKAY, THEN WE'LL GO TO THAT.

10           MR. GREG WIGGINS:  WELL, I TRIED TO

11   WRITE DOWN THE ORDER, WHAT SHE WAS TALKING ABOUT.

12           FIRST THING SHE TALKED ABOUT WAS DATE

13   ON THE SIGNATURE PAGE MAKES.  I AM NOT EVEN

14   FOLLOWING THAT ARGUMENT, YOUR HONOR.  OUR GOAL WAS

15   TO GET ALL THE ANSWERS IN AND FILE ALL THE ANSWERS

16   AT ONE TIME.  IN FACT, PLAINTIFF SIGNED AN

17   INTERROGATORY RESPONSE ON AUGUST 13TH OR AUGUST

18   18TH OR AUGUST 21ST DOESN'T MAKE THE ANSWER

19   UNRELIABLE.  IN FACT, IT MAKES THEM RELIABLE FROM

20   THE STANDING POINT IT SHOWS TRUTH WE SENT

21   INTERROGATORIES TO THE PLAINTIFFS.

22           I DON'T KNOW WHERE MS. BROWN COMES UP

23   WITH THIS IDEA THAT WE DID NOT SEND

24   INTERROGATORIES THAT WERE SERVED ON US TO THE

25   PLAINTIFF, BUT I ASSURE THIS COURT THAT WAS WHAT

1    WAS SENT TO THOSE PLAINTIFFS, THOSE

2    INTERROGATORIES.

3              THE COURT:  ALL RIGHT.  LET ME MAKE

4    SURE I UNDERSTAND.  YOU ARE SAYING THAT YOU TYPED

5    UP INTERROGATORIES SEPARATELY, RETYPED THEIR

6    INTERROGATORIES?

7              MR. GREG WIGGINS:  NO, SIR.  WE COPIED

8    THEIR INTERROGATORIES.

9              THE COURT:  OKAY.  LET'S, YOU SENT

10   THOSE TO THE PLAINTIFFS?

11             MR. GREG WIGGINS:  YES, SIR.

12             THE COURT:  AND THEY SIGNED THEM AND

13   FAXED THEM BACK TO YOU?

14             MR. GREG WIGGINS:  THEY ANSWERED AND

15   SIGNED THEM AND FAXED THEM BACK TO ME, YES, SIR.

16             THE COURT:  THAT'S HOW THEY WERE DATED

17   IN AUGUST OR WHATEVER?

18             MR. GREG WIGGINS:  YES, SIR.

19             THE COURT:  HANG ON JUST A SECOND.  ALL

20   RIGHT.  I HAVE, THERE WAS FILED WITH THE COURT

21   DOCUMENT NUMBER 394 AND EXHIBIT ONE TO THAT WAS

22   DEFENDANT DOLLAR TREE STORES, INC.,

23   INTERROGATORIES TO, AND THEN IT HAS A PLACE FOR

24   THE PLAINTIFF'S NAME TO GO.  AND THAT HAS, FOR

25   INSTANCE, UNDER ALL OF THE INTERROGATORIES NUMBER

1    ONE, TWO, THREE, IT HAS STORE NUMBER, BLANK, HOURS

2    PER WEEK, BLANK.  AND THEN FILED IN SUPPORT OF

3    THIS FOR SANCTIONS, THEY, THE DEFENDANT, SUBMITS

4    THE INTERROGATORIES THAT WERE ALLEGEDLY FILED WITH

5    TOM AARON, SAME THING.

6              ARE YOU TELLING ME IN THE ONES I AM

7    LOOKING AT FROM Y'ALL, GREG, DON'T HAVE THE STORE

8    NUMBER AND HOURS BLANK AT ALL?  THEY DON'T EVEN

9    HAVE THAT.

10              MR. GREG WIGGINS:  THEY DON'T BECAUSE

11   THEY ARE CONFUSING APPLES AND ORANGES, YOUR HONOR.

12   WE SENT THE INTERROGATORIES TO THE PLAINTIFFS AND

13   WE ANSWERED THE QUESTIONS.  WE TYPED UP THE

14   ANSWERS.

15              THE COURT:  DID YOU TYPE UP THE

16   INTERROGATORIES AGAIN?

17              MR. GREG WIGGINS:  YES.  WHEN WE

18   PREPARED THE ANSWERS, WE PREPARED THE DOCUMENT

19   THAT WAS SENT TO THE PLAINTIFFS -- I MEAN, TO THE

20   DEFENDANT.  WHAT WAS SENT TO THE PLAINTIFF THOUGH

21   IS WHAT THEY SENT US.

22              THE COURT:  YOU SENT --

23              MR. GREG WIGGINS:  WE DID NOT TYPE UP

24   THE ANSWERS, WE DID NOT TYPE UP NEW

25   INTERROGATORIES AND SEND THEM TO THE PLAINTIFFS.

1   WE COPIED WHAT THEY GAVE US, WE SENT THEM TO THE

2   PLAINTIFFS.  WE GOT THEIR ANSWERS BACK AND WE SENT

3   THE ANSWERS, WE RETYPED THE INTERROGATORIES AND

4   THE ANSWERS.

5           THE COURT:  AND THEN STUCK THEIR

6   SIGNATURE ON IT?

7           MR. GREG WIGGINS:  AND ATTACHED A

8   SIGNATURE TO IT.

9           THE COURT:  ALL RIGHT.  GO AHEAD.

10  THAT'S WHAT I THOUGHT WOULD HAVE HAPPENED OR

11  SOMETHING LIKE THAT.  AND I ASKED YOU A MINUTE AGO

12  IF YOU RETYPED THEIR QUESTIONS.  I DIDN'T MEAN DID

13  YOU RETYPE THEM IN SOME KIND OF VICIOUS THING.  I

14  MEANT DID YOU JUST RETYPE THEM, BECAUSE I COULDN'T

15  SEE HOW YOU COULDN'T HAVE RETYPED THEM UNLESS

16  SOMEBODY WAS NOT TELLING ME THE TRUTH ABOUT WHAT

17  GOT SENT TO YOU.

18          MR. GREG WIGGINS:  I CAN ASSURE THE

19  COURT THOSE INTERROGATORIES WERE SENT TO THE

20  PLAINTIFFS.

21          THE COURT:  I UNDERSTAND YOU.  WHAT YOU

22  ARE SAYING IS YOU SENT THE INTERROGATORIES THEY

23  SENT YOU WITH THE BLANK STORE NUMBER AND BLANK FOR

24  HOURS, YOU SENT TO THE PLAINTIFFS?

25          MR. GREG WIGGINS:  YES, SIR.

```
 1              THE COURT:  AND THAT YOU SENT IT JUST
 2    LIKE THAT, BLANKS AND BLANKS?
 3              MR. GREG WIGGINS:  IDENTICAL.
 4              THE COURT:  THEN AT SOME POINT YOU ARE
 5    SAYING YOU GOT RESPONSES BACK FROM THEM?
 6              MR. GREG WIGGINS:
 7              THE COURT:  AND THE RESPONSES YOU GOT
 8    BACK FROM THEM, THEN YOU RETYPED.
 9              MR. GREG WIGGINS:  YES, SIR.
10              THE COURT:  STUCK THEIR SIGNATURE ON
11    IT?
12              MR. GREG WIGGINS:  YES, SIR.
13              THE COURT:  AND SENT IT IN?
14              MR. GREG WIGGINS:  YES, SIR.
15              THE COURT:  GO AHEAD.
16              MR. GREG WIGGINS:  SO, I AM GOING BACK
17    TO THE DATE ON THE SIGNATURE PAGE.  I'M NOT SURE
18    HOW THAT MAKES --
19              THE COURT:  I FOLLOW YOU.
20              MR. GREG WIGGINS:  SO THEY ARGUE ABOUT
21    NOT SERVING INTERROGATORIES.  I SAID WE SERVED THE
22    INTERROGATORIES ON THE PLAINTIFFS.  SHE MAKES AN
23    ARGUMENT ABOUT SOME KIND OF DISTINCTION BETWEEN
24    SOME PLAINTIFFS SAID THEY CAN'T RECALL, SOME SAY
25    THEY CAN'T STATE.  I AM NOT UNDERSTANDING THE
```

1    DISTINCTION THERE THAT HAS ANY MERIT.  YOU CAN'T

2    STATE AND I CAN'T RECALL, I AM NOT SURE THERE IS A

3    DIFFERENCE THERE.

4              THE POINT OF THE MATTER IS THEY DIDN'T

5    REMEMBER THEIR STORE NUMBER.  SOME OF THESE

6    PLAINTIFFS HADN'T WORKED FOR DOLLAR TREE FOR FOUR

7    OR FIVE YEARS.  I DOUBT SERIOUSLY THAT STRETCHES

8    THE WITNESS' IMAGINATION THAT YOU CAN'T REMEMBER A

9    PARTICULAR STORE NUMBER WORKED AT FIVE YEARS AGO.

10   AND I CAN PRETTY MUCH ASSURE THE COURT THAT IF

11   THEY TOLD US A STORE NUMBER AND IT HAD BEEN

12   INCORRECT, THE DEFENDANT WOULD BE UP HERE

13   COMPLAINING ABOUT THAT, THAT THEY GAVE INCORRECT

14   STORE NUMBERS.  SO, I DON'T SEE THE DIFFERENCE

15   THERE.

16             NOW, WENDY BOOKER.  WENDY BOOKER -- MR.

17   BOOKER HAS A HISTORY IN THIS CASE, IF THE COURT

18   REMEMBERS BACK, THE DEFENDANT NOTICED MR. BOOKER

19   FOR DEPOSITION.  AND MR. BOOKER CONTACTED US AND

20   MR. BOOKER WAS DYING OF CANCER.  AND THE DEFENDANT

21   WANTED TO HAVE MR. BOOKER DISMISSED AND FOUGHT

22   LIKE HECK TO GET HIM DISMISSED AND THE COURT WOULD

23   NOT DISMISS HIM.  THEY WERE ALLOWED A SUBSTITUTE.

24             WELL, IN THE MEANTIME BETWEEN THE

25   DEPOSITIONS AND THESE INTERROGATORIES GOING ON,

```
 1    UNBEKNOWNST TO US, MR. BOOKER DIED.  WHEN WE SENT

 2    INTERROGATORIES OUT, MS. BOOKER CALLED US AND SAID

 3    I CAN'T HELP YOU HERE AS FAR AS MR. BOOKER BECAUSE

 4    HE IS DEAD, BUT I CAN HELP YOU ANSWER THESE

 5    QUESTIONS BECAUSE I KNOW THIS INFORMATION.  AND WE

 6    TOOK THE INFORMATION FROM HER ON THE PHONE BASED

 7    ON HER OWN PERSONAL KNOWLEDGE, AND WE PROVIDED

 8    THEM AN ANSWER.  THAT'S THE SITUATION WITH

 9    MR. BOOKER.

10              THE COURT:  I AM NOT GREATLY CONCERNED

11    ABOUT THAT.

12              MR. GREG WIGGINS:  I UNDERSTAND THAT,

13    YOUR HONOR.  I AM JUST TRYING TO EXPLAIN THE OTHER

14    ARGUMENTS.

15              THE COURT:  THAT IS SO FAR DOWN ON

16    MY --

17              MR. GREG WIGGINS:  I UNDERSTAND.

18              THE COURT:  -- RADAR SCREEN RIGHT

19    NOW.  BECAUSE WHEN YOU HAVE A SUBSTITUTION OF A

20    PARTY, YOU KNOW, WHEN INTERROGATORIES ARE SENT

21    THERE IS REALLY AN INTERPLAY, IT'S LIKE A

22    CORPORATION, THEY ARE ANSWERING THE QUESTIONS.

23              GO AHEAD.  I AM LISTENING.

24              MR. GREG WIGGINS:  THE ANSWERS, YOUR

25    HONOR, WHERE THEY SAY THEY ARE NOT RESPONSE, I
```

```
 1    HAVE -- THAT'S THEIR MOTION.  THEY ARE NOT
 2    RESPONSIVE, THEY ARE NOT INDIVIDUALIZED, AND THE
 3    COURT WANTED A SPECIFIC NUMBER OF HOURS.  THE
 4    PLAINTIFFS' HOURS WOULD VARY EACH WEEK THEY
 5    WORKED.  IN ORDER TO ANSWER THAT QUESTION AS THEY
 6    WROTE IT, A PLAINTIFF WOULD HAVE TO STATE ON WEEK
 7    NUMBER ONE OF JANUARY 2007, I WORKED 80 HOURS.
 8    AND IN THAT WEEK, I WORKED 23 HOURS STOCKING, 26
 9    HOURS DOING THIS.  THEN WEEK NUMBER TWO, I ONLY
10    WORKED 63 HOURS AND I HAD, I SPENT A NUMBER OF
11    HOURS DOING THIS, NUMBER OF HOURS DOING THAT.
12    NUMBER THREE OF --
13              THE COURT:  HANG ON.  IT SAYS ON
14    AVERAGE.
15              MR. GREG WIGGINS:  ON AVERAGE, AND
16    THAT'S WHAT WE GAVE --
17              THE COURT:  (WHISTLING.)  IT SAYS,
18    STATE HOW MANY HOURS THAT YOU SPENT EACH WEEK ON
19    AVERAGE, AND THEN LISTED THE RESPONSIBILITIES.
20              MR. GREG WIGGINS:  EACH WEEK ON
21    AVERAGE.  SO THEY ARE ASKING FOR EACH WEEK.  TELL
22    US WHAT YOU SUBMITTED.  YOU CAN'T ANSWER THAT
23    QUESTION.  IT VARIES EVERY WEEK.  SO WHAT THEY
24    HAVE IS THE INFORMATION THAT THEY WANTED AND THAT
25    THIS COURT WANTED.  THEY HAVE A NUMBER OF HOURS
```

