
FILED
2012 Sep-19  AM 11:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| SUSIE KNOTT, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 7:06-CV-1553-LSC |
| DOLLAR TREE STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| CHELSIE RICHARDSON, | ) | |
| CYNTHIA ANN COLLINS, | ) | |
| BERYL DAUZAT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 7:08-CV-693-LSC |
| | ) | |
| DOLLAR TREE STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

I.    Introduction

Plaintiffs, who worked at different Dollar Tree Stores throughout the country as store managers, filed the above actions pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., claiming that they were wrongfully classified as exempt and thus improperly denied overtime compensation. Pending before this Court

is the Renewed Motion to Decertify the Collective Action (Doc. 503)[1] filed by

Defendant, Dollar Tree Stores, Inc., ("Dollar Tree") as well as the responses thereto

filed by Plaintiffs. After due consideration, the Motion will be granted.

## II.    Background

Dollar Tree owns and operates more than 7,000 retail stores throughout the

United States. Dollar Tree's stores range in size from 4,000 square feet to more than

20,000 square feet. On August 8, 2006, the complaint in this matter was filed as a

collective action pursuant to 29 U.S.C. § 216(b), the FLSA's class action provision.

This Court initially granted class status to Plaintiffs[2] on April 12, 2007, and

simultaneously granted the motion to facilitate notice pursuant to section 216(b).

(Doc. 63.)

From the beginning, this case has proceeded through what can only be described

as a war between the parties over discovery. Regardless, the conflict seems to have

moderated when the Eleventh Circuit Court of Appeals denied Plaintiffs' petition for

a writ of mandamus to block this Court's order requiring them to turn over to Dollar

Tree certain communications between their attorneys and the opt-in Plaintiffs. (Doc.

---

[1] Unless otherwise noted, all document citations are to the lead case 2006-1553-LSC.

[2] Hereinafter, the opt-in class of plaintiffs will be referred to as the "opt-in Plaintiffs," and the collective group of all plaintiffs will be referred to as "Plaintiffs."

475.) These communications arguably demonstrate an effort by Plaintiffs' counsel to influence answers on special interrogatories ordered by this Court.[3] Dollar Tree filed a motion for sanctions against Plaintiffs (Doc. 468), based on what it described as Plaintiffs' efforts to " present false evidence that all Plaintiffs do manual labor and not managerial duties." (Doc. 480 at 7.) This Court denied Dollar Tree's motion for sanctions, pending the briefing of Dollar Tree's decertification motion, with leave to renew the motion following this Court's ruling on the motion to decertify.

Dollar Tree asserts in its present motion (Doc. 503), that the originally certified class is due to be decertified because the members of the class are not " similarly situated." Dollar Tree contends the evidence indicates dissimilar responsibilities and duties among the opt-in Plaintiffs and argues that it should not be forced to defend the current class action with and against representative evidence and testimony. Not surprisingly, Plaintiffs see the members of the present class as sufficiently similar in that they, for the most part, operate under a system of detailed upper management control with little discretion. Plaintiffs assert that Dollar Tree applies the same operational controls to every store regardless of size and because of limited labor budgets, forces all of its managers to spend substantially more than fifty percent of

---

[3]The purpose of which was to aid this Court in determining whether the opt-in Plaintiffs were "similarly situated."

their time performing manual labor. (Doc. 507.)

III.   Discussion

    A.    The Certification Standard

Section 216(b) provides that "[a]n action . . . may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees *similarly situated*." (emphasis added.)   Thus it is necessary, in order to maintain a collective action under the FLSA, for Plaintiffs to demonstrate that they are similarly situated. *Anderson v. Cagle's Inc.*, 488 F.3d 945, 952 (11th Cir. 2007).

There is no guidance in the FLSA for determining how similar a group of plaintiffs must be before a collective action may proceed, nor has the Eleventh Circuit precisely defined the term "similarly situated." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008). The Eleventh Circuit has, however, suggested a two-tiered approach to dealing with collective action certification and notice pursuant to § 216(b). *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001). When this Court addressed class certification "at the initial stage, [it] appl[ied] a 'fairly lenient standard' for determining whether the plaintiffs are truly similarly situated." *Anderson*, 488 F.3d at 953. At that stage, "plaintiff[s] ha[d] the burden of showing a 'reasonable basis' for [their] claim that there [were] other similarly situated employees." *Morgan*, 551 F.3d at 1260–61.

