FILED
2013 Apr-19  AM 10:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **SUSIE KNOTT, et al.,** | |
| **Plaintiffs,** | **CIVIL ACTION NO.** |
| **v.** | **7:06-cv-01553-LSC** |
| **DOLLAR TREE STORES, INC.,** | |
| **Defendant.** | |
| **CHELSIE RICHARDSON, CYNTHIA ANN COLLINS, BERYL DAUZAT,** | **CIVIL ACTION NO.** |
| **Plaintiffs,** | **7:08-cv-00693-LSC** |
| **v.** | **OPPOSED** |
| **DOLLAR TREE STORES, INC.,** | **ORAL ARGUMENT** |
| **Defendant.** | **REQUESTED** |

## DEFENDANT DOLLAR TREE STORES, INC.'S
## REPLY BRIEF IN SUPPORT OF ITS RENEWED MOTION FOR
## ATTORNEYS' FEES AND COSTS AS A SANCTION

Barbara B. Brown, Esq.
Kenneth M. Willner, Esq.
Carson H. Sullivan, Esq.
PAUL HASTINGS LLP
875 15th Street, NW
Washington, D.C. 20005

Terry Price, Esq.
LAW OFFICE OF TERRY PRICE LLC
One Chase Corporate Center
Suite 400
Birmingham, Alabama 35244

ATTORNEYS FOR DEFENDANT
DOLLAR TREE STORES, INC.

# TABLE OF CONTENTS

Page

I.  PLAINTIFFS' ASSERTIONS ABOUT THEIR SECOND INTERROGATORY RESPONSES ARE NO MORE GENUINE THAN THE INTERROGATORY RESPONSES THEMSELVES ...............1

    A.  Plaintiffs' Second Answers Were Not Based on Calls to "Each and Every Plaintiff." .......................................................................1

    B.  Zink's Testimony Was Not About The First Responses .....................5

    C.  The Court Told Plaintiffs to Get Handwritten Answers Long Before December 15, 2010 ................................................................6

    D.  Plaintiffs Ignore The Record And Make Conclusory and False Statements ........................................................................................7

II. NOTHING SUPPORTS PLAINTIFFS' REQUEST THAT THE COURT IGNORE THE FIRST BOILERPLATE ANSWERS .....................8

III. PLAINTIFFS' COUNSEL DISCOURAGED PLAINTIFFS FROM ANSWERING INTERROGATORY NOS. 1-9 .............................................9

IV. PLAINTIFFS REFUSED TO PRODUCE JUVE'S RESUME ...................10

V.  PLAINTIFFS' COUNSEL FAILS TO JUSTIFY COACHING WITNESSES DURING DEPOSITIONS ........................................................11

VI. PLAINTIFFS ATTEMPT TO DISTRACT THE COURT WITH VITUPERATION AND FALSE ALLEGATIONS .....................................14

VII. THIS MOTION IS TIMELY ......................................................................15

VIII. CONCLUSION ..........................................................................................16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<small>C<small>ASES</small></small>

*Baker v. Alderman*,
    158 F.3d 516 (11th Cir. 1998) ............................................................16

*Damaj v. Farmers Ins. Co.*,
    164 F.R.D. 559 (N.D. Okla. 1995) ..................................................11

*Cooter & Gell v. Hartmax Corp.*,
    496 U.S. 384 (1990)..........................................................................15

*Cotton v. Mass. Mut. Life Ins. Co.*,
    No. 1:98-CV-2607, 2006 U.S. Dist. LEXIS 100639 (N.D. Ga. Feb. 9,
    2006) ....................................................................................................16

*Didie v. Howes*,
    988 F.2d 1097 (11th Cir. 1993) ........................................................16

*Evans v. Connecticut*,
    967 F. Supp. 673 (D. Conn. 1997), *aff'd in part*, 24 F. App'x 35 (2d Cir.
    2001) ....................................................................................................16

*Federated Mut. Ins. Co. v. McKinnon Motors*,
    329 F.3d 805 (11th Cir. 2003) ..........................................................16

*Heinrichs v. Marshall & Stevens Inc.*,
    921 F.2d 418 (2d Cir. 1990) .............................................................16

*Johnson v. Cleveland Heights/University Heights School*,
    No. 94-3523, 1995 U.S. App. LEXIS 32102 (6th Cir. Sept. 6, 1995) ..............16