1    THEY WORKED AVERAGE WORKING, LET'S SAY 60 HOURS A

2    WEEK.  THEN THEY HAVE A PERCENTAGE OF THE TIME

3    SPENT PERFORMING OTHER DUTIES, AND YOU COME UP

4    WITH A NUMBER OF HOURS.  BUT IT'S GOING TO BE A

5    GUESS EACH WEEK BECAUSE THEY GAVE THEM AN AVERAGE

6    NUMBER OF HOURS PER WEEK, THEY GAVE AN AVERAGE

7    PERCENTAGE OF TIME, AND THE TWO OF THEM GAVE YOU

8    THE INFORMATION THAT THEY ARE SEEKING AND WE

9    THOUGHT THIS COURT WANTED.

10          WE THOUGHT THE ANSWER WAS NAILING IT DOWN

11   ON THE ACTUAL NUMBER OF HOURS.  SO IF THE

12   PERCENTAGE IS NOT WHAT THE COURT WANTED, THAT WAS

13   MY ERROR, NOT THE CLIENT'S ERROR.  AND THE CLIENT

14   SHOULDN'T BE PUNISHED FOR THIS.  THE CLIENT SHOULD

15   BE ALLOWED TO CORRECT IT.  BUT IT WAS CERTAINLY

16   NOT INTENTIONAL ERROR THAT WOULD WARRANT

17   SANCTIONS.

18          WE HAVE GONE THROUGH DISCOVERY FOR 20

19   MONTHS AND THE DEFENDANT DID NOT WANT TO KNOW THIS

20   INFORMATION.

21          THE COURT:  HANG ON.  DEFENDANT WANTED

22   TO KNOW THIS INFORMATION.  I THINK THE COURT KEPT

23   THEM FROM BEING ABLE TO ASK THESE QUESTIONS, IF I

24   REMEMBER RIGHT.  ISN'T THAT RIGHT?

25          MS. BROWN:  YES, YOUR HONOR.

```
 1              MR. GREG WIGGINS:  NO, SIR, IT IS NOT

 2    RIGHT.  YOU ALLOWED THEM TO ASK ANY QUESTIONS THEY

 3    WANTED.  YOU LIMITED HER TO THE NUMBER OF

 4    QUESTIONS THEY COULD ASK.  THEY DIDN'T HAVE THIS

 5    QUESTION.  THEY COULD HAVE ASKED IT, THEY COULD

 6    HAVE ASKED IT IN THE DEPOSITIONS.

 7              THE COURT:  LET'S DON'T GET OFF ON

 8    DEPOSITIONS BECAUSE I LIMITED THE NUMBER OF

 9    DEPOSITIONS.

10              MR. GREG WIGGINS:  I WON'T.  BUT I

11    THINK IT'S IMPORTANT, YOUR HONOR, AND I AM --

12              THE COURT:  I AM TALKING ABOUT THE ONES

13    WHO HAD NOT ANSWERED DEPOSITIONS, THE 207 THAT

14    FILED ANSWERS TO THE INTERROGATORIES AND HAD NOT

15    BEEN DEPOSED.  I MEAN, THE 215 I WANT TO YOU

16    ADDRESS BECAUSE THOSE ARE ONES WHO DID NOT FILE

17    ANY OF THE INTERROGATORIES AND THEY HAVE NOT BEEN

18    DEPOSED.  AND I WANT YOU TO ADDRESS THE 207 WHO

19    FILED ANSWERS TO INTERROGATORIES AND THOSE, THE

20    ONES WHO HAD NOT BEEN DEPOSED.  BECAUSE I AGREE

21    WITH YOU, IF THEY TOOK THEIR DEPOSITION THEY COULD

22    HAVE ASKED ALL THESE QUESTIONS.

23              MR. GREG WIGGINS:  WELL, I THINK WHAT

24    THE COURT WANTS, YOUR HONOR, IS SOME ADDITIONAL

25    EVIDENCE TO SHOW PERCENT OF TIME SPENT ON
```