At the current stage, "triggered by an employer's motion for decertification . . . [the standard is] . . . less lenient, and the plaintiff[s] bear[] a heavier burden." *Id.* at 1261. The Eleventh Circuit has "refused to draw bright lines in defining *similarly*, but explained that as more *legally significant differences* appear amongst the opt-ins, the less likely it is that the group of employees is similarly situated." *Id.* (emphasis added). The Eleventh Circuit has also observed that "the 'ultimate decision rests largely within the district court's discretion,' and . . . in order to overcome the defendant's evidence, a plaintiff must rely on more than just 'allegations and affidavits.'" *Morgan*, 551 F.3d at 1261 (quoting *Anderson*, 488 F.3d at 953). Further, "although the FLSA does not require potential class members to hold identical positions . . . , the similarities necessary to maintain a collective action under § 216(b) must extend 'beyond the mere facts of job duties and pay provisions.'" *Anderson*, 488 F.3d at 953 (citing *White v. Osmose, Inc.,* 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002)). To properly address the issue, this Court must consider several factors, such as: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Morgan*, 551 F.3d at 1261 (hereinafter, these three factors will be referred to as the "*Morgan* analysis").

The three factors of the *Morgan* analysis are not mutually exclusive—there is

considerable overlap among them. Each factor directly influences the others. For example, the ability of Dollar Tree to assert its executive exemption defense depends on the experiences and job duties of each individual employee. Also, the more dissimilar Plaintiffs are and the more individuated Dollar Tree's executive exemption defense is, the greater doubts there are about the fairness of a ruling on the merits that is reached on the basis of purportedly representative evidence.

The executive exemption criteria set forth in the Department of Labor's regulations must be considered, as the executive exemption is a defense at issue in this case. The executive exemption, which applies to "any employee employed in a bona fide executive capacity," 29 U.S.C. § 213(a)(1), is an affirmative defense to the FLSA's requirement that employees be paid overtime hours at time and one-half the regular rate of pay. *Id.* § 207(a)(1); *Morgan*, 551 F.3d at 1265. "To establish an employee is a bona fide executive, an employer must show: (1) the employee is '[c]ompensated on a salary basis at a rate of not less than $455 per week'; (2) the employee's 'primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof'; (3) the employee 'customarily and regularly directs the work of two or more other employees'; and (4) the employee 'has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or

any other change of status of other employees are given particular weight.'" *Morgan*, 551 F.3d at 1266 (quoting 29 C.F.R. § 541.100(a)).[4]

Neither party substantively addresses whether all Plaintiffs are compensated on a salary basis at the requisite rate or whether all Plaintiffs customarily and regularly direct the work of two or more other employees; so, for the purposes of this opinion these two prongs are met as to each Plaintiff.[5] Therefore, the only elements where Plaintiffs must show substantial similarity are: (1) whether Plaintiffs' primary duty is management, and (2) whether Plaintiffs have the authority to hire or fire other employees or whether their suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight.

**B.    Application of *Morgan* Analysis**

**1.    Differences in Employment Experiences and Job Duties**

In order to examine the first factor of the *Morgan* analysis, the extent to which

_____

[4]Prior to this test for the executive exemption—effective August 23, 2004—there was no independent requirement that the employee have the authority to hire or fire other employees, or that the employee's recommendation be given particular weight. Instead, the "old regulations" "considered the selection of employees as a management task under the primary duty inquiry." *Morgan*, 551 F.3d at 1267 n.51.

[5]Such a finding would benefit Dollar Tree on the overall issue of whether the executive exemption applies, but would benefit Plaintiffs on the current issue of whether the opt-in Plaintiffs are "similarly situated" for purposes of section 216(b) certification.

Plaintiffs' relevant employment experiences and job duties as Dollar Tree employees were similar or disparate, a separate examination of both the "primary duty" and "authority to hire or fire" factors of the executive exemption test is necessary.