*Mahone v. Ray*,
    326 F.3d 1176 (11th Cir. 2003) ........................................................16

*Sure Fill & Seal, Inc. v. GFF, Inc.*,
    No. 8:08-cv-882, 2010 U.S. Dist. LEXIS 78906 (M.D. Fla. Aug. 6,
    2010), *aff'd,* 411 F. App'x 267 (11th Cir. 2011)................................16

## <u>TABLE OF AUTHORITIES</u>
(continued)

**Page(s)**

*SynQor, Inc. v. Artesyn Techs., Inc.*,
   No. 2:07-CV-497, 2011 U.S. Dist. LEXIS 75730 (E.D. Tex. July 11,
   2011), *aff'd,* 2013 U.S. App. LEXIS 5051 (Fed. Cir. Mar. 13, 2013) ..............16

*Thomas v. Early County*,
   360 F. App'x 71 (11th Cir. 2010) ......................................................................16

**R**ULES

Fed. R. Civ. P.
   11......................................................................................................................16
   30(c)(2) ............................................................................................................11
   37......................................................................................................................16
   54(d)(2)(B) .......................................................................................................16

Plaintiffs' counsel is unrepentant, neither acknowledging any inappropriate conduct nor giving any sign of learning to avoid future misconduct.  Instead, Plaintiffs' counsel offers glib prevarications and lobs baseless invective at Dollar Tree's counsel.  Plaintiffs' Opposition merely underscores the need for a sanction.

I.   **PLAINTIFFS' ASSERTIONS ABOUT THEIR SECOND INTERROGATORY RESPONSES ARE NO MORE GENUINE THAN THE INTERROGATORY RESPONSES THEMSELVES.**

Plaintiffs' argument about their second boilerplate answers relies only on inaccurate statements, as set forth below.

A.   **Plaintiffs' Second Answers Were Not Based on Calls to "Each and Every Plaintiff."**

At the heart of Plaintiffs' argument is the demonstrably incorrect statement that a paralegal, Nancy Porter, called "each and every" Plaintiff and got individualized answers from each one, and those were used in the second responses:

> [Porter] spent hours calling each and every Plaintiff.  Upon reaching the plaintiffs, she went over the each [sic] interrogatory with the plaintiff, recorded their responses, went back over their responses with each plaintiff to ensure their accuracy, and then instructed each plaintiff to mail back their verification pages.

Doc. 593 at 5.  That statement is false.  First, far from basing "each and every" plaintiff's answer on Ms. Porter's calls, ***Plaintiffs submitted second interrogatory answers for at least 129 plaintiffs with whom Ms. Porter admits she never actually had a substantive conversation***.  For example, Ms. Porter testified she

spent only 6.27 minutes *trying* to call Wendy McComb, of which *zero minutes were "Actual conversation*." Doc. 486, Ex. 1 ¶ 12. According to Ms. Porter all of her calls to Ms. McComb were mere "contact calls" trying – unsuccessfully – to reach her to set up an actual conversation. *Id.* Thus, Plaintiffs' counsel had *no actual input from Ms. McComb* for the answers submitted in her name. Plaintiffs' counsel nevertheless put Ms. McComb's name on the same answers they used with Robert Rex Miller, including his store numbers, and slapped a verification for Ms. McComb on them. *See* Doc. 480, Ex. 2, pt. 9 to Def.'s Rev. Sanct. Br. at 80-88 (McComb's typed responses). A review of the telephone records accompanying Ms. Porter's declaration shows *no fewer than 129 telephone numbers that Ms. Porter never called for more than 90 seconds on any call*. This shows that there are at least 129 other such plaintiffs with whom Ms. Porter never had an "actual conversation." *See* Doc. 486, Ex. 1.

Second, even for those other plaintiffs to whom Ms. Porter did speak at all, Plaintiffs' counsel ignored their input, if any, and used canned responses instead:

- Many of the calls with the plaintiffs with whom Ms. Porter spoke at all were far too short to get individualized information much less to write the responses during the call. Doc. 486, Ex. 1 ¶ 6. For example, *Ms. Porter admittedly spent only six minutes in actual conversation with Dan Reynolds*. *Id.* It is preposterous to suggest that she "went over each interrogatory …, recorded their responses, went back over their responses to ensure their accuracy" in six minutes. Doc. 593 at 5.