1   NON-MANAGERIAL DUTIES.  THAT'S WHAT I UNDERSTAND

2   THE PURPOSE OF THIS HEARING WAS.  THERE IS

3   EVIDENCE THAT CAN BE PUT IN THE RECORD, THAT IS IN

4   THE RECORD THAT WILL ESTABLISH IT.  BUT GOING BACK

5   TO WHAT YOU ASKED, THE 207 WHO DID NOT ANSWER,

6   YOUR HONOR, THEY DID NOT ANSWER BUT THERE IS --

7            THE COURT:  207 ANSWERED.

8            MR. GREG WIGGINS:  215 WHO DID NOT

9   ANSWER.  THEY DID NOT ANSWER.  WE HAVE SENT THEM

10  THE INITIAL LETTER WITH INTERROGATORIES, WE SENT

11  THEM A FOLLOW-UP LETTER WITH INTERROGATORIES --

12  NOT WITH INTERROGATORIES, GAVE THEM ANOTHER LETTER

13  TELLING THEM THEY NEEDED TO ANSWER.  BUT THEY

14  DIDN'T ANSWER.  FOR WHAT REASON, I DON'T KNOW.

15  BUT THERE HASN'T BEEN A MOTION TO COMPEL FILED BY

16  THE DEFENDANT ON THE ONES WHO DID NOT ANSWER.

17           THE COURT:  DO YOU CONTEND -- I KNOW

18  YOU PUT THAT IN YOUR BRIEF LAST TIME, SO WE GOT IT

19  LAST TIME.  BUT I AM NOT FUSSING AT YOU ABOUT THAT

20  BECAUSE THIS CAME UP AT THE END.  BUT IT'S MY

21  UNDERSTANDING OF THE LAW THAT IF I ORDER IT, IT

22  PUTS IT IN A DIFFERENT LIGHT THAN A STANDARD

23  INTERROGATORY WHERE IT'S JUST SENT OUT AND THEN

24  THE PARTY HAS TO DO A MOTION TO COMPEL AND I HAVE

25  TO ENTER AN ORDER.  IF I ACTUALLY, AFFIRMATIVELY

1    STEP FORWARD AND ORDER ANSWERS OF INTERROGATORIES

2    AS PART OF PROCEEDING OR DISCOVERY OR WHATEVER,

3    IT'S DIFFERENT.   I DON'T HAVE TO FOLLOW IT WITH

4    ANOTHER ORDER BEFORE IT'S SANCTIONABLE.  DO YOU

5    DISAGREE WITH THAT?

6              MR. GREG WIGGINS:  I DISAGREE TO THIS

7    EXTENT, YOUR HONOR.  WHEN YOU ORDERED THE

8    INTERROGATORIES TO BE SENT OUT, YOU WILL RECALL I

9    BROUGHT UP TO THE COURT, I SAID, JUDGE, WE ARE

10   OPENING UP A CAN OF WORMS HERE AND IT'S GOING TO

11   HAPPEN BECAUSE THERE'S GOING TO BE PLAINTIFFS WHO

12   DID NOT ANSWER, WHO WILL NOT ANSWER.

13             THE COURT:  AND WHAT DID I SAY WOULD

14   HAPPEN TO THOSE?

15             MR. GREG WIGGINS:  YOU SAID, AND I

16   THINK IT'S IN THE RECORD, WE WILL CROSS THAT

17   BRIDGE WHEN WE GET TO IT.  YOU DID NOT INDICATE

18   THERE WAS GOING TO BE, THEY WERE ORDERED, EVERY

19   PLAINTIFF HAD TO ANSWER THESE QUESTIONS.  YOU

20   ORDERED THE INTERROGATORIES BE SENT OUT AND, GREG,

21   GET AS MANY ANSWERS AS YOU CAN, QUICK AS YOU CAN.

22   IN FACT, THE HEARING ON SEPTEMBER 8TH YOU ORDERED

23   ME, GREG, BY FRIDAY, GET THEM AS MANY ANSWERS AS

24   CAN TO PREPARE BY FRIDAY, AND BY MONDAY, GET THEM

25   THE REST.

1          THE COURT:  SEEMS LIKE TO ME AT THAT

2     SAME TELEPHONE CONFERENCE AND DEFENDANT WANTED TO

3     HAVE IT REPORTED AND I TOLD THEM THEY COULDN'T,

4     THAT SECOND ONE.  PROBABLY SHOULD HAVE HAD MY

5     COURT REPORTER HERE FOR THAT OR ON THE PHONE IN

6     BIRMINGHAM RECORDING IT.  WE TALKED ABOUT THAT AND

7     I SAID, NOW, YOU HAVE TO UNDERSTAND SOMETHING.  IF

8     YOU DON'T HAVE THESE ANSWERS -- AND I AM GOING

9     FROM MEMORY, WHICH I HAVE GOT, TRIED A LOT OF

10    THINGS SINCE THEN, OKAY -- THAT THIS IS GOING TO

11    BE A VERY TIGHT DATE.  THIS IS ON MY SIX MONTH

12    REPORT AS IT IS, THIS MOTION TO DECERTIFY.  AND

13    THAT IF YOU DON'T ANSWER, YOU DON'T GET THOSE

14    ANSWERS, AND I DON'T REMEMBER EXACTLY WHAT I SAID,

15    BUT I THINK I MADE IT VERY CLEAR THAT YOU WON'T

16    BE, THAT WON'T BE EXTENDED, THAT DATE.

17          MR. GREG WIGGINS:  JUDGE, YOU MADE IT

18    VERY CLEAR THAT DAY THAT, GREG, YOU NEED TO GET

19    THEM AS MANY ANSWERS AS YOU CAN.

20          THE COURT:  NO, I SAID GET AS MANY

21    ANSWERS AS YOU CAN ON THIS DATE, AND GET THE REST

22    OF THEM BY THIS DATE.

23          MR. GREG WIGGINS:  WHAT YOU SAID,

24    JUDGE, IF I REMEMBER, WAS FILE THEM ON FRIDAY.  ON

25    MONDAY, GET THE REST OF THEM THAT YOU HAVE.  AND

1    THAT'S WHAT I DID.  I GOT THEM THE REST OF THEM.

2    BECAUSE I MADE IT CLEAR TO THE COURT DURING THAT

3    CONFERENCE, IF THE COURT REMEMBERS, I WAS MISSING

4    ABOUT A HUNDRED, 125 RESPONSES.  I DON'T RECALL

5    YOU SAYING, WELL, YOU BETTER HAVE THOSE RESPONSES

6    BY MONDAY OR I AM GOING TO CONSIDER A MOTION TO

7    DISMISS THEM.

8              THE COURT:  YOU ACTUALLY HAD 215 YOU

9    WERE MISSING.

10             MR. GREG WIGGINS:  AND I SAID DURING

11   THAT CONFERENCE, APPROXIMATELY, I WAS WRONG ABOUT

12   THE NUMBER, OBVIOUSLY.  BUT I NEVER GOT THE

13   IMPRESSION, JUDGE, AT ANY CONFERENCE THAT YOU HAD

14   THAT YOU WERE EXPECTING EVERYONE OF THESE

15   PLAINTIFFS TO RESPOND.  WHAT YOU WERE EXPECTING

16   WAS TO GET SUFFICIENT EVIDENCE FROM THESE

17   INTERROGATORIES THAT YOU CAN MAKE A DECISION ON

18   THE AMOUNT OF TIME SPENT.

19             THE COURT:  I DON'T THINK I EVER GAVE

20   YOU THE IMPRESSION THAT INTERROGATORIES SENT OUT

21   TO THESE PEOPLE WOULD BE OPTIONAL.

22             MR. GREG WIGGINS:  NO, I DON'T MEAN TO

23   IMPLY, JUDGE, THAT IT'S OPTIONAL.  BUT I DO NEED

24   TO RELATE TO THE COURT THAT I NEVER GOT THE SENSE

25   THAT YOU WERE GOING TO DISMISS PLAINTIFFS WHO

1    FAILED TO RESPOND, THAT YOUR GOAL IN THESE

2    INTERROGATORIES WAS TO GET AS MUCH EVIDENCE AS YOU

3    COULD.  AND IF WE HAD A HUNDRED PERCENT RETURN,

4    THAT'S GREAT.  IF NOT, YOU WOULD BE SATISFIED, ONE

5    WAY OR THE OTHER, WHETHER THEY SPENT 85 OR SPENT

6    80 HOURS OR WHATEVER, YOU WERE LOOKING FOR SOME

7    ADDITIONAL EVIDENCE.  IN THE CASE, IT'S A

8    REPRESENTATIVE-TYPE CASE, JUDGE.

9              THE COURT:  I WASN'T LOOKING AT

10   ANYTHING EXCEPT TO GIVE YOU, FRANKLY, IF YOU WANT

11   TO PRESENT EVIDENCE TO ME, OKAY.  I WAS POINTING

12   OUT A LACK, A GAPING HOLE IN THE EVIDENCE THAT WAS

13   BEFORE ME.  I, FRANKLY, COULD HAVE RULED AND, IN

14   HINDSIGHT, PROBABLY SHOULD HAVE RULED BACK BEFORE

15   THESE INTERROGATORIES STARTED THAT THE PLAINTIFF

16   HAD FAILED TO CARRY THEIR BURDEN OF PROOF AND THE

17   CLASS WAS DECERTIFIED.  I SHOULD HAVE RULED THAT

18   BACK THEN.

19             THERE WAS A HUGE HOLE, WHEN YOU MAKE AN

20   ARGUMENT LIKE THERE IS 86 PERCENT OF THE TIME IS

21   SPENT AND YOU CITED ME TO ONE OR TWO PEOPLE AS

22   PROOF OF THAT, THAT DOESN'T REALLY SHOW YOU

23   ANYTHING.  AND WHAT I WAS TRYING TO DO IS BE FAIR

24   AND I THOUGHT I MADE THAT CLEAR.  I TRIED TO MAKE

25   IT CLEAR IN AN ORDER THAT I SAID THAT THIS WOULD

1    BE THE ISSUE TO BE TAKEN UP, AND I TRIED TO MAKE

2    IT CLEAR IN THE TELEPHONE CONFERENCE.  I AM NOT

3    TRYING, IF I WANTED TO THROW PEOPLE OUT OF COURT,

4    I WOULD HAVE DONE IT, I WOULD HAVE DECERTIFIED

5    THREE MONTHS AGO OR WHATEVER.  SO THAT'S NOT WHAT

6    IT'S ABOUT.

7              MR. GREG WIGGINS:  I UNDERSTAND, YOUR

8    HONOR.

9              THE COURT:  BUT IT'S ABOUT PEOPLE

10   HAVING OBLIGATIONS WHEN THEY JOIN IN A LAW SUIT TO

11   KEEP THEIR ATTORNEYS INFORMED OF WHERE THEY ARE

12   AND TO RESPOND TO DISCOVERY WHEN THEY ARE ASKED

13   TO.

14             MR. GREG WIGGINS:  I UNDERSTAND THAT.

15             THE COURT:  WE HAVE 207, 215 PEOPLE

16   THAT DID NOT DO THAT.  IT'S NOT YOUR FAULT, OKAY?

17             MR. GREG WIGGINS:  AND AGAIN, JUDGE, I

18   WOULD GO BACK TO, THERE IS BIG GAPING HOLE YOU

19   POINT TO, WE LAID OUT IN OUR BRIEF THAT 85 PERCENT

20   WAS THERE.

21             THE COURT:  YOU DIDN'T BACK IT UP.  YOU

22   DID LAY IT OUT.

23             MR. GREG WIGGINS:  WE LAID IT OUT, AND

24   WE POINTED ISSUE TO MAYBE THE MINIMAL AS YOU

25   CLASSIFIED.  BUT THE DEFENDANT NEVER CHALLENGED

1   IT.  THEY NEVER CAME FORTH WITH ANY EVIDENCE

2   SAYING WE WERE INCORRECT OR HAD AN AFFIDAVIT FROM

3   SOMEONE OR SAID WHAT OUR MINIMUM WAGE MAY BE WAS

4   WRONG.  IT WENT UNCHALLENGED.

5            THE COURT:  ALL RIGHT.  GO TO --

6            MR. BOB WIGGINS:  YOUR HONOR, COULD I

7   SAY ONE THING ABOUT A CASE?  YOU ASKED A QUESTION

8   ABOUT WHAT, ABOUT WHAT PROCEDURE COULD YOU

9   FOLLOW?  AND I HAD THAT ISSUE IN THE ELEVENTH

10  CIRCUIT, AND I THINK THAT OUR POINT IS, YES, YOU

11  DID ORDER IT, SO THAT IS A PRELIMINARY ORDER, BUT

12  IT DIDN'T GO TO THE CLASS.  THE CLASS MEMBER HAS

13  TO BE GIVEN A NOTICE THAT YOU ARE GOING TO BE

14  DISMISSED, THIS IS YOUR LAST WARNING.  THAT IS --

15           THE COURT:  DO YOU HAVE A CASE THAT

16  SAYS -- I KNOW YOU ARE ARGUING THAT.  DO YOU HAVE

17  A CASE THAT SAYS THAT DESPITE THE FACT I TENDER AN

18  ORDER TO YOU ALL, WHICH I THINK IS PLENTY OF

19  NOTICE TO THE CLASS MEMBERS IN AN OPT-IN CLASS

20  THAT THAT WASN'T SUFFICIENT?  DO YOU HAVE A CASE

21  THAT SAYS THAT?  DO YOU HAVE A COPY ON --

22           MR. GREG WIGGINS:  THE POINT IS --

23           THE COURT:  (WHISTLING.) HANG ON.

24           MR. GREG WIGGINS:  I'M SORRY.

25           THE COURT:  WHEN I START TALKING, THAT

```
 1   MEANS YOU NEED TO HUSH.

 2              MR. GREG WIGGINS:  YES, SIR.

 3              THE COURT:  SO YOU JUST STOOD UP AND

 4   YOU SAID I HAVE A CASE, ARE YOU TALKING ABOUT A

 5   CASE THAT YOU ARE ARGUING NOW BEFORE THE ELEVENTH

 6   CIRCUIT?

 7              MR. BOB WIGGINS:  YES.

 8              THE COURT:  THAT'S ALL I AM ASKING FOR.

 9   WHAT'S THE NAME OF THE CASE?

10              MR. BOB WIGGINS:  THE CASE THAT WE HAVE

11   IS COX V. AMERICAN CAST IRON PIPE COMPANY.

12              THE COURT:  AND WHAT'S THE CASE NUMBER?

13              MR. BOB WIGGINS:  THE CASE WE ARE

14   ARGUING IS THE ONE SHE MENTIONED, THE FAMILY

15   DOLLAR CASE IN THE FOURTH CIRCUIT.

16              THE COURT:  YOU LOST ME THERE.  I AM

17   TRYING TO LOOK SO WE CAN LOOK UP THE CASE, I NEED

18   THE INFORMATION.  SO WHEN YOU CITE TO ME AN

19   ARGUMENT BEFORE THE ELEVENTH CIRCUIT THAT YOU SAY

20   IS PENDING, RIGHT?

21              MR. BOB WIGGINS:  WITH THE FOURTH

22   CIRCUIT IS THE ONE THAT'S PENDING.  IT'S IN

23   RE: FAMILY DOLLAR CASE THAT SHE SAID, SHE IS

24   TALKING ABOUT THAT WE FILED INTERROGATORIES

25   ALREADY.
```

```
 1                THE COURT:  RIGHT.

 2                MR. BOB WIGGINS:  THAT'S THE ONE THAT'S

 3   PENDING.

 4                THE COURT:  OKAY.

 5                MR. BOB WIGGINS:  THE ONE THAT'S OVER

 6   AND DONE WITH IS COX V. AMERICAN CAST IRON PIPE

 7   COMPANY.

 8                THE COURT:  IN THE ELEVENTH CIRCUIT?

 9                MR. BOB WIGGINS:  YES.

10                THE COURT:  COX.  AND WHAT DID IT SAY?

11                MR. BOB WIGGINS:  INTERROGATORIES WERE

12   SENT OUT TO THE CLASS MEMBERS.  JUDGE ACKER

13   DISMISSED THEM FOR NOT ANSWERING.  ELEVENTH

14   CIRCUIT SAYS YOU CAN'T USE INTERROGATORIES AS A

15   MEANS OF REDUCING CLASS SIZE, THAT YOU HAVE TO

16   GIVE THEM A WARNING IF THEY CAN'T ANSWER.  OR IF

17   THEY GAVE BASIC ANSWERS, YOU TELL THEM YOUR

18   ANSWERS ARE BASIC.

19                THE COURT:  I HEARD YOUR ARGUMENT.  DID

20   JUDGE ACKER ENTER AN ORDER BEFORE THE

21   INTERROGATORIES WERE SENT OR AFTER THE

22   INTERROGATORIES WERE SENT GIVING A SPECIFIC DATE

23   THESE HAD TO BE ANSWERED?

24                MR. BOB WIGGINS:  HE DID.  HE APPROVED

25   THE INTERROGATORIES TO GO OUT.
```

```
 1                    THE COURT:  OKAY.

 2                    MR. BOB WIGGINS:  OVER OUR OBJECTION.

 3                    THE COURT:  OKAY.

 4                    MR. BOB WIGGINS:  SOME ANSWERED, SOME

 5       DIDN'T.  SOME GAVE WHAT WERE ALLEGED TO BE A BASE

 6       OF ANSWERS BUT THEY THEN DISCUSSED EVERYBODY

 7       EXCEPT, I THINK, FOR 15 OR 16.

 8                    THE COURT:  CAN YOU GIVE ME A CITE IN

 9       THE CASE, F3D CITE OR SOMETHING?

10                    MR. BOB WIGGINS:  IT'S 784 F2D, 1546.

11                    THE COURT:  NOW, THE CASE IN THE FOURTH

12       CIRCUIT, DID YOU APPEAL THE INSUFFICIENT ANSWERS

13       ISSUE OR FAILURE TO ANSWER AT ALL?

14                    MR. BOB WIGGINS:  WE APPEALED THE

15       DENIAL OF CONDITIONAL CERTIFICATION WHICH THAT WAS

16       ONE PART, THAT WAS ONE GROUND FOR THE DENIAL,

17       THERE WERE OTHERS.  BUT THAT'S BEEN BRIEFED AND

18       IT'S ON, IT'S PENDING.

19                    THE COURT:  THANK YOU SIR.  GO AHEAD,

20       GREG.

21                    MR. GREG WIGGINS:  I THINK IT'S VERY,

22       JUDGE, I THINK IT'S VERY PREJUDICIAL.  I THINK

23       IT'S EXTREMELY HARMFUL TO NOW ENTERTAIN A MOTION

24       BY THE DEFENDANT TO DISMISS 207 OR 215 PLAINTIFFS

25       WHO, FOR A PERIOD OF THREE YEARS, COMPLIED WITH
```

1    EVERY ORDER THIS COURT ORDERED AS FAR AS

2    RESPONDING TO INTERROGATORIES, COMPLIED WITH THIS

3    COURT'S ORDER WITH REGARDS TO ATTENDING THEIR

4    DEPOSITIONS.  YOU DISMISSED SOME THAT DIDN'T

5    ATTEND.  BUT THESE INDIVIDUALS ARE HERE NOW BEFORE

6    THIS COURT TO COMPLY WITH DISCOVERY --

7           THE COURT:  HANG ON.  FOR THE RECORD,

8    THESE INDIVIDUALS WE ARE TALKING ABOUT WERE NOT

9    DEPOSED.

10          MR. GREG WIGGINS:  I'M SORRY.

11          THE COURT:  THESE INDIVIDUALS, THE 207

12   AND 215 THAT ARE HERE THAT I AM TALKING ABOUT WERE

13   NOT DEPOSED.

14          MR. GREG WIGGINS:  NO, THEY WEREN'T.

15   BUT THEY WERE SENT INTERROGATORIES AND THEY

16   COMPLIED WITH INTERROGATORY REQUESTS.

17          THE COURT:  I UNDERSTAND THAT.

18          MR. GREG WIGGINS:  AND THEY COULD HAVE

19   BEEN DEPOSED.

20          THE COURT:  RIGHT.  THAT'S RIGHT.

21          MR. GREG WIGGINS:  BUT THE DEFENDANT,

22   THERE WERE LIMITS ON THE NUMBER OF DEPOSITIONS,

23   BUT THESE PLAINTIFFS HAVE DONE EVERYTHING THEY ARE

24   SUPPOSED TO DO, AT LEAST THEY THOUGHT THEY WERE

25   SUPPOSED TO DO, TO REMAIN IN THIS COURT.

1          FOR THE COURT, FOR THE DEFENDANT NOW TO

2     COME BACK HERE AND TO ARGUE THAT THESE INDIVIDUALS

3     WHO HAVE NOT RESPONDED TO THESE SPECIAL

4     INTERROGATORIES THAT WERE SENT BY THIS COURT

5     SEEKING INFORMATION THAT THE DEFENDANT HAD AMPLE

6     OPPORTUNITY TO DISCOVER DURING THE DISCOVERY

7     PERIOD I THINK IS EXTREMELY PREJUDICIAL AND

8     EXTREMELY HARMFUL TO THE PLAINTIFF.  AND IF THE

9     COURT WERE TO CONSIDER THAT --

10          THE COURT:  WHAT WOULD YOU HAVE ME DO?

11          MR. GREG WIGGINS:  WELL, I THINK WE

12    OUGHT TO BE GIVEN AN OPPORTUNITY TO RESEND

13    INTERROGATORIES, GIVE THEM 30 DAYS TO ANSWER.  IF

14    THEY DON'T ANSWER, WE CAN COME BACK HERE AND GO

15    OVER THE SITUATION.

16          THE COURT:  BUT YOU HAVE ALREADY SAID

17    IF YOU SEND OUT THE INTERROGATORIES THAT THEY ARE

18    CONFUSING, THEY SAY ON AVERAGE, WHAT WEEK ARE YOU

19    TALKING ABOUT.

20          HERE'S MY PROBLEM, OKAY, THAT YOU NEED

21    TO HELP ME WITH.

22          MR. GREG WIGGINS:  OKAY.

23          THE COURT:  AND SOME OF THIS, I DON'T

24    WANT TO INVADE ATTORNEY/CLIENT PRIVILEGE, OKAY?

25    BUT I FIND IT ALMOST IMPOSSIBLE TO BELIEVE THAT

1    THESE INTERROGATORIES WERE SENT OUT WITH BLANKS IN

2    THEM FOR THE HOURLY THING, AND THAT THE PEOPLE

3    FILLED IN THE ANSWERS AND SENT THEM BACK AND THEY

4    ALL HAPPENED TO SAY THE EXACT SAME THING, OKAY?  I

5    AM NOT REALLY ASKING A QUESTION, I JUST WANT YOU

6    TO UNDERSTAND WHERE I AM COMING FROM, OKAY?

7            SO WHAT WE HAVE HERE IS WE HAVE 207

8    THAT DID ANSWER, THAT WERE SENT INTERROGATORIES

9    THAT DID NOT PROVIDE AN OPTION TO GIVE A PERCENT,

10   BUT INSTEAD CLEARLY INDICATED HOURS ON THE

11   QUESTIONS.  NOW, THEY MIGHT HAVE BEEN CONFUSED

12   ABOUT HOW THEY CALCULATED THOSE HOURS, BUT,

13   NONETHELESS, IT DIDN'T ASK FOR A PERCENTAGE, IT

14   ASKED FOR HOURS.  AND THAT YOU TOLD ME THAT THEY

15   FAXED BACK OR SENT BACK ANSWERS, THAT YOU THEN

16   TYPED UP THOSE ANSWERS AND ATTACHED THEIR

17   SIGNATURE PAGE AND SENT THAT ON.  AND IT IS BEYOND

18   BELIEF TO ME THAT THEY ALL HAPPENED TO COME UP

19   WITH THE EXACT SAME WORDS EXCEPT FOR THEIR STORE

20   NUMBER, BASICALLY, AND THE HOURS AT THE LAST

21   QUESTION.  I JUST WANT YOU TO FEEL WHAT I AM

22   FEELING HERE.

23            MR. GREG WIGGINS:  I UNDERSTAND WHAT.

24            THE COURT:  SO, NOW, I GUESS WHAT COULD

25   HAVE HAPPENED IS PLAINTIFF'S COUNSEL COULD HAVE

1    TALKED TO THEM AND SAID, YOU KNOW, IF YOU WORKED

2    86 PERCENT OF THE TIME, YOU JUST NEED TO SAY THAT.