### i.    Primary Duty of Management

An employee's "primary duty" is "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphases on the character of the employee's job as a whole." *Id.* The regulations define "management" to include:

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

*Id.* § 541.102. The current regulations list several non-exclusive factors to consider in determining the primary duty of an employee, including: (1) "the relative importance of the exempt duties as compared with other types of duties;" (2) "the amount of time

spent performing exempt work;" (3) "the employee's relative freedom from direct supervision;" and (4) "and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.* § 541.700(a).[6]

The current regulations also note that "employees who spend more than [fifty] percent of their time performing exempt work will generally satisfy the primary duty requirement." *Id.* § 541.700(b). That is, they will generally be considered as exempt. It appears from the evidence submitted to the Court that a majority of the opt-ins who responded to discovery directed at the issue of their performance of "manual labor" may well have spent more than fifty percent of their time at work performing "manual labor" rather than "exempt work." (Doc. 505-3.)[7] If that were all that need be considered, this Court's opinion addressing the motion to decertify the existing class would be much more concise. Regrettably, it is not. "Employees who do not spend more than [fifty] percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." 29 C.F.R. § 541.700(b). "In other words, an employee's performance of nonexempt work does

---

[6]The old regulations included "the frequency with which the employee exercises discretionary powers." *Morgan*, 551 F.3d at 1268.

[7]This Court has not checked each evidentiary citation made by Plaintiffs in their chart but assumes that they are substantially accurate in noting the testimony.

not preclude the exemption if the employee's primary duty remains management." *Morgan*, 551 F.3d at 1268-69.

In addition, "[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of [executive employee status] are otherwise met." *Id.* § 541.106(a). "Whether an employee meets the requirements of [executive employee status] when the employee performs concurrent duties is determined on a case-by-case basis and based on the factors set forth in § 541.700." *Id.* In this case, many Plaintiffs have admitted to simultaneously performing exempt and nonexempt work. (Doc. 504 at 49-50.) Therefore, it would be impossible to determine whether Plaintiffs are "similarly situated" based solely on the fact that most, if not all of them, spent over fifty hours per week on nonexempt work. Rather, this Court must consider Plaintiffs individually, on a case by case basis, to see if they are truly "similarly situated."

In this case, Plaintiffs differ in the type and amount of work they performed in several ways. Some work in large stores with more associates to manage, while others work in smaller stores with less management needed and thus more time available to perform manual labor. (Doc. 504-20 at 18–19; Doc. 504-40 at 13; Doc. 504-49 at 13; Doc. 504-92 at 17.) A store's location may also contribute to differences among Plaintiffs. A store in a high-crime location may require Plaintiffs to spend more time

managing safety, securing the store, and protecting company assets (Doc. 504-71 at 47; Doc. 504-72 at 27–28.), while a store in a high-income location may require Plaintiffs to spend more time interviewing and training associates because of high turnover. (Doc. 504-85 at 11–12.)

Plaintiffs also differed in the type and amount of work they performed in several other respects.[8] First, their responsibilities for setting and adjusting the associates' rates of pay differed. Setting and adjusting an employee's rate of pay is defined as "management" by the regulations. 29 C.F.R. § 541.102. Some Plaintiffs' recommendations for pay raises were frequently or almost always followed. (Doc. 504-85 at 34; Doc. 504-72 at 54–56; Doc. 504-54 at 17; Doc. 504-55 at 40–41; Doc. 504-31 at 43; Doc. 504-27 at 65–66.) Other Plaintiffs' recommendations were rarely or never followed, or recommendations were never made. (Doc. 504-19 at 74-75; Doc. 504-51 at 62; Doc. 504-88 at 70; Doc. 504-50 at 39; Doc. 504-87 at 43; Doc. 504-23 at 72; Doc. 504-30 at 74.)

Second, Plaintiffs' authority to discipline other employees varied. Disciplining employees is also defined as "management" by the regulations. 29 C.F.R. § 541.102. Some Plaintiffs could issue a variety of written discipline to all types of associates.

---

[8]For the sake of brevity, this Court does not list each example of or citation to a named difference in Plaintiffs' circumstances. Those listed sufficiently demonstrate the substantial variations.

(Doc. 504-50 at 23; Doc. 504-42 at 46; Doc. 504-93 at 32–33; Doc. 504-61 at 52; Doc. 504-48 at 43; Doc. 504-81 at 18.) Others had little control over disciplinary action. (Doc. 504-55 at 12; Doc. 504-76 at 33–35; Doc. 504-90 at 27–28; Doc. 504-58 at 27; Doc. 504-43 at 43–45; Doc. 504-89 at 52.)