- Plaintiffs' deposition testimony differs dramatically from the boilerplate answers by Plaintiffs' counsel, purportedly based on telephone input to Ms. Porter, e.g.:

  o Bernard Zink testified that he hired about 40 employees at the opening of a store and at other times hired hourly workers; in contrast, Plaintiffs' counsel responded on his behalf in the second answers that he "could not hire."  Likewise, he admitted in deposition that he was "responsible for all day-to-day operations all the time," even though Plaintiffs' counsel claimed in the second responses in his name that he was not.  Zink testified that in his small store, he was "constantly" training; Plaintiffs' counsel's second response for him stated training was not a weekly occurrence.  Doc. 480, Ex. 3, Zink Dep. at 207:13-19; 242:11-15; 264:16-23.  *See also* Doc. 480, Def.'s Rev. Sanct. Br. at 26-60.

  o Chuck Wojciechowski testified that he was held responsible for store performance and all that occurred in the store, but in the second responses, Plaintiffs' counsel put him down for "Not 'responsible.'"  Likewise, he testified he secured store assets "at all times," not for "seconds at a time," as Plaintiffs' counsel wrote in the second responses.  Doc. 480, Ex. 19, Wojciechowski Dep. at 108:14-19, 109:15-17; 110:12-17.

- The second answers Plaintiffs' counsel submitted also differ dramatically from the Plaintiffs' own handwritten answers:

  o Pam Szybka's handwritten answers say she is responsible for the store 65 hours per week, but Plaintiffs' counsel said in the second answers, "not responsible."  Ms. Szybka says in hand-written answers she spent 1½-3 hours per week cleaning, sweeping, and recovering, but the second answers said 10-15.  While Ms. Szybka said in handwritten answers that unloading trucks and stocking took 9-11 hours per week at one store and 10-12 at another, the second answers asserted 30-35 and 35-40.  *Compare* Doc. 480, Ex. 1, pt. 3 to Def.'s Rev. Sanct. Br. at 36-44 (Szybka's handwritten responses) *with Id.,* Ex. 2, pt. 14 to Def.'s Rev. Sanct. Br. at 91-100 (Szybka's typed responses).

  o Although Steven Michael says he spent 35 hours per week concurrently doing manual and managerial tasks in his handwritten answers, Plaintiffs' counsel reduced the figure to 1½-2 hpw in the second answers.  Protecting store assets took 12 hours per week according to Michael's

handwritten answers, but Ms. Porter said it took only 3.  *Compare* Doc. 480, Ex. 1, pt. 2 to Def.'s Rev. Sanct. Br. at 109-117 (Michael's handwritten responses) *with* Ex. 2, pt. 9 to Def.'s Rev. Sanct. Br. at 109-117 (Michael's typed responses).

o  *See* Doc. 480, Def.'s Rev. Sanct. Br. at 24-32, 39-54 (other examples).

Plaintiffs call "preposterous" and "scurrilous" Dollar Tree's statement that if Plaintiffs' counsel ***actually*** had called each Plaintiff and based individual answers on those calls, ***there would be correspondence between Plaintiffs' counsel and the plaintiffs, reflecting drafts sent to Plaintiffs and returned with comments***. Doc. 593 at 5.  Plaintiffs conclude, "DT has absolutely no evidence to support such accusations."  *Id*.  Yet, Plaintiffs' counsel apparently forgot that they expressly admitted, in writing, that they never exchanged any such drafts with the plaintiffs; Plaintiffs' counsel said:  ***"there were no drafts created and/or exchanged between plaintiffs and their counsel."***  Doc. 487 at 68 (emphasis added).  Indeed, if any such drafts had existed, Plaintiffs would have had to produce them to Dollar Tree under the Court's orders – and they did not produce any at all.

Plaintiffs conclude this part of their argument by stating, "[f]or the defendant to even insinuate that plaintiffs' counsel did not call each and every plaintiff, based solely on nothing more than conjecture and its own biased personal opinion, is incredulous [sic] at best."  Doc. 593 at 5.  That flies in the face of the copious evidence showing just the opposite, including Ms. Porter's declaration and telephone records showing that she had no meaningful contact with 129 plaintiffs

and little contact with many others, and the evidence that the second answers bear

no relation to Plaintiffs' actual input as evidenced by their deposition testimony

and handwritten answers.  Plaintiffs' counsel may ignore the evidence, but the

Court will not.