3    I GUESS THAT'S WHAT COULD HAVE HAPPENED, AND THEY

4    COULD HAVE WRITTEN 86 PERCENT AND THEN Y'ALL JUST

5    KIND OF TIED IT TOGETHER.  I WAS TRYING TO BE FAIR

6    TO EVERYBODY AND GET THE ANSWERS SO THAT WE COULD

7    PROCEED ON.  IN SOME OF THEM, I FULLY EXPECTED TO

8    SAY I SPENT HOWEVER MANY HOURS, AND THEN WHEN YOU

9    DID THE CALCULATION, WE EVEN TALKED ABOUT THE LAST

10   NUMBER, THE LAST QUESTION, GIVING THE TOTAL NUMBER

11   OF HOURS THAT THEY ACTUALLY WORKED WOULD BE THE

12   TEST THAT WE COULD THEN COMPARE TO THE REST OF

13   THEM AND CALCULATE THE PERCENTAGE.  WE EVEN TALKED

14   ABOUT THAT IN THE HEARING, IF I REMEMBER RIGHT.

15          MR. GREG WIGGINS:  JUDGE, WE TALKED

16   ABOUT IT AND I INSISTED ON THE INTERROGATORY

17   NUMBER 10 BECAUSE OF THE EXACT PROBLEM WE WERE

18   TALKING ABOUT, THAT THEY WEREN'T GOING TO BE ABLE

19   TO SAY EXACT NUMBER OF HOURS.  BUT IF YOU HAVE THE

20   PERCENTAGE AND YOU HAVE THE NUMBER OF HOURS, YOU

21   CAN COME UP WITH THE HOURS.

22          THE COURT:  AND THEY COULD HAVE SAID,

23   "I DON'T KNOW."  THEY COULD HAVE, EVERYONE OF

24   THEM, SAID "I DON'T RECALL THE NUMBER OF HOURS,

25   BUT I KNOW IT WAS MORE THAN X," OR "I KNOW IT WAS

1    MORE THAN Y", OR THEY COULD HAVE SAID "I DON'T

2    KNOW THE NUMBER OF HOURS.  I CAN GIVE YOU THE

3    PERCENTAGE, BUT I CAN'T GIVE YOU THE NUMBER OF

4    HOURS."  THAT'S NOT WHAT THEY SAID.  THEY MISSED,

5    THEY DIDN'T EVEN RESPOND TO THE QUESTION ABOUT

6    WHAT THE NUMBER OF HOURS WERE.  AND IT'S VERY

7    TROUBLING TO ME, OKAY?

8              AND I AM TRYING, CO-COUNSEL OVER HERE,

9    I MEAN, I AM NOT ENTIRELY STUPID.  I DO RECOGNIZE

10   THAT WE SHOULDN'T USE INTERROGATORIES AS A METHOD

11   TO REDUCE THE NUMBER OF PEOPLE IN THE CLASS.  I

12   KNOW THAT.  AND I ALSO KNOW THAT THE REASON WHY WE

13   DO REPRESENTATIVE ACTIONS BECAUSE IT'S SO

14   DIFFICULT TO BRING 500 PEOPLE IN HERE TO TESTIFY.

15   BUT THE FACT THAT YOU CAN'T GET ANSWERS FROM THESE

16   PEOPLE TO THIS SIMPLE QUESTION ABOUT THE HOURS,

17   WHERE THEY WRITE DOWN THE HOURS THEMSELVES

18   DEMONSTRATES TO ME ALMOST CONCLUSIVELY THAT IT'S

19   IMPOSSIBLE TO TRY TO MANAGE THIS KIND OF CLASS,

20   AND I AM TROUBLED BY THAT.  ALL I WANTED YOU TO DO

21   WAS ANSWER THE QUESTIONS.

22              MR. GREG WIGGINS:  JUDGE, WE THOUGHT WE

23   HAD.  BUT LET ME SAY THIS.  IF YOU ARE TROUBLED

24   BECAUSE OF THE LACK OF EVIDENCE OR YOU ARE

25   TROUBLED BY THE MANAGEABILITY OF THIS CASE, THERE

1    IS, WE HAVE DEPOSITIONS FROM 64 INDIVIDUALS, 50,

2    THE PLAINTIFFS THAT WERE ACTUALLY ASKED THE

3    QUESTION "STATE THE PERCENTAGE OF TIME WE SPENT ON

4    MANAGERIAL JOB DUTIES," AND THOSE QUESTIONS WERE

5    ASKED BY PLAINTIFF'S COUNSEL BECAUSE THE DEFENDANT

6    DIDN'T WANT TO KNOW THE INFORMATION.  90 PERCENT

7    OF THEM, OVER 90 PERCENT OF THEM SAID THEY SPENT

8    BETWEEN 80 AND 99 PERCENT OF THEIR TIME PERFORMING

9    NON-MANAGERIAL JOB DUTIES.  THE OTHERS SAID

10   SOMEWHERE BETWEEN 75 AND 80.  I MEAN, THERE IS

11   OVERWHELMING EVIDENCE HERE IN THE DEPOSITIONS THAT

12   I BROUGHT FOR THE COURT HERE TODAY.

13           THE COURT:  WHY DIDN'T YOU PUT THAT IN

14   YOUR MOTION TO, THE OPPOSITION TO THE MOTION TO

15   DECERTIFY THE CLASS?

16           MR. GREG WIGGINS:  IN HINDSIGHT, WE

17   SHOULD HAVE.  BUT THE REASON WE DIDN'T WAS BECAUSE

18   IT WASN'T CHALLENGED.  THEY NEVER SAID WE DISPUTE

19   THIS 85 PERCENT, THAT THERE IS NO EVIDENCE IN THE

20   RECORD.  THEY DISPUTE THAT THE THEORY OF --

21           THE COURT:  NO, THEY SAID THEY DISPUTE

22   THE FACT THAT THESE PEOPLE ARE SIMILARLY SITUATED,

23   OKAY?  AND IT'S YOUR OBLIGATION THEN TO COME

24   FORWARD AND SHOW THEY ARE SIMILARLY SITUATED.  AND

25   I WAS LOOKING FOR THAT.  AND, FRANKLY, YOU CAN'T

1   CITE TO ONE PERSON OR TWO PEOPLE AND EXTRAPOLATE

2   THAT OVER THE WHOLE CLASS.  YOU HAVE GOT TO HAVE

3   SOMETHING --

4           MR. GREG WIGGINS:  ON THIS ONE ISSUE,

5   YOUR HONOR, IN HINDSIGHT, PERHAPS WE SHOULD HAVE.

6           THE COURT:  AND I AM NOT TRYING TO BEAT

7   YOU UP ABOUT THAT.

8           MR. GREG WIGGINS:  I UNDERSTAND THAT.

9   BUT WE THINK THERE IS OTHER EVIDENCE, OVERWHELMING

10  EVIDENCE IN THE RECORD TO SHOW THE SIMILARLY

11  SITUATED, THESE PEOPLE ARE SIMILARLY SITUATED.

12  JUST ON THIS ONE ISSUE, YOU MAY NOT HAVE ENOUGH

13  EVIDENCE, BUT THERE IS ENOUGH EVIDENCE IN REGARD

14  TO THE JOB DUTIES THEY ACTUALLY PERFORMED TO SHOW

15  THEY ARE SIMILARLY SITUATED.  THAT THE CONTROL OF

16  THE STORE IS THE DISTRICT MANAGER THROUGH

17  CORPORATE.

18          THERE IS ABUNDANCE OF EVIDENCE FROM THEIR

19  OWN WITNESSES.  THEY SHOW THE POLICIES AND

20  PROCEDURES OF DOLLAR TREE ARE UNIFORM THROUGHOUT

21  THE COUNTRY REGARDLESS OF THE SIZE OF THE STORE,

22  LOCATION OF THE STORE.  AND THOSE ARE THE ISSUES

23  YOU HAVE TO LOOK AT AS FAR AS DETERMINING

24  SIMILARLY SITUATED, NOT JUST ISOLATING IT DOWN TO

25  THE PERCENTAGE OF TIME OF NON-MANAGERIAL.  THIS

```
1   ONE ISSUE ALONE WOULD NOT BE ENOUGH EVIDENCE TO

2   DECERTIFY IT WHEN YOU CONSIDER ALL THE EVIDENCE AS

3   A WHOLE.

4             THE COURT:  OKAY.

5             MR. GREG WIGGINS:  I DO WANT TO, IF

6   COURT WILL ALLOW US, TO MARK AS EXHIBIT ONE.

7             THE COURT:  FIRST, TELL ME WHAT IT IS.

8             MR. GREG WIGGINS:  IT'S ALL THE

9   DEPOSITIONS, IT'S THE PAGES WHERE THEY TESTIFIED

10  TO 85, 90 PERCENT, WHAT THE --

11            THE COURT:  THIS IS ON THE CLASS

12  CERTIFICATION ISSUE?

13            MR. GREG WIGGINS:  YES, SIR.  THAT

14  ISSUE AND ON THE ISSUE WITH REGARDS TO THE

15  DECERTIFICATION THAT YOU WANT EVIDENCE ON, YES,

16  SIR.

17            THE COURT:  I AM NOT THERE YET.

18            MR. GREG WIGGINS:  OKAY.

19            THE COURT:  I AM NOT TO THE

20  DECERTIFICATION MOTION YET.

21            MR. GREG WIGGINS:  WHEN YOU GET THERE,

22  YOUR HONOR, THAT'S ONE OF THE EXHIBITS WE PLAN ON

23  INTRODUCING.

24            WE ALSO HAVE OTHER EVIDENCE FROM

25  INDIVIDUALS --
```

```
1              THE COURT:  DON'T GO TO THE
2    DECERTIFICATION ISSUE.  ANYTHING ELSE ABOUT THE
3    SANCTIONS ISSUE?
4              MR. GREG WIGGINS:  YES, SIR.  WE HAVE
5    DECLARATIONS FROM INDIVIDUALS WHO HAVE NOT
6    ANSWERED THE 207, OR 15?
7              THE COURT:  215 HAVEN'T ANSWERED.
8              MR. GREG WIGGINS:  WE HAVE DECLARATIONS
9    FROM -- I DON'T KNOW THE EXACT NUMBER YOUR HONOR,
10   BUT IT'S A SIGNIFICANT NUMBER -- FROM THESE
11   INDIVIDUALS THAT WERE SIGNED AND STATE A
12   PERCENTAGE OF TIME THAT THEY SPENT ON
13   NON-MANAGERIAL JOB DUTIES.
14             THE COURT:  WHEN WERE THESE GOTTEN?
15             MR. GREG WIGGINS:  THESE WERE GOTTEN AT
16   THE VERY BEGINNING OF THE CASE.  AND WE COULD HAVE
17   SUBMITTED THAT IF WE THOUGHT THAT WAS A MAJOR
18   ISSUE.  BUT I HAVE GOT DECLARATIONS HERE THAT I
19   WOULD LIKE TO OFFER TO THE COURT.
20             THE COURT:  OKAY, WE ARE NOT AT THE
21   CERTIFICATION.
22             MR. GREG WIGGINS:  I UNDERSTAND.
23             THE COURT:  AND THAT DOESN'T HELP ON
24   THIS SANCTION ON THE INTERROGATORIES BECAUSE THOSE
25   WERE NOT, SEE, THE DEFENDANT HAS A RIGHT TO TEST
```

```
 1    WHAT THE PLAINTIFF SAYS.  AND JUST BECAUSE THE
 2    PLAINTIFF FILES A DECLARATION SAYING I WANT THIS
 3    AMOUNT, THEY HAVE A CERTAIN AMOUNT OF RIGHTS WHEN
 4    THEY ANSWER INTERROGATORIES, ASK INTERROGATORIES,
 5    EXCUSE ME, OR DEPOSITIONS.
 6              ALL RIGHT.  ANYTHING ELSE ON THE
 7    SANCTION ISSUE?
 8              MR. GREG WIGGINS:  HOLD ON JUST ONE
 9    MINUTE.
10              THE COURT:  CO-COUNSEL OVER THERE IS
11    ABOUT TO JUMP OUT OF HIS SEAT.
12              MR. BOB WIGGINS:  OLDER BROTHERS HAVE
13    THAT PROBLEM.
14              YOUR HONOR, I JUST WANT TO ADD ONE
15    THING, IT'S ABOUT OUR --
16              THE COURT:  ARE Y'ALL BROTHERS?
17              MR. BOB WIGGINS:  YEAH.
18              THE COURT:  I DIDN'T KNOW THAT.  I
19    GUESS IT MAKES SENSE.
20              MR. BOB WIGGINS:  I WANT TO RAISE ONE
21    THING ABOUT THE PRACTICE OF ANSWERING
22    INTERROGATORIES.  WE HAVE ALWAYS GOTTEN THE
23    INFORMATION FROM THE CLIENTS USUALLY OVER THE
24    PHONE AND THEN THE WORDS IN THE ANSWER WERE OURS.
25              THERE IS NO QUESTION, THOSE ARE THE
```

```
1    LAWYER'S WORDS BASED ON THE INFORMATION WE

2    RECEIVE.  I DON'T WANT THE COURT TO THINK THAT OUR

3    CLIENTS ALL SOMEHOW MIRACULOUSLY CAME UP WITH

4    THOSE WORDS.

5              THE COURT:  I DIDN'T THINK THAT, BUT

6    THAT'S WHAT YOUR BROTHER SAID, BASICALLY.

7              MR. BOB WIGGINS:  NO, THAT'S NOT THE

8    WAY THIS CASE OR ANY CASE I HAVE EVER KNOWN

9    WORKS.  IT JUST WOULDN'T BE POSSIBLE TO HAVE THE

10   CLIENT -- MOST OF THESE FOLKS ARE NOT THAT WELL

11   EDUCATED.  WHEN YOU GET BACK, THE ONES THAT SEND

12   YOU SOMETHING BACK IN WRITING, IT'S ALMOST

13   IMPOSSIBLE TO USE.  YOU HAVE TO CALL THEM ON THE

14   PHONE.

15             THE COURT:  OKAY.  I UNDERSTAND THAT,

16   AND THAT'S WHY I SAID IT SOUNDS LIKE THIS IS WHAT

17   PROBABLY WOULD HAVE HAPPENED, BUT, YOU KNOW, WHAT

18   SHOULD I DO NOW?

19             MR. BOB WIGGINS:  IF WE ARE WRONG TO

20   USE THE SAME WORDS INSTEAD OF TRYING TO BE COY AND

21   INVENT A NEW WORDING EVERY TIME WE ANSWER --

22             THE COURT:  WHAT SHOULD I DO?  I WANTED

23   YOU TO PUT IN HOURS.  I WANTED YOU TO ANSWER THE

24   INTERROGATORIES.  WHAT SHOULD I DO NOW?

25             MR. BOB WIGGINS:  I THINK, LIKE WITH
```

```
1    ANY EVASIVE ANSWER, THE CLIENTS NEED TO BE TOLD

2    THAT THAT'S NOT GOOD ENOUGH, YOU HAVE GOT ONE

3    CHANCE TO BE LITERAL AND ANSWER THAT QUESTION.

4              THE COURT:  BUT HOW CAN -- ALL RIGHT,

5    DEFENSE?

6              MS. BROWN:  YES, YOUR HONOR.

7              THE COURT:  LET'S TALK, THERE IS TWO

8    DIFFERENT THINGS HERE.  WE HAVE GOT ONES WHO

9    DIDN'T ANSWER AND THE ONES WHO DID.

10             MS. BROWN:  LET'S JUST TALK ABOUT THE

11   ONES WHO DIDN'T ANSWER, YOUR HONOR.  THE COX V.

12   AMERICAN PIPE CASE IS COMPLETELY DISTINGUISHABLE,

13   THAT WAS A TITLE SEVEN CASE.  THEY WERE TALKING

14   ABOUT INTERROGATORIES TO THE PASSIVE CLASS

15   MEMBERS.  THEY WERE NOT PARTIES TO THE LAWSUIT.

16   AND THE ELEVENTH CIRCUIT HAS BEEN VERY CLEAR ON

17   THE MORGAN CASE THAT'S CONSTANTLY BEING CITED, THE

18   OPT-IN PLAINTIFFS ARE PARTIES TO THIS LAWSUIT.

19   THEY HAVE A DIFFERENT LEVEL OF OBLIGATION.

20             IN COX, WHAT THEY SAID WAS THAT THE

21   INTERROGATORIES COULD BE DEALT WITH TO THE PAST

22   CLASS MEMBERS IN STAGE TWO OF A TITLE 7 CASE,

23   TOTALLY DIFFERENT PROCEDURE SETTING THAN WE ARE

24   DEALING WERE HERE.  YOUR HONOR MADE IT CRYSTAL

25   CLEAR BACK IN AUGUST THAT THESE WERE TO BE
```

```
 1   ANSWERED ON A SHORT TIME FRAME AND THAT IT WAS

 2   FEASIBLE, GIVEN THE DATE OF THIS HEARING.  YOU

 3   GAVE THEM A SECOND ORDER ON THE 8TH OF SEPTEMBER

 4   AFTER THEIR TIME TO ANSWER HAD EXPIRED.  THIS

 5   WASN'T JUST AN INSTRUCTION TO GET THEM IN ON A

 6   DATE CERTAIN.  THIS WAS AN ORAL MOTION TO COMPEL

 7   AND YOUR HONOR'S ORDER THAT THEY BE IN BY NO LATER

 8   THAN THE 13TH AT NOON.

 9             AND IF THEY WERE SIGNED BACK IN AUGUST,

10   WHY THEY WEREN'T SERVED IN THE 30 DAYS THEY SHOULD

11   HAVE BEEN, I HAVE NO IDEA.  HOW 50 PEOPLE WHO --

12             THE COURT:  I AM NOT -- HANG ON LET'S

13   BACK UP JUST A LITTLE BIT.

14             MS. BROWN:  YOU ARE RIGHT I AM NOT

15   TALKING ABOUT ONES WHO DID PROVIDE ANSWERS.

16             THE COURT:  YOU JUMPED OVER TO THE

17   OTHER ONES.

18             MS. BROWN:  APPLES AND ORANGES.  LET'S

19   TALK ABOUT THE ONES WHO DIDN'T ANSWER.  SO THEY

20   HAD THE 30 DAYS AND THEN THEY HAD AN ORDER FROM

21   YOUR HONOR THE NEXT DAY TO GET THEM IN.  SIX DAYS

22   LATER, THEY FAILED OR REFUSED TO DO SO.

23             NOW, THERE WAS PLENTY OF TIME IF THEY

24   HAVE TELEPHONE CONVERSATIONS OR WHATEVER TO GET

25   THIS DONE.  RULE 37 (A) REQUIRES AN ORDER AND THEN
```