Third, Plaintiffs were vested with varying degrees of authority regarding associate performance evaluations, another exempt "management" activity. 29 C.F.R. § 541.102. Some Plaintiffs performed evaluations with little or no district manager input. (Doc. 504-18 at 57-58; Doc. 504-42 at 41; Doc. 504-45 at 40–41; Doc. 504-67 at 26, 38; Doc. 504-88 at 31; Doc. 504-93 at 29, 41.) Others had constant input and assistance from district managers, never performed evaluations, or performed very few. (Doc. 504-61 at 39; Doc. 504-37 at 20; Doc. 504-30 at 53-54; Doc. 504-59 at 20; Doc. 504-20 at 55–56.)

Fourth, the amount of time Plaintiffs spent training associates varies. Training employees is defined as "management" according to the regulations. 29 C.F.R. § 541.102. While several testified that they were responsible for training associates (Doc. 504-37 at 16; Doc. 504-20 at 30; Doc. 504-81 at 18; Doc. 504-87 at 53), many never trained associates or delegated their duty and spent very little time training. (Doc. 504-43 at 24; Doc. 504-27 at 84; Doc. 504-18 at 22–23; Doc. 504-94 at 34, 49; Doc. 504-78 at 47.) In contrast, others spent a significant amount of time training associates. (Doc.

504-5 at 111–12; Doc. 504-31 at 47–48; Doc. 504-34 at 24–25; Doc. 504-93 at 44; Doc. 504-35 at 55, 63.)

Fifth, the amount of time Plaintiffs spent directing the work of store associates varies. Directing the work of employees is another "management" activity. 29 C.F.R. § 541.102. Some Plaintiffs spent a significant amount of time performing this exempt duty. (Doc. 504-4 at 27; Doc. 504-50 at 41,45; Doc. 504-5 at 102, 111.) Others spent very little time or never directed the work of store associates. (Doc. 504-22 at 23-24; Doc. 504-46 at 23-24; Doc. 504-88 at 35; Doc. 504-51 at 89; Doc. 504-5 at 42; Doc. 504-43 at 50–51.)

Sixth, some Plaintiffs spent significantly more time processing reports related to store sales, personnel, and operations than others. Maintaining production or sales records for use in supervision or control is defined as "management" by the regulations. 29 C.F.R. § 541.102. Some processed reports every day, or spent a significant amount of time doing so (Doc. 504-93 at 20, 45; Doc. 504-3 at 20; Doc. 504-4 at 27; Doc. 504-5 at 33.), while others spent very little time processing reports or never did so. (Doc. 504-5 at 14, 111; Doc. 504-3 at 37, 80; Doc. 504-22 at 28.)

Seventh, Plaintiffs spent different amounts of time managing safety, securing the store, and protecting company assets. "[P]roviding for the safety and security of the employees or the property" is a management duty according to the current

regulations. 29 C.F.R. § 541.102. Some of them spent a significant amount of time performing these duties. (Doc. 540-5 at 24, 102; Doc. 540-4 at 27, 63, 115; Doc. 540-93 at 29; Doc. 504-50 at 38–39; Doc. 504-36 at 21.) Others were too busy performing other tasks to spend any time managing safety, securing the store, or protecting company assets. (Doc. 504-61 at 41; Doc. 504-55 at 42; Doc. 504-52 at 76, 90; Doc. 504-31 at 44.)

While the differences in the amount of time spent on any individual act of "management," such as training associates, might not seem material, these differences as a whole could ultimately lead to differing conclusions as to each employee's "primary duty." Furthermore, even if every Plaintiff spent a similar amount of time performing "management" duties as a whole, the relative importance of the different types of exempt work performed may also lead to differing "primary duty" determinations. If each Plaintiffs' claims were tried separately, the primary duty of some would no doubt be found to be management, while the primary duty of others would not. Thus, this factor in the *Morgan* analysis tends to show that Plaintiffs are not similarly situated regarding their primary duty.

### ii. Authority to Hire or Fire or Recommendations given Particular Weight

In this case, Plaintiffs' authority to hire employees varied. Some hired associates

unilaterally (Doc. 504-59 at 21-24; Doc. 504-67 at 56-57; Doc. 504-1 at 7.), while others simply made recommendations. (Doc. 504-1 at 9.) There are some who neither hired associates nor made recommendations. (Doc. 504-56 at 17.) In addition, their authority to fire employees also varied. Some could terminate an associate without a district manager's approval (Doc. 504-1 at 17.), and others could only make termination recommendations. (Doc. 504-1 at 15-16.)