### B.   Zink's Testimony Was Not About The First Responses.

Plaintiffs also falsely state that "[t]he testimony DT relies on (he [Zink] did

not know where the information came from) dealt with the '*first*' set of

interrogatories and had absolutely nothing to do with Zink's answers to the second

interrogatories."  Doc. 593 at 4 (emphasis in original) (noting that Dollar Tree

relied on Zink Dep. at 253:8-22, 254:1-259:7).  Plaintiffs' statement is false;

indeed, both of the cited testimony excerpts ***expressly*** referred to the ***second***

responses, dated November 14, 2010,[1] which were ***Exhibit 9*** to Zink's deposition.

The first excerpt was:

> Q. (BY MR. WILLNER:) So you don't know where plaintiff's counsel
> came up with 25 to 30, 30 to 35, or 25 to 30 in the answer to
> interrogatory number 2 ***in Exhibit 9***; right?  [objection omitted]
> A. I don't know how she came up with that, he or she.
> Q. (BY MR. WILLNER:) All you know is that that information did
> not come from you; right?  [objection omitted].
> A. Yes.

---

[1] All of the first responses, including Zink's, are dated in August or early September 2010,
before the Court's Sept. 22, 2010 hearing directing the second interrogatories.

Doc. 480, Ex. 3, Zink Dep. 253:8-22 (emphasis added).  Likewise, the second cited

testimony excerpt, also expressly and repeatedly refers to the **second** responses,

deposition **Exhibit 9**:

> Q. And you don't know where the information and the answer to
> interrogatory number 3 **in Exhibit 9** came from; right?  [objection
> omitted]
> A. No, I do not.
> Q. (BY MR. WILLNER:) Except you do know it did not come from
> you; right?  [objection omitted].
> A. Now, to -- no.
> Q. (BY MR. WILLNER:) No, it did not come from you?
> A. No, it did not come from me.

*Id.,* Zink Dep. at 254:9-23; *see also id*. at 254:1-8, 255:1-259:7 (Zink does not

know where the answers in deposition Exhibit 9 came from, but not based on

information from him).  A copy of Zink deposition Exhibit 9, showing it is Zink's

second responses, is attached hereto as Exhibit A.  Plaintiffs' counsel's statement

to the Court that this testimony refers to the first responses, not the second

responses, is as false as the boilerplate interrogatory answers.

## C.   The Court Told Plaintiffs to Get Handwritten Answers Long Before December 15, 2010.

Equally false is Plaintiffs' attempt to excuse their suppression of handwritten

answers on the ground that the Court first directed handwritten answers on

December 15, 2010, "some *2 months after* Plaintiffs' counsel had sent the second

interrogatories to the plaintiffs," Doc. 593 at 3 (emphasis in original), citing one of

the hearing transcript excerpts cited by Dollar Tree, dated December 15, 2010.  On

the contrary, as Plaintiffs later admit, the Court directed them to get handwritten answers "on September 24, 2010. . . ," Doc. 593 at 7,[2] and the Court's comments on December 15, 2010 expressly refer to the ***prior*** instructions.  *See* Doc. 446, Hr'g Tr. at 19:23-20:14, Dec. 15, 2010 ("I wanted them to hand write in the blanks and I think I made that clear last time. . . .").  Plaintiffs' counsel was well aware of the instructions with respect to the second answers but refused to comply.

### D.    Plaintiffs Ignore The Record And Make Conclusory and False Statements.

Plaintiffs glibly represent to the Court that "[e]ach plaintiff provided DT with their own individualized responses.  Other than DT's pure speculation, there is no evidence that would remotely support an argument to the contrary."  Doc. 593 at 6.  That of course is the opposite of the record.  Not matter how much Plaintiffs wish to ignore it, the evidence shows, as set forth in Dollar Tree's opening brief and herein:

- Plaintiffs' first answers were all boilerplate, identical word-for-word except for the answer to Interrogatory No. 10.

- Plaintiffs' second answers were boilerplate of a slightly more sophisticated variety, employing several forms of identical or nearly identical words.

- Plaintiffs' second answers show all the signs of mass copying of boilerplate, such as errors in removing the names and store numbers of the person whose answers were copied.

---

[2] Even that is inaccurate, as the Court first directed that Plaintiffs get handwritten answers during a telephone conference in August 2010, which was not transcribed.

- Plaintiffs' own evidence shows that 129 of the plaintiffs never had a substantive conversation in support of the second answers and others had only *de minimis* conversations.