1   A VIOLATION, WHICH WE HAVE HERE.  BUT 37 (D) SAYS

2   THAT A PARTY CAN BE DISMISSED FROM THE CASE ALL

3   THE SANCTIONS THAT ARE AVAILABLE UNDER RULE 37 IF

4   A PARTY, AFTER BEING PROPERLY SERVED WITH

5   INTERROGATORIES UNDER RULE 33 WHERE REQUEST FOR

6   INSPECTION FAILS TO SERVE AS ANSWERS, OBJECTIONS,

7   OR WRITTEN RESPONSE.  SO YOU HAVE THE AUTHORITY TO

8   DO IT RIGHT THEN AND THERE.

9            A PARTY'S OBLIGATION TO THE COURT

10  DOESN'T EXPIRE WITH THE FACT THAT THEY GAVE A

11  DECLARATION THREE AND A HALF YEARS AGO.  THEY HAVE

12  A CURRENT OBLIGATION TO COMPLY WITH THE COURT'S

13  ORDER, AND THERE IS ABSOLUTELY NO BASIS WHATSOEVER

14  FOR NOT DISMISSING THOSE INDIVIDUALS, THOSE 215.

15           THE COURT:  WHAT WOULD YOU WANT ME TO

16  DO?

17           MS. BROWN:  I WANT YOU --

18           THE COURT:  BECAUSE, I DON'T MEAN TO

19  INTERRUPT YOU, BUT YOU MADE THE SAME ARGUMENTS

20  THAT TIME AS YOU DID BEFORE, AND I HEARD THEM THE

21  FIRST TIME.  AND I AM NOT BEING UGLY, I AM TRYING

22  TO DIRECT YOU OVER --

23           MS. BROWN:  RIGHT; RIGHT.

24           THE COURT:  WHAT WOULD YOU HAVE ME DO

25  WITH REGARD TO THE 207 AND THE 215?

```
 1              MS. BROWN:  YOUR HONOR, I WOULD HAVE
 2   YOU DISMISS THEM ALL FROM THE CASE.
 3              THE COURT:  LET'S SUPPOSE THAT I DON'T
 4   WANT TO DISMISS THE ONES WHO ANSWERED, OKAY?  WHAT
 5   WOULD YOU HAVE ME DO?
 6              MS. BROWN:  I WOULD HAVE YOU -- SEVERAL
 7   DIFFERENT THINGS.  FIRST, I WOULD DECERTIFY
 8   BECAUSE I THINK THAT IT'S EVIDENT THAT, AS YOUR
 9   HONOR SAID FROM THE BENCH, WITHOUT THE PROPER
10   ANSWERS, AND THESE ARE CLEARLY INCOMPLETE AND
11   EVASIVE ANSWERS, THERE IS NO EVIDENCE HERE THAT
12   THEY ARE SIMILARLY SITUATED AS WE TRY THEM
13   COLLECTIVELY.
14              I WOULD HAVE YOUR HONOR RESPECTFULLY
15   ASK FOR ALL THESE COMMUNICATIONS THAT PLAINTIFF'S
16   COUNSEL HAD WITH THEM.  I DO NOT UNDERSTAND HOW 50
17   PEOPLE WE DIDN'T SERVE, WE DIDN'T SERVE WITH THE
18   INTERROGATORIES SOMEHOW PROVIDED ANSWERS.
19              THE COURT:  LET'S DON'T GO THERE.  THAT
20   COULD BE INVADING --
21              MS. BROWN:  WELL, THEIR OBJECTIONS WERE
22   WAIVED.  THEY DIDN'T SIGN THE OBJECTION.
23              THE COURT:  NO, NO, THAT COULD BE
24   INVADING THE ATTORNEY/CLIENT PRIVILEGE BY --
25              MS. BROWN:  I WOULD ORDER THEY CAN'T
```

1    SUBMIT ANY OTHER EVIDENCE ON THE DECERTIFICATION,

2    THE RECORD IS CLOSED, THAT YOU GAVE THEM THIS LAST

3    CHANCE TO SUBMIT THIS EVIDENCE.  THEY HAD EVERY

4    OPPORTUNITY WHEN WE WERE DOING THE BRIEFINGS AND

5    EVERYTHING ELSE.  THEY DIDN'T SUBMIT IT, AND, AS A

6    SANCTION FOR THESE EVASIVE AND INCOMPLETE ANSWERS,

7    THE RECORD IS CLOSED AND YOUR HONOR SHOULD

8    DECERTIFY THE CASE.

9              THE COURT:  OKAY.  IF I AM NOT WILLING

10   AS A SANCTION TO DECERTIFY THE CASE AS A SANCTION,

11   WHAT WOULD YOU HAVE ME DO?

12             MS. BROWN:  I WOULD HAVE YOU DECERTIFY

13   IT BECAUSE THE PLAINTIFFS HAVEN'T MET THEIR

14   BURDEN.

15             THE COURT:  DON'T GO TO THE

16   DECERTIFICATION ARGUMENT YET.

17             MS. BROWN:  WELL --

18             THE COURT:  DOES THAT MAKE SENSE?  I AM

19   TALKING ABOUT --

20             MS. BROWN:  I HEAR YOU.

21             THE COURT:  WITH REGARD TO THE MOTION

22   FOR SANCTIONS, IF I DON'T -- SEE, BECAUSE I FULLY

23   RECOGNIZE THAT THE ELEVENTH CIRCUIT, WHICH IS

24   CONSISTENT WITH MOST CIRCUITS, HAS INDICATED THAT

25   DISMISSAL, FRANKLY, IS ONE OF THE LAST RESORTS

```
1    THAT WE GO TO WHEN PARTIES HAVE FAILED TO COMPLY

2    WITH DISCOVERY ORDERS.  EVEN IF I ORDERED A

3    MOTION -- EVEN IF THERE WAS MOTION TO COMPEL FILED

4    AND I ENTERED AN ORDER SAYING ANSWER TO

5    INTERROGATORIES, IT STILL IS SUPPOSED TO BE A

6    MATTER THAT I DON'T TAKE LIGHTLY BUT GRANT,

7    BASICALLY, AS A MATTER OF LAST RESORT WHEN THE

8    PLAINTIFF IS SAYING WE CAN ANSWER THOSE THINGS.

9    SO WHAT SANCTION, WHAT SANCTION WOULD YOU HAVE ME

10   PUT IN PLACE?

11             MS. BROWN:  I WOULD HAVE YOU DRAW AN

12   ADVERSE INFERENCE THAT HAD HONEST ANSWERS BEEN

13   PROVIDED OR PROPER ANSWERS BEEN PROVIDED THEY

14   WOULD HAVE SHOWN THE DISSIMILARITY AND HOURS SPENT

15   ON THESE TASKS THAT WE RECEIVED.

16             THE COURT:  OKAY.  WHAT ELSE; WHAT

17   OTHER OPTIONS?  I AM JUST ASKING FOR OPTIONS HERE.

18             MS. BROWN:  RIGHT.  YOU COULD AWARD

19   FEES AND COSTS SEEKING, IN OUR NEEDING TO SEEK

20   SANCTIONS.  I DO THINK THE RECORD SHOULD BE CLOSED

21   ON DECERTIFICATION, NO ONE ELSE SHOULD, THEY

22   SHOULDN'T BE ALLOWED TO SUPPLEMENT THE RECORD.

23   AND ALL THE, IF YOUR HONOR --

24             THE COURT:  WHAT HAPPENS IF -- LET'S

25   TALK ABOUT DECERTIFICATION JUST A MINUTE, OKAY.
```