Even though the authority vested in Plaintiffs to hire or fire associates differs among members of this class, the *Morgan* analysis may still favor a finding that the class is similarly situated if their recommendations were all given " particular weight." 29 C.F.R. § 541.100(a). The current regulations list several non-exclusive factors to consider in determining whether an employee's suggestions and recommendations are given "particular weight," including: (1) "whether it is part of the employee's job duties to make such suggestions and recommendations;" (2) "the frequency with which such suggestions and recommendations are made or requested;" and (3) "the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. The regulations go on to note that "[a]n employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." *Id.*

These factors tend to show dissimilarity among Plaintiffs regarding the weight their recommendations were given. For example, the frequency that each of them made recommendations varies, as does the frequency that those recommendations were relied upon. For example, for many Plaintiffs, their recommendations were always accepted. (Doc. 504-20 at 37; Doc. 504-24 at 28, 29; Doc. 504-26 at 44–45; Doc. 504-47 at 35; Doc. 504-89 at 23.) The recommendations of many others were usually accepted. (Doc. 504-50 at 31; Doc. 504-36 at 29; Doc. 504-93 at 39, 40; Doc. 504-23 at 24–25; Doc. 504-27 at 22, 64; Doc. 504-40 at 41.) Some of them stated that their recommendations were only occasionally accepted. (Doc. 504-88 at 26–27; Doc. 504-70 at 72; Doc. 504-18 at 15; Doc. 504-19 at 14; Doc. 504-35 at 16; Doc. 504-45 at 19–20, 16.) Finally, a few of them related that their recommendations were rarely accepted. (Doc. 504-48 at 9–10; Doc. 504-66 at 19–20; Doc. 504-63 at 36.)

These differences in the frequency with which recommendations were made and accepted could ultimately lead to differing conclusions as to whether an employee's recommendations were given "particular weight." If each Plaintiffs' claims were tried separately, the recommendations of some would be found to be given particular weight, while the recommendations of others would not. Thus, this factor of the *Morgan* analysis tends to show that Plaintiffs are not similarly situated regarding their ability to hire or fire, or regarding the weight given to their recommendations.

2.  Extent Dollar Tree can assert its executive exemption defense
    on a collective or individual basis

The Court now turns its attention to the second factor of the *Morgan* analysis,

whether there are defenses individual to each Plaintiff. While "applying the executive

exemption is 'an inherently fact-based inquiry' that depends on the many details of the

particular job duties and actual work performed by the employee seeking overtime

pay," this "does not preclude a collective action where plaintiffs share common job

traits." *Morgan*, 551 F.3d at 1263 (quoting *Rodriguez v. Farm Stores Grocery, Inc.*, 518

F.3d 1259, 1263 (11th Cir. 2008)).

Plaintiffs argue that this case is similar to *Morgan* because there is "scant

evidence to support [the] argument" that "the duties of store managers varied

significantly depending on the store's size, sales volume, region, and district." (Doc.

507 at 16; *Morgan*, 551 F.3d at 1263.) Plaintiffs further argue that Dollar Tree operates

under a policy of "classify[ing] all General Managers as exempt, regardless of their

store size, location, salary, or any other factor," similar to the defendant in *Morgan*,

and these facts "weigh heavily in favor of a finding of similarly situated." (Doc. 507

at 14.) However, *Morgan* was not decided solely on the defendant's classification of its

employees. Rather, "[g]iven the volume of evidence showing the [plaintiffs] were

similarly situated, and the fact that [the defendant] applied the executive exemption

across-the-board to every store manager–no matter the size, region, or sales volume of the store" the defendant did not show " clear error in the district court's finding that its defenses were not so individually tailored to each [p]laintiff as to make [the] collective action unwarranted or unmanageable." *Morgan*, 551 F.3d at 1263. In that case, the Eleventh Circuit determined that the district court did not abuse its discretion when it determined that a § 216(b) class of plaintiffs was similarly situated based on several findings of similarity.[9] This case is different for two reasons.