- Plaintiffs, such as Mr. Zink, testified that the information in the answers did not come from them and they do not know where it came from.

- Plaintiffs' first and second boilerplate answers differ radically from the answers they gave in handwritten answers and in depositions.

The Court of course cannot accept Plaintiffs' invitation to ignore the record.

## II. NOTHING SUPPORTS PLAINTIFFS' REQUEST THAT THE COURT IGNORE THE FIRST BOILERPLATE ANSWERS.

Plaintiffs even ask the Court to ignore their first boilerplate answers, on the ground that the Court has already found those answers to be improper. Doc. 593 at 2-3. That makes no sense. The initial boilerplate answers are part of a course of conduct that started with those answers and continued with the second boilerplate answers and Plaintiffs' counsel's efforts to conceal the falsity of the answers. Plaintiffs' and their counsel's continuation of that course of conduct *in spite of the Court's prior finding that it was improper* reinforces the need for a sanction.

Plaintiffs offer no authority to support the proposition that the Court should ignore their conduct based on the October 15, 2010 Order. Indeed, the Court's decision in the October 15, 2010 Order was premised on Plaintiffs' compliance with the terms of that Order, requiring them "to provide complete and individual answers to interrogatories . . . and respond fully and honestly to every question asked by Defendant." Doc. 423 at 12-13. The Court explicitly warned that failure

to comply with the Order may result in additional sanctions, even "dismissal with prejudice." Doc. 423 at 13. Plaintiffs nevertheless violated this Order by serving boilerplate second answers that were anything but "individual," "complete," "full" and "honest." Having expressly reserved the right to sanction such a violation with dismissal, the Court of course has the authority to impose a lesser sanction of attorneys' fees and costs to alleviate the cost to Dollar Tree of their conduct.

## III.   PLAINTIFFS' COUNSEL DISCOURAGED PLAINTIFFS FROM ANSWERING INTERROGATORY NOS. 1-9.

Plaintiffs boldly assert that "Plaintiffs' counsel never discouraged the plaintiffs from answering interrogatory Nos. 1-9. There is no conceivable way one could take plaintiffs' counsel's letter of August 6, 2010 as a letter which 'discouraged' Plaintiffs from answering interrogatory Nos. 1-9." Doc. 593 at 8. They garnish those statements with the assertion that "DT's argument is based on nothing but its wild imagination." *Id*. at 8. Plaintiffs again ignore the record. First, the language of the letter itself explicitly invites opt-in plaintiffs not to respond to those interrogatories. *See* Doc. 480 at 8 & Ex. 7. Second, multiple opt-in plaintiffs testified that that ***they understood Plaintiff's counsel's instruction to mean they should answer only No. 10***. *See* Doc. 480 at 13-14 & Ex. 15 at 27:23-28:7, 42:3-12, 44:21-45:1; Doc. 480, Ex. 16 at 274:2-6, 278:3-11; Doc. 480, Ex. 17 at 199:10-12, 203:22-204:8. And third, ***over 157 out of the at least 189 plaintiffs***

***who submitted handwritten answers at all complied with the instruction by***

***submitting handwritten answers to only No. 10***.  Doc. 480, Ex. 31.

In the face of this evidence, Plaintiffs' counsel goes so far as to ask the

Court to believe that those Plaintiffs who testified in deposition that it was their

own idea to answer only Interrogatory No. 10, were telling the truth.  Doc. 593 at

9-10.  Apparently, Plaintiffs' counsel expects the Court to believe that it was just a

***coincidence*** that 157 out of 189 plaintiffs all answered only Interrogatory No. 10.

## IV.   <u>PLAINTIFFS REFUSED TO PRODUCE JUVE'S RESUME.</u>

Another false representation in Plaintiffs' brief is the statement to the Court:

"Plaintiff [Juve] never refused to produce her resume. . ."  Doc. 593 at 12.  On the

contrary, after Juve testified that she had a resume on her computer and could

access it remotely and produce it, and Dollar Tree's counsel suggested that the

parties take a break so she could retrieve it during the deposition, Plaintiffs'

counsel flatly refused:

> MR. WILLNER: My suggestion is going to be that at 10:00 o'clock
> while we're on the phone with the Court, Ms. Juve can try to access
> her computer to try to get access to these prior resumes. But this is
> significant evidence in this case and we believe that we should be able
> to have it for this deposition.

> MR. WIGGINS: We're not allowing anybody to try and access her
> computer during this deposition.