1    IF I DECERTIFIED THIS CLASS, IT'S NOT GOING AWAY.

2    INSTEAD OF HAVING ONE CLASS WITH 7 WITNESSES OR

3    WHATEVER TESTIFYING, WE WILL HAVE 260 AND SOME-

4    ODD, AT LEAST, IF NOT MORE, INDIVIDUAL ACTIONS

5    THAT WILL BE PENDING.

6             NOW, I KNOW FROM HISTORY THAT THOSE 260

7    SOMETHING ACTIONS COULD BE TRANSFERRED THEN, BE

8    SUBJECT TO YOU ASKING ME TO TRANSFER THOSE ALL

9    OVER THE COUNTRY.  I HAVE A CASE GOING LIKE THAT

10   RIGHT NOW WHERE THEY ARE ALL OVER THE COUNTRY.

11   IT'S NOT MY CASE ANY MORE, BUT ITS CASES ALL OVER

12   THE COUNTRY AND THEY ARE -- WHAT IT RESULTED IN

13   WAS THE PLAINTIFFS AND THE DEFENDANTS HAVING TO GO

14   TAKE DEPOSITIONS AND RESPOND TO DIFFERENT JUDGES

15   ORDERS ALL OVER THIS COUNTRY.  SO YOU HAVE A JUDGE

16   IN DALLAS -- DO YOU HAVE ANY OF THESE CASES IN

17   DALLAS, TEXAS?

18             MR. GREG WIGGINS:  I'M SORRY?

19             THE COURT:  WHERE ARE THE DIFFERENT

20   JURISDICTIONS, THE 260 SOME-ODD PEOPLE THAT DID

21   ANSWER OR FILE A DEPOSITION RESPONSE?

22             MR. GREG WIGGINS:  JUDGE, I COULDN'T

23   SIT HERE AND SAY YES, WE HAVE SOMEONE IN DALLAS,

24   BUT MORE THAN LIKELY WE HAVE SOME IN TEXAS.

25             THE COURT:  ANYWAY, SAY DALLAS.  THEN

1   YOU HAVE GOT A JUDGE IN DALLAS THAT'S GOING TO SAY

2   I WANT THIS DONE BY X AND WE ARE GOING TO HAVE

3   THIS TRIAL GOING X.  I DON'T CARE.  AND THEN YOU

4   GO TO SOUTH DAKOTA AND YOU HAVE GOT A JUDGE IN

5   SOUTH DAKOTA SAYING, GUESS WHAT, WE ARE GOING TO

6   FINISH THIS CASE UP NEXT MONTH OR SIX MONTHS FROM

7   NOW.  AND THAT'S THE PROBLEM THIS OTHER CASE IS

8   HAVING.

9            AND SOME OF THE JUDGES ARE PUTTING

10  PRESSURE ON OTHER JUDGES -- NOT OTHER JUDGES, BUT

11  IT'S CREATING A NIGHTMARE FOR THOSE WHO ARE

12  PROCEEDING WITH CASES.  AS A RESULT, NOT A WHOLE

13  LOT'S GETTING DONE OTHER THAN CASES GETTING

14  SETTLED BECAUSE THEY DON'T EVEN HAVE TIME TO DO

15  DISCOVERY ON THEM.  SOME JUDGES DON'T LISTEN TO

16  THE FACT WHEN THE PLAINTIFFS AND DEFENDANTS SAY WE

17  CAN'T GET TO THE DISCOVERY.  THEIR ANSWER IS, YOU

18  SHOULDN'T HAVE THE CASE THEN.  EITHER GET MORE

19  LAWYERS, SHOW UP AT THE DEPOSITIONS, OR DISMISS

20  THE CASE.  YOUR CHOICE.

21            I KNOW THIS IS HAPPENING BECAUSE I AM

22  GETTING THE FEEDBACK FROM THESE.  THAT'S NOT

23  HAPPENING IN EVERY ONE OF THEM, BUT IT IS CAUSING

24  A GREAT DEAL OF PRESSURE.

25            SO I DECERTIFY, WE HAVE 200-SOMETHING

1    CASES -- WHAT'S 200 SOMETHING, 265, ANN, TIMES

2    400?  WHAT IS THAT, $80,000?  AND ALMOST EVERY

3    CASE THAT I HAVE DECERTIFIED IN THE OTHER CASE --

4    I DIDN'T DECERTIFY; ACTUALLY, JUDGE CLEMON

5    DECERTIFIED AND ORDERED THEM TO ALL BE FILED

6    TOGETHER AND THEN I BUSTED THEM UP.  BUT ALMOST

7    EVERY ONE OF THOSE CASES ARE SETTLED.

8              THE CLERK:  108.

9              THE COURT:  $108,000.

10             SO, IN EFFECT, THE DEFENDANT IN THAT

11   CASE, THE PLAINTIFF'S COUNSEL ACTUALLY ENDED UP

12   PAYING $600,000 IN FILING FEES IN THAT ONE.  SO IN

13   THIS ONE, PLAINTIFF'S COUNSEL HAD TO COME UP WITH

14   $108,000 IN FILING FEES WHICH THEN, WHEN THE CASE

15   IS SETTLED, YOUR CLIENT, I DON'T KNOW IF THAT'S

16   YOUR CLIENTS OR CO-COUNSEL OR WHAT IT IS --

17             MS. BROWN:  YES, YOUR HONOR.

18             THE COURT:  WOULD END UP HAVING TO PAY

19   THE $108,000 AS AN ADD-ON AT THE END OF THE CASE

20   IF THEY SETTLED OR WE TRY IT.

21             SO, I DON'T WANT TO RUN OUT THERE AND

22   DECERTIFY THIS CLASS BECAUSE THAT'S A KNEE-JERK

23   REACTION.  DOES THAT MAKE SENSE WHAT I AM SAYING

24   TO YOU?

25             MS. BROWN:  IT DOES, YOUR HONOR.  BUT

1   TO THE EXTENT WHAT YOU ARE SAYING IS WHAT DO WE

2   WANT OR DO WE UNDERSTAND THE CONSEQUENCES, BECAUSE

3   AS A MATTER OF LAW, THAT'S WHAT YOU HAVE TO DO ON

4   THIS RECORD.  THESE ARE INDIVIDUAL PLAINTIFFS.  IF

5   THEY CHOOSE NOT TO PURSUE THEIR CASE OR THEY

6   CHOOSE TO PURSUE THEIR CASE, THE COLLECTIVE ACTION

7   ONLY MAKES SENSE IF THEY ALL REALLY BELONG

8   TOGETHER.  IF THEY DON'T, THEY HAVE AN INDIVIDUAL

9   CASE, WE ARE WILLING TO ABIDE THOSE RESULTS.

10  DOLLAR TREE WILL TRY THE CASES THAT REMAIN TO BE

11  TRIED.  IT WILL PROCEED ALONG.

12          IT IS CONFIDENT, THIS CASE IN

13  CALIFORNIA WAS THE SAME THING.  AND THERE ARE SOME

14  HUNDREDS OF PEOPLE IN A CASE OUT THERE WHO WERE

15  DECERTIFIED AND WE ARE GOING TO TRY THOSE CASES.

16          THE COURT:  THERE IS SOMETHING UNIQUE

17  ABOUT CALIFORNIA, BECAUSE IN THIS CASE AND IN THE

18  OTHER CASE, CALIFORNIA WAS KEPT SEPARATE.  SO

19  LET'S TALK ABOUT ANY OTHER CASES THAN CALIFORNIA

20  BECAUSE I AM NOT SURE I KNOW EXACTLY WHAT IT IS.

21          MS. BROWN:  WELL, IN EQUAL PAY CASE,

22  THESE COUNSEL ORDERED THAT THE ENTIRE COUNTRY WAS

23  THE SAME AND THE ONLY REASON, AND CALIFORNIA IS

24  INCLUDED IN THAT CASE.  SO FROM THEIR PERSPECTIVE,

25  I DON'T THINK THEY ARE ARGUING CALIFORNIA IS

1    DIFFERENT BUT THERE IS A MORE STRINGENT

2    REQUIREMENT FOR STORE MANAGERS IN TERMS OF THE

3    EMPLOYER SHOWING THAT THEY ARE EXEMPT, AND DOLLAR

4    TREE MET THAT.

5           BUT WHATEVER THE DIFFICULTIES OF

6    INDIVIDUAL LITIGATION OR WHATEVER THE CHALLENGES,

7    WE ARE AT LEAST NOT DENIED THE DUE PROCESS TO

8    PRESENT THE EVIDENCE ABOUT THAT INDIVIDUAL AND TO

9    HAVE A FACT FINDER SAY ARE THEY EXEMPT OR NOT

10   EXEMPT, AND WE ARE VERY CONFIDENT IN THAT.  AND

11   THE PROBLEM WITH THE COLLECTIVE ACTION WITH

12   EVERYTHING ALL OVER THE MAP, WELL, LITERALLY AND

13   FIGURATIVELY AS IS HERE, IS IT DEPRIVES THE

14   COMPANY OF THAT RIGHT.  THESE INDIVIDUALS HAVE

15   SAID I WANT TO BE A PLAINTIFF, WE ARE WILLING TO

16   LITIGATE THAT ISSUE WITH THEM.  AND IF THE RECORD

17   AND THE FACTS AND THE LAW JUSTIFY IT YOUR HONOR,

18   THAT'S WHAT WE WOULD LIKE.

19           THE COURT:  ALL RIGHT.  HERE'S THE

20   THING.

21           YOU CAN SIT DOWN AND RELAX.  THANK YOU.

22           MS. BROWN:  OKAY.

23           THE COURT:  I HAVE BASICALLY THREE

24   ISSUES THAT I HAVE TO DEAL WITH.  215 WHO DID NOT

25   FILE ANSWERS, 207 WHO FILED ANSWERS BUT THEY WERE

1    CANNED ANSWERS.  AND I HEARD PLAINTIFF'S

2    COUNSEL'S, HE TALKED TO THEM OR WHATEVER.  BUT

3    STILL, AND A MOTION TO DECERTIFY.  I HAD EVERY

4    HOPE THAT WE WOULD TAKE UP THE MOTION TO DECERTIFY

5    TODAY, AND I HEAR THE DEFENDANT'S REQUEST THAT I,

6    AS A SANCTION, BASICALLY, I CLOSE THE EVIDENCE, I

7    RULE AGAINST THE PLAINTIFFS, DO ALL THAT KIND OF

8    STUFF.  BUT I AM CONCERNED THAT THAT WOULD BE

9    GOING TOO FAR TO THE EXTREME.  MY TROUBLES ABOUT

10   THAT IN THE CLASS DECERTIFICATION ISSUE CONTINUE.

11   AND I WANT YOU TO UNDERSTAND WHAT I MIGHT VERY

12   WELL DO.

13            I MIGHT DENY THE MOTION TO DECERTIFY

14   WITH LEAVE TO REFILE IT AS SOON AS WHAT I FINISH

15   SAYING HERE GETS FINISHED SO THAT ADDITIONAL

16   RESPONSES OR WHATEVER CAN COME IN ON BEHALF OF THE

17   DEFENDANT.  OBVIOUSLY, THE PLAINTIFF WILL BE ABLE

18   TO ARGUE EITHER AS WELL BUT IF I DON'T DO THAT,

19   THEN THAT WOULD BE A SANCTION.

20            SO, IT WOULD BE NOT DENIED BECAUSE I

21   THINK IT'S WRONG, BUT DENIED BECAUSE I CAN'T GET

22   TO IT RIGHT NOW BECAUSE OF WHAT HAPPENED IN THIS

23   PARTICULAR EVENT, THIS DISCOVERY, WHICH I HAVE

24   ALREADY EXPRESSED MY FEELINGS ABOUT.  I VERY WELL

25   COULD DISMISS THE 215 THAT DIDN'T ANSWER.  I

```
1    HAVEN'T MADE UP MY MIND YET ABOUT THAT.  IF I DO,
2    THAT WILL BE CLEAR IN MY ORDER WHY.  I AM GOING TO
3    LOOK AT THE CASES THAT -- I THINK YOU ALREADY
4    CITED THEM ACTUALLY, BUT --
5            MR. BOB WIGGINS:  I LEFT ONE OUT, AND
6    WHEN SHE WAS SPEAKING I REMEMBERED, SHE MAKES A
7    DISTINCTION BETWEEN A RULE 23 CLASS AND A PARTY --
8            THE COURT:  YEAH.
9            MR. BOB WIGGINS:  -- JUDGE ACKER HAD
10   THAT ISSUE AGAINST THE SAME COMPANY, ACIPCO,
11   BEAVERS V. AMERICAN CAST IRON PIPE COMPANY.  AND
12   THERE HE DISMISSED PARTIES AND THE ELEVENTH
13   CIRCUIT SAID YOU WENT TOO FAST, YOU HAD TO GIVE
14   THEM WARNING.
15           THE COURT:  YOU GOT A CITE?  COULD YOU
16   GIVE US A CITE.
17           MR. BOB WIGGINS:  I WILL HAVE TO GET
18   THAT FOR YOU, BUT IT'S BEAVERS V. AMERICAN CAST
19   IRON PIPE COMPANY.
20           THE COURT:  PUBLISHED OPINION?
21           MR. BOB WIGGINS:  PUBLISHED OPINION.
22           THE COURT:  OKAY, I WILL LOOK AT IT.  I
23   CAN FIND IT.  HOW LONG AGO WAS THE CASE?
24           MR. BOB WIGGINS:  IT WAS RIGHT AFTER
25   THE COX CASE, IT WAS THE LATE EIGHTIES.
```

1          THE COURT:  YOU KNOW, I DO NOT HAVE ANY

2     DOUBTS THAT PLAINTIFFS KNEW AND WERE ORDERED TO

3     ANSWER THE INTERROGATORIES BY X-DATE.  BUT EVEN IN

4     THAT KIND OF ORDER, I HAVE TO WEIGH WHETHER OR NOT

5     I THINK THAT'S AN APPROPRIATE RESPONSE.  I MAY

6     GIVE THEM 30 DAYS TO SEE WHAT THEY GET IN

7     RESPONSE.  I MAY ORDER THAT INTERROGATORIES BE

8     SENT OUT AGAIN TO THESE FOLKS, ALL OF THEM OR 207

9     OF THEM, I HAVEN'T DECIDED YET, AND THAT ORDER THE

10    HANDWRITTEN RESPONSES BE SENT BACK FROM THE

11    PLAINTIFFS WHERE THEY SIGN IN FRONT OF A NOTARY

12    PUBLIC WHEREVER THEY ARE AND RETURN ORIGINALS TO

13    PLAINTIFF'S COUNSEL AND THAT THE ORIGINALS BE

14    SCANNED AND FILED AND BE HELD IN CASE THERE IS A

15    QUESTION WHETHER OR NOT THEY ACTUALLY ANSWERED

16    THEM.  THAT MAY BE SOMETHING I DO.

17          I MAY ORDER INSTEAD THAT THE DEFENDANT

18    BE PERMITTED TO TAKE THE DEPOSITION OF A CERTAIN

19    NUMBER, A CERTAIN PERCENTAGE OR ALL OF REMAINING

20    CLASS MEMBERS ON THESE ISSUES SO THAT THEY COULD

21    MAKE SURE THAT THEY GET THE ACTUAL HOURS THAT THEY

22    CONTEND.  AND IF THEY SAY WELL, I CAN'T REMEMBER,

23    I THINK IT WAS ABOUT SUCH AND SUCH, WE'LL HAVE ALL

24    THAT KIND OF STUFF IN THE RECORD.  BUT I DON'T

25    KNOW.

```
 1            I AM GREATLY TROUBLED, AS I SAID
 2   BEFORE, BUT I DON'T WANT TO OVERREACT BECAUSE MY
 3   JOB AS A JUDGE IS NOT TO SIT UP HERE AND GET ANGRY
 4   AND OVERREACT AND DO THINGS THAT I SHOULDN'T DO.
 5   I HAVE TO BE FAIR TO EVERYBODY, PERIOD, NO MATTER
 6   WHAT, AND THAT'S WHAT I AM TRYING TO DO.  IN ANY
 7   EVENT, SANCTIONS CAN ALSO INCLUDE THE COST COUNSEL
 8   INCURRED IN PREPARING FOR THIS HEARING, PREPARING
 9   RESPONSES, ET CETERA, AND I WOULD LIKE TO RECEIVE
10   SOME TYPE OF STATEMENT AND BRIEF ON THAT ISSUE
11   BECAUSE THE ELEVENTH CIRCUIT HAS MADE IT VERY
12   CLEAR THAT SANCTIONS SHOULD BE DESIGNED TO GET THE
13   DISCOVERY, TO GET THE PARTIES TO COMPLY.  IT'S NOT
14   MY JOB TO JUST PUNISH PEOPLE AND MAKE THEM PAY
15   ATTORNEYS' FEES OR SOMETHING ELSE.  MY JOB IS TO
16   TRY TO GET THE DISCOVERY AND ULTIMATELY TRY CASES
17   ON THE MERITS AT THE APPROPRIATE TIME.
18            SO, IF I WAS LOOKING IN MY CRYSTAL
19   BALL, THAT'S KIND OF WHAT I AM THINKING.  DOES
20   ANYBODY WANT TO MAKE ANY COMMENTS ABOUT WHAT I
21   HAVE SAID?
22            MR. BOB WIGGINS:  YOUR HONOR, WELL, THE
23   ONE COMMENT I WOULD LIKE TO MAKE IS IF WE ARE
24   GOING TO HAVE PEOPLE DO PENCILED, HANDWRITTEN
25   ANSWERS, WE NEED TO GET THESE QUESTIONS IN MORE
```

1    LAYMAN'S WAY OF SAYING THINGS BECAUSE WE GOT BACK

2    RESPONSES TO THESE AND THEY WERE A MESS.  AND YOU

3    ARE GOING TO BE PUTTING PEOPLE THAT ARE NOT THAT

4    WELL EDUCATED TO A TEST THAT THEY CAN'T REALLY

5    MEET BECAUSE THEY DON'T HAVE THE SKILLS.

6         THE COURT:  WELL, I MEAN THAT'S WHY

7    DEPOSITIONS ARE CERTAINLY AN OPTION.  WHAT DOES

8    THE DEFENDANT THINK ABOUT GOING AND TAKING THE

9    DEPOSITIONS OF THESE PEOPLE.

10        MS. BROWN:  WELL, YOUR HONOR, A COUPLE

11   OF REACTIONS TO IT.  ONE IS ESPECIALLY IF THE

12   RECORD DOES WARRANT DECERTIFICATION AND WE HAVE TO

13   GO OUT AND HAVE INDIVIDUAL CASES AND HAVE TO HAVE

14   A DEPOSITION NOW AND THEN AGAIN SEEMS A HUGE

15   HURDLE UNLESS THEY ARE ORDERED TO PAY FOR THE TIME

16   OF TAKING THE, FOR US TO TAKE THE DEPOSITIONS.

17   BECAUSE THIS COULD HAVE BEEN ACHIEVED THROUGH THE

18   INTERROGATORIES HAD THEY COMPLIED WITH --

19        THE COURT:  I THINK YOU WOULD TAKE THE

20   DEPOSITION OF EVERYTHING, WOULDN'T JUST TAKE THE

21   PEOPLE --

22        MS. BROWN:  ON THIS ONE ISSUE.

23        THE COURT:  RIGHT.  BECAUSE EVEN, LET'S

24   SAY FOR, INSTANCE THESE, PEOPLE ARE DECERTIFIED,

25   YOU ARE GOING TO HAVE THE SAME ISSUE WHEN YOU TRY

```
 1    THE CASE.  AND IF THEY ARE NOT DECERTIFIED, THEN

 2    YOU GET THE BENEFIT OF BEING ABLE TO ANSWER THE

 3    QUESTION.  I AM JUST ASKING YOU WHAT YOU THINK

 4    ABOUT THAT, I AM NOT TELLING YOU THAT YOU HAVE TO.

 5    YOU DON'T HAVE TO TAKE ANYBODY'S DEPOSITION.

 6          MS. BROWN:  NO, OF COURSE, OF COURSE

 7    NOT.  I WOULD THINK, YOUR HONOR, TO THE EXTENT

 8    THEY ARE GOING TO BE GIVEN ANY FURTHER OPPORTUNITY

 9    TO ANSWER THE INTERROGATORIES, WHICH I THINK ARE

10    IN VERY LAY TERMS, THAT THIS BE AN ORDER THERE NOT

11    BE ANY COMMUNICATION SUGGESTING THE ANSWERS ABOUT

12    INVADING, WHAT THEY DO COMMUNICATE IN THEIR BRIEF

13    AND I THINK THEY WERE INTENDED TO PLUG THE HOLE

14    THAT YOUR HONOR SAW BY JUST GIVING YOU 200

15    IDENTICAL SENTENCES FROM THEIR BRIEF.  AND SO I

16    WOULD ASK THAT THAT NOT BE PERMITTED.

17          THE COURT:  BEST WAY TO MAKE SURE OF

18    THAT IS YOU GO TAKE THEIR DEPOSITIONS.  YOU WANT

19    TO TAKE THEM OR NOT?  I AM NOT GOING TO ORDER THAT

20    THAT BE A RELIEF AND THEN YOU SAY WAIT A MINUTE, I

21    DON'T WANT TO SPEND A HALF A MILLION DOLLARS OR

22    $750,000 TAKING DEPOSITIONS.

23          MS. BROWN:  IF, YOUR HONOR, IF WE DON'T

24    GET ADEQUATE INTERROGATORY ANSWERS, IF WE DIDN'T

25    GET ADEQUATE INTERROGATORY ANSWERS AND THAT'S YOUR
```