First, there is not an abundance of evidence in this case showing that Plaintiffs are similarly situated. On the contrary, the other evidence, specifically the depositions and special interrogatories, tends to show substantial differences between the multiple

---

[9]Specifically, the district court found that opt-in plaintiffs were similar in a number of respects, including:

(1) their universal classification as store managers with the same job duties; (2) the small fraction of time they spent on managerial duties; (3) the large amount of time they spent on non-managerial duties such as stocking shelves, running the cash registers, unloading trucks, and performing janitorial work; (4) the restrictions on their power to manage stores as compared to the district manager's sweeping managerial discretion; (5) the amount of close district manager supervision of store managers; (6) the lack of managerial discretion that Family Dollar corporate policies afforded to store managers; (7) their day-to-day responsibilities; (8) their receiving base salaries regardless of the hours worked and no overtime pay; (9) their sharing certain managerial duties with hourly employees; (10) their maintaining production and sales records; (11) their inability to authorize pay raises; (12) their power to train subordinates; (13) their restricted authority to close stores in the event of emergencies; and (14) their inability to select outside vendors without district manager approval.

*Id.* at 1262-63.

Plaintiffs' job duties and the potential importance of those duties. (*See supra* Part III.B.1.) Some Plaintiffs were given significant authority and autonomy to run their stores, while others could essentially be described as shelf-stockers. To make a ruling based on the representative testimony of some Plaintiffs—specifically those with less authority and autonomy to run their store—would be unfair to Dollar Tree.[10]

Second, in affirming the district court's decision, the Eleventh Circuit in *Morgan* was simply deciding that the district court had not abused its discretion by finding the multiple plaintiffs similarly situated. It does not necessarily follow that a contrary ruling would have been an abuse of the district court's discretion. This argument is exceedingly persuasive in the case at hand given the abundance of evidence showing that Plaintiffs are not similarly situated.

While Dollar Tree applied its executive exemption across-the-board, the defense is individuated in this case as Plaintiffs' job duties and employment experiences vary dramatically. Although some may have performed uniform tasks mandated by a corporate manual, others routinely exercised their independent judgment and the amount of time they spent performing managerial duties is a matter of individual

---

[10]Dollar Tree also argues that the opt-in Plaintiffs' due process rights would be violated if this Court rules in favor of Dollar Tree based on representative testimony of some of those opt-in Plaintiffs. This is not a concern, however, as they must "opt-in" in order to assert their rights, unlike an "opt-out" class action where a plaintiff class member must affirmatively act to be excluded from the outcome.

inquiry. Furthermore, Dollar Tree may be able to apply the exemption to different Plaintiffs based on different circumstances. Even if every Plaintiff spent similar amounts of time performing exempt job duties as a whole, because they performed a wide array of differing exempt job duties with varying degrees of importance, one group of them cannot reasonably be said to be representative of them all. Thus, a one-size-fits-all determination is impossible. For these reasons, the second factor of the *Morgan* analysis tends to show that Plaintiffs are not similarly situated.

### 3.    Fairness and Procedural Concerns

Finally, the Court turns to the third factor of the *Morgan* analysis, whether it would be just to collectively and finally adjudicate Plaintiffs' claims on the representative evidence before the Court. This determination is made in light of the purposes of FLSA class actions: " (1) reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issues of law and fact that arise from the same illegal conduct." *Morgan*, 551 F.3d at 1264.

A collective action in this case would certainly reduce the burden on Plaintiffs, as they would not be forced to adjudicate their respective claims in multiple different courts. Furthermore, " [t]here is nothing inherently unfair about collectively litigating an affirmative executive-exemption defense [if a court makes] well-supported and detailed findings with respect to similarity." *Morgan*, 551 F.3d at 1264. This Court,

however, is unable to make such findings here. While the executive-exemption defense is common among all Plaintiffs, there is an abundance of evidence concerning their differences. Because it is an extensively fact-based inquiry, these differences directly affect an assessment of the executive-exemption for each individual Plaintiff. It would be fundamentally unfair to Dollar Tree if the class were to remain certified. The efficiency gained by holding one trial as opposed to many cannot be obtained at the expense of Dollar Tree's due process rights.

VI.    Conclusion.

For the reasons set forth above, Dollar Tree's Renewed Motion to Decertify the Collective Action will be granted. A separate order will be entered.

Done this 19th day of September 2012.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

171032