Doc. 480, Ex. 54, Juve Dep. at 24:8-18.  Only after a discussion with the Court did

Juve access the computer and produce the resume.

- 10 -

## V.   PLAINTIFFS' COUNSEL FAILS TO JUSTIFY COACHING WITNESSES DURING DEPOSITIONS.

Plaintiffs' counsel even tries to justify the obvious coaching of witnesses, arguing that his use of speaking objections, telling a plaintiff what to say during depositions, is appropriate because, he says, "DT's counsel was attempting to put words in the plaintiff's mouth."  Doc. 593 at 14.  Plaintiffs' counsel suggests, in other words, that he is free to suggest answers to a witness whenever an opposing party asks a leading question.  Plaintiffs offer no authority in support of this proposition, which is not surprising since it is the opposite of the applicable law.  Rule 30(c)(2) of the Federal Rules of Civil Procedure provides that "An objection must be stated concisely in a nonargumentative and nonsuggestive manner."  Fed. R. Civ. P. 30(c)(2).  The Rule does not include an exception allowing suggestive objections in the case of leading questions.  Indeed, since leading questions are the norm in depositions, such an exception would swallow the rule.  *Cf. Damaj v. Farmers Ins. Co.*, 164 F.R.D. 559, 560-61 (N.D. Okla. 1995) (prohibiting suggestive objections despite argument that objection was an attempt to assist opposing counsel so that a more appropriate question could be asked).

In their Exhibit A, Plaintiffs quote part of the testimony of Plaintiff Rob Greer in an attempt to bolster the argument that his counsel's suggestive objections were not improper.  What Plaintiffs' counsel left out of the quoted testimony speaks volumes about the objections.  For example, Plaintiffs' counsel quotes his

- 11 -

objections: "He hasn't testified he hired anybody," and his statement in front of the

plaintiff, "he testified he did not hire."  But Plaintiffs' counsel omitted the

following testimony in which Greer (1) testified that he made hiring

recommendations;[3] (2) admitted that he had started to testify that he hired a lot of

employees, and was nodding his head in response to the question, when he heard

Mr. Wiggins' suggestive objection that "he hasn't hired anybody;" and (3) the

reason he changed his testimony was that "up until now," when he heard Mr.

Wiggins' suggestive objection, he ***did*** think he hired the employees.  At that point,

Plaintiffs' counsel instructed him not to answer:

> Q. And you've filled out lots and lots of new hire checklists and
> confirmations like Exhibit 4, correct?

---

[3] He testified:

> Q. When you say I give my opinion after the interview --
> A. Uh-huh.
> Q. -- do you mean your opinion as to whether the person should be hired?
> A. Well, opinion of how the interview went and, yeah, as to whether they were a
> good candidate. Because I talked to them; he didn't.
> Q. So essentially, you recommended whether the person should be hired?
> MR. WIGGINS: Object to the form.
> A. Well, I gave my opinion as to how the interview went, yeah. If I liked them
> and I thought they would do a good job, I would say, yeah, I think we need him or
> her.
> Q. Okay. And then you said sometimes the district manager would interview them
> and sometimes the district manager would not interview them and just rely on
> what you said, right?
> A. Yeah, depending on his schedule and if he could get in there and my need at
> the time.
>             *             *             *             *             *
> Q. So he would approve or not your recommendation, right?
> A. Yes.
> MR. WIGGINS: Object to the form.
> Doc. 480, Ex. 35, Greer Dep. at 53:10-54:13, 56:4-8.

A. Yes.

Q. And you hired lots of lots of people, right?

MR. WIGGINS: Object to the form. ***He hasn't testified he hired anybody***.

Q. You can answer the question, please, in spite of the coaching from your counsel.

A. Well –

MR. WIGGINS: You are mischaracterizing his testimony.

MR. WILLNER: Hardly.

Q. You can answer the question.

A. I guess in reality, my district manager hired them and I just filled out the paperwork, if you want to get technical.

Q. ***So why were*** you ***nodding then as will be shown on the camera until your counsel interjected***?

A. Well, you know, you have to think. I -- ***up until now, I think I did hire them***. But I always know that it was through my DM. I mean, he -- as long as he gave the okay, I could go ahead with doing what I was doing.

Q. So up until your counsel's comment, you really thought that you hired them, right?

MR. WIGGINS: Object to the form and ***instruct him not to answer***.