1   HONOR'S --

2           THE COURT:  YOU KNOW, FRANKLY, I WAS

3   LEANING TOWARDS CERTIFYING -- DENYING THE MOTION

4   TO DECERTIFY THE CLASS, EXPECTED FULLY TO GET

5   ANSWERS THAT WOULD, SOME OF THEM WOULD BE 80

6   PERCENT, SOME OF THEM WOULD BE 75 PERCENT OF OUR

7   TIME WE CALCULATED, SOME WOULD BE 90, SOME WOULD

8   BE 65 OR 70.  I FULLY EXPECTED TO GET THAT AND WE

9   WOULD BE DONE WITH THIS AND WE WOULD BE ON, BUT WE

10  ARE NOT THERE ANY MORE.

11          MS. BROWN:  YOUR HONOR HERE'S A

12  THOUGHT.  WHAT IF YOUR HONOR SENT THE

13  INTERROGATORIES AND THE ANSWERS CAME BACK DIRECTLY

14  TO YOU?

15          THE COURT:  I DON'T WANT THE ANSWERS.

16          MS. BROWN:  OH.  ALL RIGHT.

17          THE COURT:  YOU MUST THINK I HAVE A LOT

18  MORE TIME THAN -- I JUST GOT THROUGH TRYING THIS

19  WEEK A DRUG CASE WHERE THEY BROUGHT IN, IN A

20  TRANSFER TRAILER OR IN THE TRUCK 99 KILOGRAMS OF

21  COCAINE, WHOLESALE VALUE THREE MILLION DOLLARS

22  THAT WE ARE GOING TO HAVE TO RETRY.  WE TRIED IT

23  THIS WEEK AND GOING TO HAVE TO RETRY IT IN THREE

24  WEEKS TO COMPLY WITH THE MANDATES THAT I HAVE ON

25  ME.  I HAVE GOT ANOTHER CASE STARTING NEXT WEEK,

1   THE ONE AFTER THAT, AND THAT'S WHY -- NOT TO

2   MENTION ALL THE REST OF THE THINGS I HAVE TO DO.

3   I APPRECIATE WHAT YOU SAID, I AM NOT MAKING LIGHT

4   OF IT.  BUT IF I MAILED OUT, TOOK THE

5   RESPONSIBILITY OF DOING THAT, THEN I GOT THEM ALL

6   IF, THEN I HAD TO MARSHAL THEM AND TAKE PHONE

7   CALLS FROM EVERYBODY AS TO WHY DID YOU SEND THIS

8   TO ME, I WOULD HAVE TO SHUT MY OFFICE DOWN.

9            MS. BROWN:  RIGHT.  MAY I JUST --

10           THE COURT:  GREAT IDEA, BUT WON'T WORK.

11           MS. BROWN:  COULD MS. TURK FROM DOLLAR

12   TREE ADDRESS THE COURT, YOUR HONOR, ON THIS

13   ISSUE?

14           THE COURT:  WHY NOT?

15           MS. TURK:  AMY TURK, CORPORATE COUNSEL

16   FOR DOLLAR TREE.

17           THE COURT:  OUT OF DALLAS, TEXAS?

18           MS. TURK:  CHESAPEAKE, VIRGINIA.

19           THE COURT:  WHY DON'T WE SEND ALL OF

20   THESE CASES TO VIRGINIA?

21           MS. TURK:  YOUR HONOR, IF YOU ASKED A

22   QUESTION ABOUT WOULD DOLLAR TREE BE PREPARED TO

23   DEPOSE ALL OF THESE PEOPLE, AND I GUESS MY

24   RESPONSE TO THAT WOULD BE IF THAT'S WHAT THE COURT

25   ORDERED, OF COURSE WE WOULD ABIDE BY THAT.  AND

1   YOU ALSO TALK ABOUT PREJUDICE TO THE PARTIES.

2          THREE AND A HALF YEARS AGO, WE ASKED TO

3   DEPOSE ALL OF THESE PEOPLE.  WHEN WE WERE BLOCKED

4   TO DO SO, WE HAD TO GO THROUGH ENORMOUS, ENORMOUS

5   EXPENSE TO GO THROUGH OTHER MANEUVERS TO TRY TO

6   GET THE INFORMATION REQUESTED.  AND HUNDREDS OF

7   THOUSANDS OF DOLLARS, IF NOT MORE, IN DEFENDING

8   THIS CASE.  AND WE ARE BACK TO WHERE WE WERE THREE

9   AND A HALF YEARS AGO.

10          THE COURT:  HOW MANY PLAINTIFFS WERE IN

11   THE CLASS BACK THERE THREE YEARS AGO.

12          MS. TURK:  I THINK WE STARTED WITH 800

13   PLUS.

14          THE COURT:  HOW MANY HAVE WE GOT NOW?

15          MS. TURK:  I THINK WE ARE DOWN TO ABOUT

16   475.

17          THE COURT:  DO YOU KNOW HOW MUCH IT

18   WOULD HAVE COST YOU TO TAKE 800 PLAINTIFFS'

19   DEPOSITIONS?

20          MS. TURK:  I UNDERSTAND, YOUR HONOR.

21          THE COURT:  WAIT A MINUTE, DON'T LEAVE

22   IT.  OKAY.  800 PLAINTIFFS DEPOSITIONS.  WHAT,

23   $3,000 A PIECE.

24          MS. TURK:  YES, YOUR HONOR.

25          THE COURT:  EASILY MAYBE MORE THAN

1    THAT.  LET'S SAY $5,000, BECAUSE YOU HAVE GOT TO

2    PAY THE COURT REPORTER, HAVE TO PAY COUNSEL TO GET

3    READY, WHAT'S 800 TIMES 5,000?

4              FOUR MILLION DOLLARS.  SO NOW, THE

5    QUESTION IS, DO YOU TAKE 200 ADDITIONAL ONES WHICH

6    INSTEAD OF FOUR MILLION WOULD BE ONE MILLION.  I

7    AM NOT TRYING TO BE UGLY TO YOU, BUT THE REASON

8    WHY -- AND I DON'T MAKE DECISIONS LIGHTLY, OKAY?

9    THE REASON WHY WE HAVE THE ABILITY TO DO THESE

10   KIND OF ACTIONS TO BEGIN WITH IS BECAUSE THERE IS

11   A CERTAIN AMOUNT OF JUDICIAL ECONOMY AND ECONOMY

12   TO THE PARTIES.  IF YOUR CLIENT, AND THESE OTHER

13   DOLLAR STORES WOULD LOOK AT CHANGING THE WAY THEY

14   DO BUSINESS AND PAY THESE PEOPLE BY THE HOUR TO

15   BEGIN WITH, CALL THEM STORE MANAGERS, BUT DO THAT,

16   WE WOULDN'T BE HERE TO BEING WITH.

17             MS. TURK:  MAY I ADDRESS THAT, YOUR

18   HONOR?

19             THE COURT:  NO.  I JUST WANTED TO HAVE

20   THAT SAID TO YOU BECAUSE I HAVE TALKED TO YOUR

21   LAWYERS ABOUT IT, I HAVE TALKED TO OTHER PEOPLE'S

22   LAWYERS ABOUT IT, I HAVE TALKED TO PLAINTIFFS'

23   COUNSEL ABOUT IT.  I KNOW ALL THE ANSWERS.  THE

24   STORE MANAGERS WANT TO DO IT, THEY WILL SUE US

25   ANYWAY ON SOME OTHER THEORY.  I DON'T WANT TO GET

1    INTO THAT DISCUSSION.

2              THE QUESTION WAS, DO YOU WANT TO

3    TAKE -- NOT WILL YOU DO IT, BECAUSE I KNOW YOU

4    WILL DO IT IF I ORDER YOU TO, OKAY?  THAT'S NOT

5    THE QUESTION.  THE QUESTION IS, DO YOU WANT ME TO

6    ORDER 207, 400 AND WHATEVER POTENTIAL DEPOSITIONS,

7    OR DO YOU WANT ME INSTEAD TO DO INTERROGATORIES

8    WHERE THEY ARE SENT OUT AND WE GET PAPER COPIES

9    BACK?  I AM NOT SAYING I AM GOING TO DO WHAT YOU

10   TELL ME, I JUST WANT TO KNOW WHAT YOUR PREFERENCE

11   IS.

12             MS. TURK:  I GUESS THE QUESTION I

13   WOULD ASK YOUR HONOR IS IF WE HAVE PAPER ANSWERS

14   THAT WERE TYPED UP BY THE PLAINTIFF'S COUNSEL, WHY

15   COULDN'T THEY HAVE TO SUBMIT THE PAPER ANSWERS

16   THAT THEY RECEIVED FROM THEIR CLIENT SO THAT IT

17   WOULD EXPEDITE (SIC) THE PROCESS?  WE WOULDN'T

18   HAVE TO GET ANOTHER BITE AT THE APPLE AND IT COULD

19   EXPEDITE (SIC) THIS PROCESS BECAUSE THEY HAVE

20   REPRESENTED THAT THEY HAVE PAPER ANSWERS FROM

21   THEIR CLIENTS.  WHY CAN'T WE USE THOSE PAPER

22   ANSWERS?

23             THE COURT:  DO YOU HAVE PAPER ANSWERS?

24             MR. BOB WIGGINS:  WE HAVE REPRESENTED

25   WE HAVE SOME THAT TURNED OUT TO BE NON-USABLE.

```
1    THEY EITHER DIDN'T ANSWER OR THE ANSWER MADE NO
2    SENSE OR YOU COULDN'T EVEN READ IT AND WE HAD TO
3    CALL THEM.  BUT WE DO HAVE SOME.
4            THE COURT:  OKAY.
5            MS. BROWN:  YOUR HONOR, MY THOUGHT ON
6    THIS QUESTION OF INTERROGATORIES VERSUS THE
7    DEPOSITIONS IS I THINK FOR SAKE OF ECONOMY ON ALL
8    SIDES, WE OUGHT TO TRY THE INTERROGATORIES FIRST
9    AND READ THEM.  WE WOULD HAVE THE OPTION TO TAKE
10   DEPOSITIONS IF WE CHOSE TO.
11           THE COURT:  I WOULDN'T SAY YOU WOULD
12   HAVE THE OPTION BUT YOU COULD ASK FOR IT.
13           MS. BROWN:  YES, YOUR HONOR.
14           THE COURT:  BECAUSE I WOULD LOOK -- LET
15   ME TELL YOU SOMETHING.  IF I ALLOW THE PLAINTIFFS
16   TO SEND INTERROGATORIES BACK OUT AGAIN, AND IF WE
17   GET THE ANSWERS AND WHATEVER ANSWERS YOU RECEIVE
18   ARE SENT ON TO THEM, IF THEY DON'T GET RESPONDED
19   TO, OR THEY ALL COME BACK THE SAME WAY, THIS IS
20   NOT GOING TO TAKE ME LONG FOR THE DECISION I AM
21   GOING TO MAKE.  DOES EVERYBODY HERE UNDERSTAND
22   THAT?
23           MR. BOB WIGGINS:  YES, SIR.
24           THE COURT:  ALL RIGHT.  SO, BETWEEN NOW
25   AND NEXT WEEK I AM GOING TO MAKE A DECISION.  I
```

1    WANT YOU, YOU HAVE ASKED THAT THE INTERROGATORIES

2    BE IN MORE LAYMAN'S TERMS SO THEY ARE EASIER TO

3    UNDERSTAND.  I DIDN'T WRITE THE THINGS.  BUT I

4    HAVE NO PROBLEM WITH THEM IF I DO ORDER THAT WAY

5    TO BE IN LAYMAN'S TERMS.  MORE LAYMAN'S TERMS.  I

6    COULD CARE LESS. IF DEFENSE WANTS TO SEND THEM OUT

7    JUST LIKE THEY ARE, THAT'S THE WAY THEY ARE GOING.

8    IF YOU CAN, NOW, IF THEY GO OUT THAT WAY AND THE

9    ANSWERS COME BACK AND ARE NOT UNDERSTANDABLE, THEN

10   YOU CAN ARGUE THEY ARE NOT UNDERSTANDABLE.

11            I THINK THEY ARE PRETTY CLEAR MYSELF.

12   IF SOMEBODY CAN'T READ, YOU KNOW, THEN PERHAPS

13   THEY NEED TO GET SOMEONE TO READ THE QUESTIONS TO

14   THEM.  IF THEY CAN'T READ, THEY PROBABLY CAN'T

15   WRITE.  THEY NEED TO FILL OUT THE FORMS, SOMEBODY

16   ELSE MAY HAVE TO HELP THEM WRITE OUT WHAT THEY ARE

17   SAYING.  BUT THAT WOULD ONLY BE IF THEY CAN'T READ

18   AND WRITE.  YOU KNOW, BECAUSE THE QUESTION IS, YOU

19   KNOW, SAY ON AVERAGE SAYS -- LETS GO TO ONE.

20            STATE HOW MANY HOURS EACH WEEK ON

21   AVERAGE YOU SPENT UNLOADING AND STOCKING THE

22   SHELVES, UNLOADING TRUCKS OR STOCKING SHELVES.

23   YOU KNOW, A LAYMAN READING THAT WOULD SAY ON

24   AVERAGE I SPENT ABOUT X-NUMBER OF HOURS A WEEK

25   DOING THAT.  A LAWYER ON THE OTHER HAND WOULD SAY,

1   WELL, ARE WE TALKING ABOUT ON AVERAGE FOR EACH

2   WEEK WE HAVE TO ANSWER IT?  ON AVERAGE, I MEAN

3   THAT'S A LAWYER THAT WOULD DO THAT, NOT A LAY

4   PERSON.

5          MR. BOB WIGGINS:  I CAN TELL YOU THAT

6   MOST OF THE ONES WE GOT BACK UNDERSTOOD THAT IN

7   PERCENTAGE TERMS WHEN YOU TALK ABOUT AVERAGE AS

8   FAR AS BEING ABLE TO PARSE OUT, SOME OF THESE

9   THINGS ARE DONE SIMULTANEOUSLY --

10          THE COURT:  BUT I AM BOTHERED BY THE

11   FACT THAT YOU DIDN'T HAVE THE BLANKS HERE ON

12   HOURS.  YOU ARE TELLING ME YOU SENT THE DOCUMENT

13   THAT HAD THE HOURS ON IT.  IT DOESN'T HAVE A BLANK

14   FOR PERCENTAGE, IT HAS A BLANK FOR HOURS.  THE

15   INTERROGATORY THAT WAS SENT, WELL, I CAN'T SEEM TO

16   FIND IT.  STORE NUMBER BLANK, HOURS PER WEEK BLANK

17   FOR EACH ONE OF THOSE.

18          YOU CAN PUT A CAUTIONARY STATEMENT

19   ACROSS THE TOP OF IT THAT SAYS YOUR ANSWERS MUST

20   BE STATED IN HOURS.

21          MR. BOB WIGGINS:  DO NOT STATE

22   PERCENTAGES.

23          THE COURT:  DO NOT STATE PERCENTAGES,

24   LIKE THAT, YOU COULD PUT ONE OF THOSE KIND OF

25   STATEMENTS.  AND WHEN I GET THROUGH TALKING, YOU

1   TWO CAN TALK AND SEE WHETHER OR NOT YOU CAN COME

2   UP WITH SOMETHING THAT WOULD BE MORE LAYMAN

3   FRIENDLY, LAY PERSON FRIENDLY.

4           BUT YOU KNOW, ANYWAY, I THINK I HAVE

5   TALKED ENOUGH.

6           MS. BROWN:  MAY I MAKE ONE OTHER

7   REQUEST, YOUR HONOR?  ON THESE TWO OR THREE CASES

8   THAT HE HAS MENTIONED ABOUT NON-DISMISSAL FOR THE

9   FAILURE TO ANSWER AFTER AN ORDER, COULD WE JUST

10  LOOK AT THOSE AND SUBMIT SOMETHING TO YOUR HONOR

11  IF WE THINK IT WOULD BE USEFUL?

12          THE COURT:  SAY THAT AGAINST.

13          MS. BROWN:  THIS IS THE ONES THAT

14  DIDN'T ANSWER AT ALL.  MR. WIGGINS GAVE YOU A

15  COUPLE OF CASE CITATIONS OR CASE NAMES THAT HE

16  SAID.

17          THE COURT:  RIGHT.

18          MS. BROWN:  SHOULDN'T WARRANT

19  DISMISSAL.  WOULD WE BE GIVEN AN OPPORTUNITY TO

20  LOOK AT THOSE AND SUBMIT SOMETHING ON THOSE

21  PARTICULAR CASES?

22          THE COURT:  TODAY IS FRIDAY.

23          MS. BROWN:  YES.

24          THE COURT:  AS LONG AS YOU HAVE IT TO

25  US BY MONDAY AT 5:00 FIVE P.M., AND YOU SAID YOU

1   HAD ANOTHER CASE THAT YOU WANT -- NO, YOU ALREADY

2   GAVE IT TO US, THE NAME OF IT, BEAVERS, YOU WROTE

3   THAT DOWN.

4            (DISCUSSION OFF THE RECORD.)