Q. No. Answer the question, please.

MR. WIGGINS: Where are you trying to go with this? He has testified earlier that he couldn't hire and you want to sit here and say when you hired. Why are you mischaracterizing his testimony?

MR. WILLNER: I want him to answer the question. It's not privileged.

MR. WIGGINS: I understand that. But why are you mischaracterizing his testimony?

MR. WILLNER: I'm not. I want to hear his honest answer, not what you tell him to say.

Doc. 480, Ex. 35, Greer Dep. at 66:16-68:21.  One cannot imagine a clearer

instance of improper suggestive objections, which the witness admitted caused him

to change his answer.

Plaintiffs' assertions with respect to Plaintiff Edelen's testimony are just as misleading.  Plaintiffs quote Plaintiffs' counsel's suggestive (and inaccurate) objection that the witness did not answer only interrogatory no. 10, and also quote Plaintiffs' counsel's assertion that the question based on his only answering number 10 "mischaracteris[es]" the testimony.  Doc. 593 at 16-17.  But Plaintiffs' counsel omits to inform the Court of the immediately preceding testimony in which the witness clearly testified that he did answer only number 10 and he did so at his counsel's direction:

> Q. Now, you provided a written answer to only one -- a handwritten
> answer to only one interrogatory; is that correct?
> A. That's correct.
> Q. Why did you answer only one?
> MR. CALAMUSA: Object, that mischaracterizes his testimony and
> what happened.
> Q. He's answered the question.
> A. After I talked to my attorney I felt that I only needed to answer ten.

Doc. 480, Ex. 17, Edelen Dep. at 197:14-198:1.  Such coaching cannot be justified.

## VI.   <u>PLAINTIFFS ATTEMPT TO DISTRACT THE COURT WITH VITUPERATION AND FALSE ALLEGATIONS.</u>

Plaintiffs resort to hyperbole and false attacks on Dollar Tree's counsel. According to Plaintiffs' counsel, Dollar Tree's counsel are "desperate and dishonest " and "manipulative and deceiving," and Dollar Tree's arguments are "preposterous, "scurrilous," "outright dishonesty," "half-truths," and a "temper

tantrum."[4]  Doc. 593 at 1, 3, 5, 7, 12, 13, 14.  Thus, Plaintiffs' counsel follows the

saying that counsel who has neither facts nor law must pound the table.  The Court,

of course, can see through this transparent distraction.

## VII.   <u>THIS MOTION IS TIMELY.</u>

Finally, Plaintiffs also argue that Dollar Tree's motion for attorneys' fees is

untimely.  They base this argument on the Court's March 20, 2012 Docket Order,

but it does not support them.  Indeed, they admit that the March 20, 2012 Order

"did not set a specific deadline for DT to file its renewed motion."  Doc. 593 at 2.

In fact, that order on its face permits filing of the motion any time "following the

Court's ruling on the motion to decertify."  March 20, 2012 Docket Order.

Plaintiffs' argument is not only contrary to the Order, but to all of other authority

as well.  The Supreme Court ruled in *Cooter & Gell v. Hartmax Corp*., 496 U.S.

384 (1990), that motions for attorneys' fees as sanctions are collateral matters that

are appropriately brought at any time after dismissal of the case.  *Id*. at 395-96.

The Court of Appeals for the Eleventh Circuit has reiterated this rule.  *See e.g.,*

---

[4] Plaintiffs' counsel also incredibly asserts in spite of the entire record that it is Dollar Tree, not Plaintiffs' counsel, who failed to follow Court orders.  Plaintiffs' counsel states to the Court that "[t]he Court ordered the defendant to serve the plaintiffs with the same interrogatories it previously had served . . .," but Dollar Tree served different ones instead.  Doc. 593 at 19.  On the contrary, the Court ordered:  "the 207 Opt-In Plaintiffs who provided boilerplate answers to Defendant's interrogatories are hereby ORDERED to provide complete and individual answers ***to interrogatories that Defendant shall serve on Plaintiffs' counsel within seven days*.**"  Doc. 423, October 15, 2010 Order at 12 (emphasis added).  The Court did not specify that the interrogatories were to be the "same."  *Id*.  On the contrary, the Court's direction that interrogatories were to be served in seven days suggests that they were to be different from the original interrogatories, which had been served three months earlier.