5            MR. BOB WIGGINS:  YOUR HONOR, COULD I

6   PUT ONE MORE THING BEFORE YOU?

7            THE COURT:  WHY NOT?

8            MR. BOB WIGGINS:  I WANT THE COURT TO

9   UNDERSTAND THE CONTEXT OF HOW THIS RUNS BECAUSE I

10  WROTE THE BRIEF IN RESPONSE TO THE MOTION TO

11  DECERTIFY, AND I WAS RESPONDING TO THE MOTION AND

12  TO THEIR LENGTHY BRIEF.  THEY DID NOT RAISE THE

13  QUESTION ABOUT THE AMOUNT OF TIME.  THEY HAVE BEEN

14  A DISPUTE IN THIS CASE.  WE TOOK DEPOSITIONS ON

15  30(B)(6) OFFICIALS, TOOK DEPOSITIONS OF REGIONAL

16  MANAGERS.  WE ASKED THEM OVER AND OVER, HAVE YOU

17  LOOKED AT THE AMOUNT OF TIME?  DO YOU DISPUTE THE

18  AMOUNT OF TIME?  THEY SAID NO.  SO WHEN I WROTE

19  THE BRIEF --

20           THE COURT:  HANG ON, I UNDERSTAND YOU

21  DID, OKAY?  I GOT THAT FROM WHAT GREG SAID A FEW

22  MINUTES AGO.  HERE'S THE PROBLEM WITH THAT.  FIRST

23  OFF, MANY TIMES THAT WE HAVE ALL BEEN TOGETHER AND

24  TALKED, I HAVE HEARD DEFENSE COUNSEL SAY NO, NOT

25  EVERYBODY IS 80 PERCENT OF THE TIME.  THERE IS

1    PEOPLE THAT ARE 60 PERCENT AND 55 PERCENT, OKAY.

2    I HEARD THAT.  MAYBE NOBODY ELSE DID, BUT I

3    CERTAINLY HEARD IT.  DID YOU SAY THOSE THINGS?

4              MS. BROWN:  YES, YOUR HONOR.  WE

5    DISPUTE THIS.

6              THE COURT:  HANG ON.  SO WHEN THEY SAID

7    YOUR GUYS ARE NOT SIMILARLY SITUATED, I MEAN YOU

8    HAVE GOT A CERTAIN OBLIGATION TO DO, AND YOU SAID,

9    YOU JUST CITED THE ONE PERSON.  AND I GAVE YOU AN

10   ORDER, HE SENT AN ORDER OUT THAT WAS LIKE A

11   FLASHING SIGN THAT SAID HERE'S THE ISSUE THAT I

12   WANT TO HAVE THIS HEARING ON.

13             MR. BOB WIGGINS:  YES, SIR.

14             THE COURT:  AS A MATTER OF FACT, Y'ALL

15   STILL DIDN'T GET IT AND BOTH SIDES ASKED FOR A

16   TELEPHONE CONFERENCE TO CLEAR UP WHAT IT IS I

17   WANTED TO HAVE THIS HEARING ABOUT.  SEEMS LIKE I

18   REMEMBER THAT.

19             MR. BOB WIGGINS:  I JUST WANT THE COURT

20   TO UNDERSTAND THOUGH THAT WHEN I WROTE THAT BRIEF

21   AND I MADE THAT CITATION, IT WAS BECAUSE THIS HAD

22   NOT BEEN RAISED AS AN ISSUE IN THE BRIEF I WAS

23   RESPONDING TO.

24             THE COURT:  WELL, THEY DON'T CONTEND

25   THAT, I UNDERSTAND WHAT YOU ARE SAYING, I HEARD

```
1   WHAT YOU SAID.  THEY DIDN'T SAY, YOU KNOW, IN
2   FACT, YOU GOT SOME THAT WERE 65 AND SOME WERE 75
3   AND SOME WERE -- I READ THEIR ARGUMENT TO INCLUDE
4   ALL THOSE THINGS THAT YOU, AND I FULLY EXPECTED
5   YOUR RESPONSE TO BE STARTING FROM BLOCK ZERO, THIS
6   IS HOW THEY ARE SIMILARLY SITUATED.  BECAUSE I
7   HAVE HEARD Y'ALL ARGUE THIS.  YOU HAVE ARGUED THIS
8   TO ME AND GOTTEN A RESPONSE FROM HER.  NOT YOU,
9   BUT GREG MAINLY, WHERE HE SAID, YOU KNOW, THEY
10  SPEND 85 TO 90 PERCENT OF THEIR TIME WORKING ON
11  SUCH AND SUCH.  I FULLY EXPECTED THERE TO BE A
12  STATEMENT LIKE THAT AND A REFERENCE TO 55
13  DEPOSITIONS THAT SAID NOW WE HAVE IT HERE TODAY,
14  BUT WE DIDN'T HAVE IT THEN.  I AM NOT FUSSING AT
15  YOU.
16          MR. BOB WIGGINS:  WELL, IT WAS AN
17  OVERSIGHT.
18          THE COURT:  I UNDERSTAND THAT.
19          MR. BOB WIGGINS:  I HAVE TO ADMIT THAT
20  IT AS GREG HAS ALREADY DONE.  I JUST WANTED YOU TO
21  UNDERSTAND I CAME AT THAT BRIEF, AND IT WAS A
22  RESPONSIVE BRIEF.  AND I DID CITE TO ALL THEIR
23  OFFICIALS TESTIMONY WHERE THEY SAID THEY DON'T
24  DISPUTE THIS, THEY HAVEN'T STUDIED IT AND THEY
25  DON'T KNOW.
```

1          THE COURT:  RIGHT.  AND I ONLY FELT IT

2     FAIR BECAUSE IT WAS NOT CLEAR THAT I HAVE THIS

3     HEARING TO ALLOW YOU AN OPPORTUNITY TO PRESENT

4     THIS EVIDENCE.  HAD I NOT, HAD I WANTED, I FELT

5     LIKE THAT MIGHT HAVE BEEN THE ISSUE THAT YOU

6     DIDN'T THINK YOU WOULD NECESSARILY NEED TO DO

7     THAT, AND THAT'S WHY I SET THE HEARING, OKAY.  I

8     WAS, I FULLY UNDERSTOOD THAT YOU DIDN'T THINK YOU

9     NEEDED TO DO THAT, OKAY.

10          BUT I HAVE BEEN, WHEN I WAS A STATE

11    JUDGE, IT ALL GOES BACK TO WHEN I WAS A STATE

12    JUDGE.  I HANDLED A SUMMARY JUDGMENT CASE ONE

13    TIME, AND THEY ARGUED SUMMARY JUDGMENT AND THE

14    LAWYER, I THINK THE DEFENSE COUNSEL DID NOT ARGUE

15    A PARTICULAR POINT AT ALL.  AND IT WAS IN MY

16    CHAMBERS, IT WASN'T ON THE RECORD BUT IT WAS IN MY

17    CHAMBERS.  THEY DIDN'T ARGUE IT.  SO I JUST

18    PRESUMED THAT THEY ARE OKAY WITH IT.  I WROTE MY

19    ORDER AND I WAS REVERSED.  AND YOU KNOW WHY I WAS

20    REVERSED?  IT WAS BECAUSE THE DEFENDANT FIRED THAT

21    DEFENSE COUNSEL, HIRED ANOTHER ONE WHO THEN CAME

22    IN AND SAID THE JUDGE ABSOLUTELY IGNORED THIS.

23          AND I DON'T GET AN OPPORTUNITY IN THE

24    APPELLATE LEVEL TO SAY WAIT A MINUTE, THIS WAS NOT

25    EVEN RAISED.  SO THERE IS A CERTAIN AMOUNT THAT

1    WE, AS A COURT, HAVE TO LOOK AND SAY WHAT'S GOING

2    TO COME UP?  BECAUSE THIS NICE LADY OVER HERE

3    MIGHT FIRE THESE NICE LAWYERS OVER HERE AND THEN

4    IT COME UP TO APPEAL.  AND THEN I AM, YOU KNOW,

5    THEN I GET SOME PANEL IN AN UNPUBLISHED OPINION

6    THEN SEND SOMETHING OUT SAYING THE JUDGE DIDN'T

7    EVEN CONSIDER THE FACT THAT THEY DIDN'T PUT IN

8    THERE ANY SUPPORT WHATSOEVER FOR THE FACT THAT 80

9    PERCENT OR 90 PERCENT OR WHATEVER, AND I DIDN'T

10   WANT THAT TO HAPPEN.  IF I CERTIFY THE CLASS OR

11   DENIED THE MOTION TO DECERTIFY, I DIDN'T WANT TO

12   HAVE IT COMING BACK AT ME ON THAT ISSUE THAT WAS

13   SO SIMPLE TO FIX.

14            MR. BOB WIGGINS:  I UNDERSTAND.

15            THE COURT:  I AM NOT, I WAS NOT FUSSING

16   AT YOU ABOUT THAT.  HAD I WANTED TO FUSS AT

17   ANYBODY, I COULD HAVE CERTAINLY DONE THAT.  I JUST

18   SET THIS BECAUSE IT READ TO ME, WHEN I READ BOTH

19   OF YOUR BRIEFS, THAT YOU WERE ASSUMING THAT THAT

20   WAS A GIVEN AND THAT THEY WERE ASSUMING THAT IT

21   WAS A GIVEN.  IT READ LIKE THAT.  BUT THAT WAS A

22   WHOLE LOT OF ME READING INTO IT.  AND I HAD

23   REMEMBERED THAT DEFENSE COUNSEL HAD ALWAYS RAISED

24   THAT ISSUE.  AND SO I FELT LIKE WE HAD TO ADDRESS

25   IT AND I HAD TO MAKE A DECISION AS TO WHETHER OR

 1   NOT THEY, AS FAR AS I KNEW, THERE COULD HAVE BEEN,

 2   OF THE 9,400 OR  -500 CLASS MEMBERS, A HUNDRED OF

 3   THEM SAYS 80 PERCENT, A HUNDRED OF THEM SAYS 70

 4   PERCENT, A HUNDRED OF THEM SAYS 60 PERCENT, AND A

 5   HUNDRED OF THEM SAY 55 PERCENT OR SOMETHING, AND I

 6   NEEDED TO KNOW WHETHER THAT WAS TRUE OR NOT.

 7           AND THAT WAS BASICALLY PART OF THE

 8   REASON WHY I WANTED TO HAVE THE HEARING TO SEE

 9   WHAT THE TRUTH WAS SO THAT I WASN'T PLAYING

10   "GOTCHA, JUDGE."  I WAS GETTING TO WHAT THE FACTS

11   ARE.

12           OKAY?  ALL RIGHT.  SO YOU TWO TALK

13   ABOUT THESE INTERROGATORIES.  I AM NOT SAYING

14   THAT'S WHAT I AM GOING TO DO.  YOU FILE SOMETHING

15   BY MONDAY BY IN RESPONSE TO HIS CASES.  DON'T GO

16   ARGUING YOUR POINTS AGAIN, OKAY?

17           ANYTHING ELSE WE NEED TO TAKE UP?

18           MR. GREG WIGGINS:  JUDGE, WILL WE HAVE

19   AN OPPORTUNITY TO REPLY TO WHAT THEY FILE MONDAY?

20           THE COURT:  ONLY IF SHE SAYS SOMETHING

21   OTHER THAN HERE'S WHAT WE THINK ABOUT THESE TWO

22   CASES.  IF SHE BRINGS SOMETHING ELSE UP, YOU WILL

23   HAVE AN OPPORTUNITY TO RESPOND BUT YOU BETTER

24   RESPOND THE NEXT DAY.  I AM NOT GOING TO ENTER AN

25   ORDER, OKAY?  I DON'T WANT ANYTHING ELSE.

1          MR. GREG WIGGINS:  I UNDERSTAND THAT,

2     TOO.

3          THE COURT:  ALL RIGHT.  I AM NOT

4     FUSSING AT ANYBODY HERE.  IT MAY SOUND LIKE I AM,

5     BUT I AM NOT.  GOOD LUCK.

6          MR. GREG WIGGINS:  JUDGE, ONE FINAL

7     THING.  I KNOW WE DID NOT GET TO THE ACTUAL ISSUE

8     WHICH I THOUGHT WE WERE DOWN HERE ON, BUT AS FAR

9     AS THOSE DEPOSITIONS AND THOSE --

10         THE COURT:  THEY ARE NOT BEFORE ME

11    RIGHT NOW.

12         MR. GREG WIGGINS:  WE WOULD LIKE TO --

13         THE COURT:  I AM NOT TAKING THAT MOTION

14    UP RIGHT NOW BECAUSE I DON'T THINK IT'S FAIR TO

15    THE DEFENDANT TO TAKE UP THE MOTION TO DECERTIFY

16    THE CLASS WHEN THEY HAVEN'T EVEN HAD THE

17    OPPORTUNITY TO GET THEIR INTERROGATORY ANSWERS

18    BACK.  IF I TAKE IT UP RIGHT NOW, I THINK IT WOULD

19    BE IN THE LIGHT OF JUST A SANCTION, HOW I WOULD

20    RULE.  I THINK THAT I AM PROBABLY GOING TO BE

21    DENYING IT JUST TEMPORARILY TO ALLOW THEM TO GET

22    WHATEVER WE ARE GOING TO DO HERE, WHETHER I AM

23    GOING TO THROW OUT SOME, NOT THROW OUT OTHERS,

24    MAKE YOU ANSWER, WHATEVER I AM GOING TO DO, AND

25    THEN TAKE THIS BACK UP WHERE I CAN GET EVERYTHING

1    BEFORE ME.  BECAUSE I DON'T THINK IT'S APPROPRIATE

2    FOR ME TO CLOSE MY EYES TO THE FACT THAT YOU HAVE

3    DEPOSITION RESPONSES HERE WHERE YOU SAY IT SAYS

4    THOSE THINGS, AND IF YOU SAY IT, I ASSUME IT

5    DOES.  YOU WILL HAVE THE OPPORTUNITY TO PRESENT

6    THAT.

7              WHAT I WOULD DO, GREG, IS I WOULD THEN

8    FILE A WRITTEN MOTION OR WHATEVER.

9              LET ME MAKE IT CLEAR ON THE RECORD.  WE

10   ARE STILL ON THE RECORD.  THE ONLY THING I WILL DO

11   IS DENY THE MOTION TO DECERTIFY UNLESS I OPEN UP

12   THE EVIDENCE AND ALLOW YOU TO SUBMIT THAT LATER.

13             DOES THAT MAKE SENSE?

14             MR. GREG WIGGINS:  YES, SIR.

15             THE COURT:  OKAY.  SO, IF I DON'T DENY

16   IT, THEN I WOULD BE SAYING I AM GOING TO OPEN UP

17   THE EVIDENCE NOW FOR WHOEVER TO SUBMIT WHATEVER

18   THEY WANT TO.  IF I DO DENY IT, THEN YOU WOULD

19   NEED TO FILE THOSE IN RESPONSE TO WHATEVER THEY

20   FILE LATER DOWN THE ROAD, IF THEY FILE SOMETHING,

21   OKAY?

22             MR. GREG WIGGINS:  YES, SIR.

23             THE COURT:  OKAY.  Y'ALL HAVE A GOOD

24   DAY.

25                  (COURT IN RECESS)

```
 1    ***************************************************

 2              C E R T I F I C A T E

 3    ***************************************************

 4    IN RE:  KNOTT V. DOLLAR TREE

 5    CASE #:  7:06-CV-1553-LSC

 6

 7         I HEREBY CERTIFY THAT THE FOREGOING

 8    TRANSCRIPT IN THE ABOVE-STYLED CAUSE IS

 9    TRUE AND ACCURATE.

10    _____     _____

11    LINDY M. FULLER, RMR, CRR, CBC        DATE

12    FEDERAL OFFICIAL COURT REPORTER

13    HUGO L. BLACK U.S. COURTHOUSE

14    1729 5TH AVENUE NORTH, SUITE 325

15    BIRMINGHAM, ALABAMA  35203

16

17

18

19

20

21

22

23

24

25
```