*Thomas v. Early County*, 360 F. App'x 71, 75 (11th Cir. 2010) (unpublished opinion); *Federated Mut. Ins. Co. v. McKinnon Motors*, 329 F.3d 805, 809 n. 5 (11th Cir. 2003).[5]  The same rule applies to sanctions awarded under Rule 37 and Rule 11.  *See e.g*., *Johnson v. Cleveland Heights/University Heights School*, No. 94-3523, 1995 U.S. App. LEXIS 32102, at *8 (6th Cir. Sept. 6, 1995); *Heinrichs v. Marshall & Stevens Inc.*, 921 F.2d 418, 421 (2d Cir. 1990).[6]  To the extent there may be any time limit on a motion for attorneys' fees as a sanction, it is under Rule 54(d)(2)(B), which states that a motion for attorneys' fees must be filed within 14 days after the entry of judgment.  Fed. R. Civ. P. 54(d)(2)(B).  Dollar Tree's submission was timely under all of this authority.

## VIII.  <u>CONCLUSION.</u>

Plaintiffs cannot justify their boilerplate responses and their efforts to cover up their counsel's conduct.  Their resort to prevarication and baseless attacks, without even acknowledging that their conduct was wrong, reinforces the need for a sanction.

---

[5] *See also Mahone v. Ray*, 326 F.3d 1176, 1180-81 (11th Cir. 2003); *Baker v. Alderman*, 158 F.3d 516, 523 (11th Cir. 1998); *Didie v. Howes*, 988 F.2d 1097, 1103 (11th Cir. 1993).

[6] *See also SynQor, Inc. v. Artesyn Techs., Inc*., No. 2:07-CV-497, 2011 U.S. Dist. LEXIS 75730, at *21 (E.D. Tex. July 11, 2011), *aff'd,* 2013 U.S. App. LEXIS 5051 (Fed. Cir. Mar. 13, 2013); *Sure Fill & Seal, Inc. v. GFF, Inc.*, No. 8:08-cv-882, 2010 U.S. Dist. LEXIS 78906 (M.D. Fla. Aug. 6, 2010), *aff'd*, 411 F. App'x 267 (11th Cir. 2011); *Cotton v. Mass. Mut. Life Ins. Co.*, No. 1:98-CV-2607, 2006 U.S. Dist. LEXIS 100639, at *25 (N.D. Ga. Feb. 9, 2006); *Evans v. Connecticut*, 967 F. Supp. 673, 687-88 (D. Conn. 1997), *aff'd in part*, 24 F. App'x 35 (2d Cir. 2001).

Date: April 19, 2013                         Respectfully submitted,

   /s/ Kenneth M. Willner
Barbara B. Brown, Esq. (D.C. Bar
No. 355420) (admitted *pro hac vice*)
barbarabrown@paulhastings.com
Kenneth M. Willner, Esq. (D.C. Bar
No. 415906) (admitted *pro hac vice*)
kenwillner@paulhastings.com
Carson H. Sullivan, Esq. (D.C. Bar No.
488139) (admitted *pro hac vice*)
carsonsullivan@paulhastings.com
PAUL HASTINGS LLP
875 15th Street, NW
Washington, DC 20005
Telephone: (202) 551-1700
Telefacsimile: (202) 551-1705

Terry Price, Esq. (ASB-4658-E58T)
terrypricesr1@mac.com
LAW OFFICE OF TERRY PRICE LLC
One Chase Corporate Center
Suite 400
Birmingham, Alabama 35244
Telephone:  (205) 222-4473
Telefacsimile:  (205) 403-8892

ATTORNEYS FOR DEFENDANT
DOLLAR TREE STORES, INC.

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on April 19, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Gregory O. Wiggins, Esq.
Robert L. Wiggins, Esq.
Joshua D. Wilson, Esq.
Rocco Calamusa, Jr., Esq.
Kevin W. Jent, Esq.
WIGGINS, CHILDS, QUINN & PANTAZIS, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203

Bernard D. Nomberg, Esq.
David P. Nomberg, Esq.
THE NOMBERG LAW FIRM
The Harris Building
115 Richard Arrington, Jr. Blvd.
Birmingham, Alabama 35203

P. Mark Petro, Esq.
PETRO LAW FIRM
2323 2nd Avenue North
Birmingham, Alabama 35203

Gerald A. Templeton, Esq.
TEMPLETON GROUP, PC
400 Union Hill Dr., Ste. 210
Birmingham, Alabama 35203

       /s/ Kenneth M. Willner
       Kenneth M. Willner